IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

RAMACO RESOURCES, LLC,

     **Plaintiff,**                              Civil Action No. 2:19-cv-00703

v.                                       JURY TRIAL REQUESTED

FEDERAL INSURANCE
COMPANY, and ACE AMERICAN
INSURANCE COMPANY,

     **Defendants**

## FIRST AMENDED COMPLAINT

Plaintiff Ramaco Resources, LLC ("Ramaco"), by and through counsel, brings

this action against Defendants Federal Insurance Company ("Federal") and ACE

American Insurance Company ("ACE") and alleges for its First Amended Complaint

as follows:

## Nature of Action & Relief Sought

1.     Defendant Federal Insurance Company wrote an insurance policy to

Ramaco in which it specifically promised to pay for direct physical loss or damage to

a building (including debris removal costs) caused by any peril not otherwise

excluded. Federal also promised to pay Ramaco for its business income lost and

extra expenses incurred as a result of direct physical loss or damage to property by

any peril not otherwise excluded. Yet when the insurance policy was triggered by

the collapse of the specifically-insured raw coal silo, Federal and ACE (which

participated in adjusting the claim) wrongfully and purposefully denied that the

1

policy provided coverage. At bottom, as alleged herein, defendants have breached their contract with Ramaco and done so in bad faith.

2.      In simple terms, if a building that is crucial to Ramaco's ongoing operations collapses causing a material disruption to Ramaco's business, defendants are supposed to make Ramaco whole under the terms of the insurance policy. That was the was the entire point of buying insurance. And, defendant Federal accepted the hefty premium payments from Ramaco.

3.      On November 5, 2018, Ramaco's Silo No. 1 collapsed and severely interrupted the operations of the Elk Creek Mining and Preparation Complex ("Elk Creek"). After months of delay and essentially sham negotiations, defendants have said they won't pay for the costs associated with the collapsed silo or the resulting business interruption, relying on an apparent pre-baked scheme to deny using a laundry list of inapplicable exclusions.

4.      Accordingly, pursuant to the West Virginia Uniform Declaratory Judgments Act, W. Va. Code § 55-13-1, *et seq*., and Rule 57 of the Federal Rules of Civil Procedure, Ramaco seeks a declaration that defendants through their handling of the insurance claim breached the Mining Industries Insurance Coverage policy numbered 37115564 ("Policy") issued to Ramaco.

5.      Ramaco seeks damages resulting from defendants' breach of their duties and contractual obligations under the policy including, but not limited to, damages related to the collapse of Silo No. 1, the lost business income, and the extra expenses incurred.

6.     Plaintiff Ramaco also seeks actual and punitive damages, as well as attorneys' fees, as defendants breached the policy's implied covenant of good faith and fair dealing, as well as the statutory provisions of the Unfair Trade Practices Act, W. Va. Code § 33-11-4, by engaging in post-claim underwriting and otherwise unreasonably and repeatedly refusing, without justification, to provide coverage for the damage to Silo No. 1.

## Jurisdiction & Venue

7.     This Court has jurisdiction over all causes of action asserted herein under 28 U.S.C. § 1332. Plaintiff Ramaco is a Delaware limited liability company with its principal place of business in Kentucky. Defendant Federal is an Indiana corporation with its principal place of business in New Jersey. Defendant ACE is a Pennsylvania corporation with its principal place of business in Pennsylvania. And the amount in controversy exceeds $75,000.

8.     Venue in the Southern District of West Virginia is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred Logan County, West Virginia which is in this district. Venue in the Southern District of West Virginia is also proper under 28 U.S.C. § 1391(b)(3) because defendants are subject to the Court's personal jurisdiction generally and with respect to this action.

## Parties

9.     Plaintiff Ramaco Resources, LLC ("Ramaco") is a Delaware limited liability company with its principal place of business in Lexington, Kentucky. Its

sole member is Ramaco Development, LLC, whose sole member is Ramaco Resources, Inc., a Delaware corporation with its principal place of business in Lexington, Kentucky.

10.     Ramaco owns and operates mines and a preparation plant at the Elk Creek Mining and Preparation Complex ("Elk Creek") located in Verner, West Virginia. Verner is an unincorporated community located within the boundaries of Logan County, West Virginia.

11.     Defendant Federal Insurance Company is an Indiana corporation with its principal place of business located at 15 Mountain View Road, Warren, New Jersey 07059. Federal is a wholly-owned subsidiary of Chubb INA Holdings Inc.

12.     Federal is licensed to do business in West Virginia by the Secretary of State, and it is approved to place insurance in this state by the West Virginia Office of the Insurance Commissioner. It regularly writes insurance to West Virginia businesses, including the Policy to Ramaco.

13.     Defendant ACE American Insurance Company is a Pennsylvania corporation with its principal place of business located at 436 Walnut Street, Philadelphia, Pennsylvania 19106.

14.     Federal is licensed to do business in West Virginia by the Secretary of State, and it is approved to place insurance in this state by the West Virginia Office of the Insurance Commissioner.

4

15.     Defendants Federal and ACE are collectively referred to herein as Chubb since they identify themselves as entities under the "Chubb Group of Insurance Companies" umbrella.

## Facts Common to All Counts

**Insurance policy**

16.     Beginning in 2012, at a time when other coal mining companies were laying off their workers, terminating benefits and pensions, and shuttering operations, Ramaco began investing in, rebuilding, and restarting the mining facilities at Elk Creek. The investment has blossomed into a productive and profitable mining operation along Elk Creek, employing nearly 300 workers, generating tax revenue for Logan County and West Virginia, and producing profits for its shareholders.

17.     In order to protect its investment, Ramaco purchased insurance.

18.     On or about July 17, 2018, Federal issued a Mining Industries Insurance Coverage policy, numbered 37115564, to Ramaco. (ECF No. 11).

19.     The Policy was in full force and effect for the period from July 1, 2018 to July 1, 2019. The Policy was renewed for a three-month period and remains in full force and effect until October 1, 2019.

20.     Among other things, the Policy expressly denotes the "ELK CREEK RAW COAL SILOS" at Elk Creek in Verner, West Virginia as covered premises as shown in this excerpt:

| | | |
|---|---|---|
| PREMISES #4 | WV RT 80 | BLDG # 1 |
| | VERNER, WEST VIRGINIA  25650 | |
| DESC:  ELK CREEK RAW COAL SILOS | | |

21.     The Policy provides coverage for "direct physical loss or damage to:
building; or personal property, caused by or resulting from a peril not otherwise
excluded, not to exceed the applicable Limit of Insurance for Building or Personal
Property shown in the Declarations."

22.     The Policy also provides, among other things, coverage for "Loss
Prevention Expenses" and "Debris Removal."

23.     The Policy also requires Chubb to pay for business income lost and
extra expense incurred as a result of a direct physical loss or damage to property
(such as a silo collapse).

24.     On July 1, 2019, Chubb Limited issued a public press release stating
that it "has adopted a new policy concerning coal-related underwriting and
investment. With the new policy, the company will no longer underwrite the
construction and operation of new coal-fired plants or new risks for companies that
generate more than 30% of their revenues from coal mining or energy production
from coal. Insurance coverage for existing coal-plant risks that exceed this threshold
will be phased out by 2022, and for utilities beginning in 2022. In addition, Chubb
will not make new debt or equity investments in companies that generate more
than 30% of revenues from thermal coal mining or energy production from coal." *See*
Chubb News Releases, Chubb Announces New Policy on Coal Underwriting and

Investment (July 1, 2019), http://news.chubb.com/2019-07-01-Chubb-Announces-New-Policy-on-Coal-Underwriting-and-Investment.

25.     Chubb Limited is a Swiss company that is publicly-traded on the New York Stock Exchange. Defendants Federal and ACE are believed to be indirect subsidiaries of Chubb Limited and direct subsidiaries of Chubb INA Holdings.

26.     Thus, all of the events described herein fall against a backdrop of Chubb in the midst of a full retreat from providing insurance to operators in the coal industry.

**Damage to Silo No. 1**

27.     On November 5, 2018, at approximately 12:30 p.m., the suspended conical hopper inside of Silo No. 1 collapsed and fell to the ground damaging Silo No. 1 to the extent that it was later necessary to tear it down.

28.     Raw coal silos are used to store raw coal prior to it being transported via conveyor to the coal processing plant so it can be separated and cleaned. Prior to the incident described herein, Ramaco maintained and operated three raw coal silos. Although the three silos are separate structures, they were tied together by a common conveyor system that transports the raw to the processing building.

29.     Ramaco estimates that approximately 800 tons of raw coal was present inside Silo No. 1 at the time of the collapse.

30.     On November 5, 2018, Ramaco timely submitted its notice of claim for the losses associated with the collapse of Silo No. 1. The claim was assigned claim number 047518038923 ("Claim").

31.     At the direction of Ramaco, Silo No. 1 was inspected by Hungate Engineering, P.C. ("Hungate"). Hungate's November 7, 2018 report stated that it believed that "the cone of one of the concrete silos appeared to have failed at the point of connection to the silo."

32.     Hungate further noted that "[b]ased on the significant damage to the silo observed during the site visit it is recommended that the damaged silo be demolished. Due to the proximity of the damaged silo to the other plant facilities, including the other silos, it is recommended that the demolition of the damaged silo be performed by an experienced demolition contractor."

33.     Hungate also said, "[i]f Ramaco decides to continue operating the two (2) undamaged silos it is recommended that the lower cone section of the remaining silos be supported underneath by a structural steel support cradle with columns extending down to the ground[.]"

34.     Because of the nature of the conveyor system, and the location of Silo No. 1 which was closest to the adjacent train tracks, Ramaco took the necessary steps to demolish Silo No. 1 in an effort to keep the Elk Creek facility operational and to mitigate any potential losses related to the business interruption caused by the damage to Silo No. 1. The demolition of Silo No. 1, which began on November 9, 2018 and was completed on or before November 19, 2018, caused Ramaco to incur costs that Chubb should have paid under the Policy.

35.     The demolition of Silo No. 1 immediately and materially reduced Ramaco's capacity to store raw coal at the Elk Creek facility. Because of the lack of

storage space, Ramaco's mining operations became materially impaired, causing further losses that Chubb should have paid under the Policy. These losses include but are not limited to business income and extra expense.

36.     After the demolition of Silo No. 1 was completed on November 19, 2019, Ramaco installed a temporary conveyor system in order to ensure it was mitigating the losses associated with the business interruption caused by the collapse of Silo No. 1. The temporary conveyor system was completed and put into service on or about November 30, 2018.

37.     The temporary conveyor system allowed Elk Creek to continue to operate on a limited basis but without use of the remaining silos. Through June 30, 2019, Ramaco has incurred significant expenses related to the configuration and operation of the temporary conveyor system, which Chubb agreed to pay in the Policy.

38.     As part of its continuing effort to achieve a permanent fix to the conveyor system, and as part of its continuing attempts to mitigate the damages resulting from the collapse of Silo No. 1, Ramaco has also incurred significant expenses constructing a permanent conveyor system in order to make the two remaining silos operable, which Chubb agreed to pay in the Policy.

39.     On or about February 28, 2019, Ramaco's permanent conveyor system was put into service, allowing for the plant to run with additional capacity, but still hampered by its inability to use the two remaining silos.

40.     As of August 1, 2019, both remaining silos were fully commissioned and put back into full service.

**Chubb's outright denial of Ramaco's insurance claim**

41.     On November 12, 2018, Frank Gonsalvez, a General Adjuster from Chubb's Eastern Claim Service Center in Chesapeake, Virginia, sent an acknowledgement of Ramaco's "notice of claim for property loss sustained at the insured premises as a result of the damaged silo." The letter is emblazoned with the Chubb logo and states, among other things, that "Federal Insurance Company (Federal) acknowledges receipt of your notice of claim for property loss sustained at the insured premises as a result of the damages silo."

42.     Through this letter it was clear that Chubb had pre-determined that it was not going to cover the claim, Chubb began grasping for exclusions, stating among other things, that "[t]o the extent any loss sustained at the insured property were (sic) caused by wear and tear and planning design, materials or maintenance are (sic) not covered under the terms and provisions of your Policy."

43.     Chubb sent this letter citing policy exclusions before investigating conducting an investigation about the silo collapse.

44.     Instead, Chubb began conducting what is known as "post-claim underwriting," which is essentially performing an investigation of the risks *after* a loss has occurred.

45.     An insurer has an obligation to its insureds to do its underwriting at the time a policy application is made, not after a claim is filed.

46.     Chubb did no inspections or investigations of the Elk Creek raw coal silos *before* issuing the Policy. It did not ask Ramaco to provide any documentation related to the silos or their condition *before* issuing the Policy.

47.     Chubb accepted insurance premiums from Ramaco in the amount of $261,090.33 for the period from July 1, 2018 through July 1, 2019, and in the amount of $60,049.00 for the three-month extension running from July 1, 2019 through October 1, 2019.

48.     It is patently unfair for a business to obtain a policy, pay its premiums and operate under the assumption that it is insured against a specified risk, only to learn *after* it submits a claim that it is *not* insured, and, therefore, cannot obtain any other policy to cover the loss.

49.     The insurer controls when the underwriting occurs.

50.     As noted, Chubb did no investigations or inspections of the coal silos before writing the Policy, instead, it hired guns after the fact to find a way to deny coverage.

51.     In fact, on January 18, 2019, making official what seemed preordained in light of the November 12, 2018 acknowledgement, Chubb (under Mr. Gonsalvez's signature) sent Ramaco a letter stating that "Federal has determined there is no coverage available for your loss."

52.     Chubb's denial letter was accompanied by what amounted to a post-claim underwriting report by Wiss, Janney Elstner Associates, Inc. ("WJE"), an engineering firm. This first WJE report was dated January 4, 2019.

53.     Among other things, the January 18 letter stated: "As outlined above, the applicable coverage forms exclude damage caused by rust, faulty, inadequate or defective planning, design or specifications, and wear and tear. Rust and wear, tear and deterioration were not the result of a specified peril. Please note that the policy limits ensuing damages to the list of specified perils."

54.     A major problem with Chubb's unquestioned reliance on the WJE report, however, is that the report is rooted in a fundamental misapprehension of the relevant facts and takes great pains to avoid the likely causes of Silo No. 1's failure and chose instead to focus on reasons it could shoehorn into the Policy's exclusions. For example, Chubb ignores that the most likely cause of the collapse at Silo No. 1 was the failure of the welded joint that attached to the embedded plate in the concrete silo wall (a place where the risk of corrosion is minimal), and instead focuses on almost exclusively on rust as the cause.

55.     Moreover, Chubb even argues that "[i]t is even possible that although the silos were empty, the notch may have remained full of coal accumulation [from1996 to 2017]. Resumption of operations in 2017 again exposed the hopper connection area to the corrosive effects of moisture and low sulfur coal." While this is not really at all what happened, Chubb should have discovered this had it made a reasonable investigation prior to writing the Policy.

**Ramaco challenged Chubb's pretextual denial of its insurance claim**

56.     On February 1, 2019, Ramaco responded to and contested Chubb's outright denial of its insurance claim.

57.     In its contest letter, Ramaco made clear that it believed Chubb's denial "may be the result of some basic factual misunderstandings on your part." Ramaco noted it was "determined to obtain a fair resolution of our claim."

58.     In challenging Chubb's denial, based on Ramaco's investigation and analysis of the failure of Silo No. 1, it stated:

a.      "We have been working with a number of industry experts to determine the most likely cause of failure and to engineer a preventative fix to the two remaining silos. The leading and most logical cause of failure is a failure to a welded joint that attached to the embedded plate in the concrete silo wall."

b.      "[A]ccording to industry experts, the failed silo, as well as the others adjacent to it and still others throughout the region, has an expected _working_ life of well over 50 years. There is simply no reason to expect 'rust, wear and tear or deterioration' to have caused this failure."

c.      "It is interesting that the [WJE] report focused more on unlikely causes versus the most likely cause. We take exception to the unfounded assertion that corrosion could be responsible for the collapse."

d.      "There is no focus on addressing a corrosion issue, nor based on our review and the opinion of our experts and design engineers should there be. In fact, our additional efforts for our remaining

two silos will not involve any metal replacement. Rust or

corrosion was not a contributor to the silo failure."

59.     On February 20, 2019, WJE submitted a second report to Chubb

claiming that in its January 18 report WJE provided a "definitive conclusion that

the failure [of Silo No. 1] was the result of corrosion." WJE's second attempt was

simply more of the same deflection and obfuscation contained in its previous

analysis.

60.     For example, WJE's February 20 report, despite having the speculative

nature of its previously-stated reasons called out, stated: "our [January 18] report

provides a definitive conclusion that the failure was the result of corrosion. Because

corrosion was evident at the embedded plate, the top edge of the hopper and at the

connecting weld between the two, without laboratory evaluation it was not clear at

which of these areas the failure initiated."

61.     In other words, even WJE's post-claim underwriting attempt cannot

definitively state the cause of the collapse.

62.     After many failed attempts by Ramaco to meet and work out a

resolution to the impasse, Chubb again rejected the claim in is entirety.

63.     On June 19, 2019, WJE submitted the results of its "supplementary

investigation" by letter to Chubb. In this letter, among other things, WJE stated:

> a.     "On the capacity side, there do exist time-dependent
>
>        embrittlement and environmentally-assisted cracking
>
>        mechanisms to which carbon steels are susceptible under

14

specific service conditions. However, those conditions were not known to be present at any time, and no evidence for such mechanisms was observed in the fracture behavior or in the microstructures of the hopper, embedded plate, or attachment weld. By far the two most plausible mechanisms for a progressive loss of load capacity in this case are fatigue crack growth and corrosion."

b.  "Fatigue crack growth from fluctuations in loading is conceivable because the fill height of the silo was nonconstant, and because the geometry of fillet-welded connections makes them notably susceptible to it. However, fatigue leaves behind fracture features that are distinctly different from the tearing and shearing features that were observed in visual examinations by two experienced investigators, examinations that were as thorough as could be achieved under the level of evidence preservation undertaken by Ramaco."

c.  "Corrosion is the other plausible mechanism for a progressive loss of load capacity, and the evidence presented in this report of significant section loss in the hopper and embedded plate clearly supports that it had been very active."

64.     On August 12, 2019, Chubb verbally reiterated its prior position and denied Ramaco's claim on Silo No. 1 in its entirety – offering nothing to resolve the claim.

65.     On August 21, 2019, plaintiff Ramaco Resources, Inc. filed the initial complaint in this matter in the Circuit Court of Logan County, West Virginia against Chubb INA Holdings, Inc. and Federal Insurance Company.

66.     On August 29, 2019, Chubb sent a letter to Ramaco confirming its August 12 discussion. The August 29 letter from Chubb was accompanied by an August 20, 2019 letter from WJE.

67.     The August 29 letter from Chubb stated, among other things: "We must inform you that based on our investigation into the facts of the loss, our coverage determination cited in our January 18, 2019 letter remains unchanged."

68.     The August 20 report from WJE, which accompanied the August 29 letter from Chubb, stated: "Field and laboratory observations combined with prior experience suggest that the Elk Creek failure most likely originated at a localized section of the corroding fillet weld, then propagated rapidly around its circumference toward complete separation. Initiation of this sequence would require the plastic collapse and fracture of a remaining weld metal ligament, as in the corroded geometries modeled here, over a weld metal segment of sufficient length to supply one of the two resulting crack ends with enough energy to maintain unstable propagation."

69.     The "field and laboratory observations" that WJE referred to were all conducted at the direction of Chubb and after such time that the policy was in effect and after the loss of Silo # 1 had occurred.

70.      Based upon Ramaco's investigation, it is aware of no other insurance policy that would cover the damage that occurred at Silo No. 1.

71.     Based on Ramaco's investigation, it is believed that the following Chubb employees who participated in the claims-adjustment process:

     a.     Frank Gonsalves;

     b.     Steve Magnotta;

     c.     Mike Nicolaro; and

     d.     Maria Thackson.

This list of Chubb employees who participated in the claims-adjustment process is not intended to be an exhaustive list and further investigation may reveal additional Chubb employees who participated in the claims-adjustment process.

72.     Ramaco has substantially complied with all its duties as the insured under the Policy.

73.     As its investigation is ongoing, Ramaco reserves the right to amend this Complaint to state the true nature and extent of its damages when ascertained or at time of trial.

## COUNT I:
### Declaratory Judgment
### (Against Defendants Federal & ACE)

74.     Plaintiff re-alleges, as if fully set forth herein, each and every prior allegation contained in paragraphs 1 to 73 contained above, and further alleges the following against Defendants Federal Insurance Company and ACE American Insurance Company.

75.     This is an action for declaratory judgment under Rule 57 of the West Virginia Rules of Civil Procedure and W.V. Code § 55-13-1, *et seq.*

76.     An actual case and controversy exists between the parties that may be adjudicated by this Court concerning their respective rights and duties under the Policy.

77.     Ramaco respectfully requests that this Court determine the rights, duties, obligations, remedies, and other legal relations between the parties.

78.     Ramaco seeks a judicial declaration that Ramaco is (a) entitled to reimbursement of all amounts owed to it under the Policy and that (b) defendants have a continuing duty to reimburse Ramaco for any and all additional covered amounts resulting from the collapse of Silo No. 1 and the aftermath.

79.     As its investigation is ongoing, Ramaco reserves the right to amend this Complaint to state the true nature and extent of its damages when ascertained or at time of hearing.

## COUNT II:
## Breach of Contract
## (Against Defendant Federal)

80.     Plaintiff re-alleges, as if fully set forth herein, each and every prior allegation contained in paragraphs 1 to 73 contained above, and further alleges the following against Defendant Federal Insurance Company.

81.     There exists a valid and enforceable contract between Ramaco and Federal by virtue of the terms of the Policy. By virtue of the conduct described herein, Federal has breached the Policy with Ramaco by failing to reimburse Ramaco for the covered amounts under the Policy.

82.     As a direct and proximate result of Federal's breach of contract, Ramaco has been damaged as a result thereof, and is entitled to any and all available damages including but not limited to interest, attorneys' fees and costs, administrative costs and expenses, and other damages or relief that this Court deems appropriate.

83.     As its investigation is ongoing, Ramaco reserves the right to amend this Complaint to state the true nature and extent of its damages when ascertained or at time of trial.

## COUNT III:
## Defendant's Breach of Duty of Good Faith and Fair Dealing
## (Against Defendant Federal)

84.     Plaintiff re-alleges, as if fully set forth herein, each and every prior allegation contained in paragraphs 1 to 73 contained above, and further alleges the following against Defendant Federal Insurance Company.

85.     Under the Policy, Federal had an implied covenant of good faith and fair dealing in its contractual relationship with Plaintiff Ramaco to (i) investigate claims objectively and reasonably, (ii) pay claims that are covered by the Policy, and (iii) honor the terms of their contract.

86.     The collapse of Silo No. 1 is clearly a covered peril under the Policy.

87.     Defendant has taken erroneous and unreasonable coverage positions, has acted in bad faith, and has breached its duty to good faith and fair dealing by:

(a)     Repudiating, without any reasonable basis, its Policy obligations that mandate it pay for claims covered by the Policy;

(b)     Failing to reasonably and objectively investigate the damage to Silo No. 1, in violation of accepted insurance practices, statutory requirements, and the common law duties owed to Plaintiff, Ramaco;

(c)     Engaging in conduct calculated to further its own economic interest at the expense of Plaintiff, Ramaco;

(d)     Failing to fully reimburse Plaintiff Ramaco for the value of the property damage and loss related to the failure Silo No. 1;

(e)     Forcing Plaintiff, Ramaco to litigate this action to obtain the full benefits of the Policy sold to it by Defendants; and

(f)     engaging in improper post-claim underwriting in an effort to find an exclusion from coverage that it could easily have found

had it conducted a reasonable investigation before writing the Policy.

88.     Each of these breaches were flagrant, willful, and wanton, and were undertaken to protect Defendant's own pecuniary interests without regard to its obligations under the Policy or the interests of Plaintiff, Ramaco.

89.     As a result of these breaches, Defendants are liable to Plaintiff, Ramaco for compensatory damages, as well as for attorneys' fees and punitive damages in an amount to be determined by a jury.

## COUNT IV:
## Defendants' Violation of the West Virginia
## Unfair Trade Practices Act (W. Va. Code § 33-11-4)
## (Against Defendants Federal & ACE)

90.     Plaintiff re-alleges, as if fully set forth herein, each and every prior allegation contained in paragraphs 1 to 73 contained above, and further alleges the following against Defendants Federal Insurance Company and ACE American Insurance Company.

91.     In committing unfair trade practices with such frequency as to indicate general business practices, Defendants have violated W. Va. Code § 33-11-4 by:

(a)     misrepresenting pertinent facts or provisions of the Policy relating to coverage;

(b)     failing to acknowledge and act on communications with respect to claims arising under the Policy;

(c)     denying Ramaco's Claim without conducting a reasonable investigation based on all available information;

21

(d)     failing to attempt in good faith to make a reasonable offer to compensate Ramaco for the loss of its property;

(e)     failing to provide a reasonable explanation for the claim denial based on the Policy and its relationship to the facts and applicable law; and

(f)     engaging in improper post-claim underwriting in an effort to find an exclusion from coverage that it could easily have found had it conducted a reasonable investigation before writing the Policy.

92.    Defendants' unfair claim practices were flagrant, willful, and wanton, and were undertaken to protect Defendants' own pecuniary interests, without regard to its obligation under the Policy or the interests of Ramaco.

93.    As a direct and proximate result of its unfair claim practices, Defendants are liable to Ramaco for compensatory damages, as well as for punitive damages in an amount to be determined by a jury.

**WHEREFORE**, Plaintiff Ramaco respectfully requests this Honorable Court grant the following relief:

(A)    Order a speedy hearing of this declaratory judgment under Rule 57 of the West Virginia Rules of Civil Procedure;

(B)    Declare the parties' rights, duties, and obligations under the terms of the Policy at issue, including but not limited to the following:

(1)     That Federal has a duty to pay plaintiff Ramaco for all unreimbursed amounts, plus interest, it has paid in reasonable and necessary expenses to demolish Silo No. 1 after it collapsed as described herein; and

(2)     That Federal has a duty to reimburse plaintiff Ramaco for any and all additional specific and consequential damages resulting from the collapse and subsequent demolition of Silo No. 1.

(C)     Find Federal in breach of the terms of the Policy and award Ramaco damages, including but not limited to, interest, attorneys' fees and costs, administrative costs and expenses, and other damages or relief that this Court deems appropriate.

(D)     A finding that Federal breached its implied covenant of good faith and fair dealing by acting unreasonably and in bad faith towards plaintiff Ramaco.

(E)     A finding that Defendants Federal and ACE each violated the West Virginia Unfair Trade Practices Act, W. Va. Code § 33-11-4.

(F)     An award such further damages, fees, costs, expenses, and punitive damages for Defendants' flagrant, willful, wanton and intentional conduct.

(G)     The legal fees and costs incurred in the pursuit of this action to enforce its rights under the Policy.

(H)     All interest, pre- and post-judgement, permitted by law.

(I)     All other relief as the Court deems just and proper under the circumstances described herein.

## JURY DEMAND

Plaintiff Ramaco demands a trial by jury of all issue so triable under Rule 38 of the West Virginia Rules of Civil Procedure.

Dated: November 12, 2019      Respectfully submitted,

         _/s/ Rebecca Pomeroy_
Brian A. Glasser (WVSB # 6597)
Rebecca Pomeroy (WVSB # 8800)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Tel: 304.345.6555
Fax: 304.342.1110
bglasser@baileyglasser.com
bpomeroy@baileyglasser.com

Nicholas S. Johnson, Esq. (WVSB # 10272)
Michael L. Murphy, Esq. (WVSB # 10888)
BAILEY GLASSER LLP
1055 Thomas Jefferson Street
Suite 540
Washington, DC 20007
Tel: 202.463.2101
Fax: 202.463.2103
njohnson@baileyglasser.com
mmurphy@baileyglasser.com

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the <u>12th</u> of <u>November</u> 2019, a copy of foregoing *First Amended Complaint* was sent by electronic mail to the following:

Matthew J. Perry, Esquire (WVSB # 8589)
J. Jarrod Jordan, Esquire (WVSB # 10622)
**LAMP BARTRAM LEVY TRAUTWEIN &PERRY, PLLC**
720 Fourth Avenue
P.O. Box 2488
Huntington, West Virginia 25725-2488
304.523.5400
304.523.5409
mperry@720legal.com
jjordan@720legal.com

*Counsel for Federal Insurance Company*

/s/Rebeccca Pomeroy
Rebecca Pomeroy