# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

**RAMACO RESOURCES, LLC,**

      **Plaintiff,**

v.                                      Case No.: 2:19-cv-00703

**FEDERAL INSURANCE COMPANY, and
ACE AMERICAN INSURANCE COMPANY,**

      **Defendants.**

## MEMORANDUM OPINION and ORDER

On June 29, 2020, came the parties, by counsel, for oral argument on Defendants' Motion to Compel and for a Determination Regarding Ramaco's Claims of Privilege as to Third-Party Subpoena Respondents' Documents, (ECF No. 70); Ramaco Resources, LLC's ("Ramaco") Motion to Compel the Production of Unredacted Versions of Defendants' Underwriting Guidelines; (ECF No. 71); and Motion for Leave to File Exhibits Under Seal, (ECF No. 85). As a preliminary matter, the Court **GRANTS**, in part, and **DENIES,** in part, the Motion for Leave to File Exhibits Under Seal. The Clerk is **ORDERED** to unseal the Motion and Exhibit 1, (ECF Nos. 85, 85-1), but to seal Exhibit 4, (ECF No. 85-2). Exhibit 4 contains confidential financial and business information of Plaintiff, which was produced in discovery and was not instrumental in the Court's rulings. Consequently, the right of the public to see this discovery information is outweighed by Plaintiff's right to confidentiality of business information.

With respect to the Motions to Compel, the Court explained the bases for its rulings at length during the hearing; therefore, this Order will contain only a summary of the key

1

factors. A recording of the hearing is available if either party would like a transcript, and requests for a transcript shall be made to the Clerk of Court by using the proper request form.

### A. Motion to Compel Ramaco's Documents (ECF No. 70)

The parties disagree as to whether certain documents withheld from production by Ramaco on the basis of attorney work product are indeed entitled to such protection from disclosure. Whether the documents were properly withheld hinges on whether or not they were created in anticipation of litigation. Whether they were created for that reason depends, in part, on when the prospect of litigation became more than a possibility. Ramaco claims that it first believed litigation against the defendants was likely in December 2018, while Defendants assert that litigation was not likely until March 29, 2019. In the spirit of compromise, Ramaco agrees to January 18, 2019 as the date when litigation was anticipated, but Defendants disagree and insist that March 29, 2019 is the earliest appropriate date.

The law regarding work product is well established. "The work-product privilege protects from discovery an attorney's work done in preparation for litigation." *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017) (internal quotation marks and citation omitted). "Work product" includes materials produced on behalf of an attorney, as well as an attorney's own work, as long as the materials are created for the purpose of litigation. *See In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prod. Liab. Litig.*, No. 1:17-MD-2775, 2020 WL 3073316, at *2 (D. Md. June 10, 2020). The mere fact of litigation, however, does not alone protect a document. Instead, to receive work-product protection, a document was must prepared "because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual

2

event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). Documents created in the ordinary course of business are not work product.

When a document can be used for both business and litigation purposes, the court must assess "the driving force behind the preparation of" the document. *Id.* at 984. If the document would have been produced regardless of the prospect of litigation, work-product protection does not attach. *Id.* In determining whether a document, which arguably serves both purposes, was created primarily for litigation, courts in this circuit have considered whether the document was created "when litigation is a real likelihood" rather than "merely a possibility" and whether the document would have been created in the same manner had there been no expectation of litigation. *RLI Insurance Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 747-48 (E.D. Va. 2007). The party asserting that a document is protected from discovery "bears the burden of demonstrating the applicability of the work product doctrine." *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011).

Even when a document is work product, its protection from discovery is not absolute. Work product includes both "fact" work product and "opinion" work product. While opinion work product—that which contains the mental impressions of an attorney—is scrupulously protected, fact work product—that which *does not* contain the mental impressions of an attorney—may be discovered upon "a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *United Prop. & Cas. Ins. v. Couture*, No. 2:19-CV-01856-DCN, 2020 WL 2319086, at *5 (D.S.C. May 11, 2020) (citing *Nix v. Holbrook*, No. CIV.A. 5:13-02173-JM, 2015 WL 631155, at *4 (D.S.C. Feb. 13, 2015). Moreover,

3

"when an attorney freely and voluntarily discloses the contents of otherwise protected work-product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work-product protection." *In re Doe*, 662 F.2d 1073, 1081 (4th Cir. 1981).

Here, the parties understand the work product doctrine and agree on how it should be applied. They disagree as to whether certain documents prepared at the request of Ramaco qualify as work product, however, because they dispute the date on which Ramaco concluded that litigation was a "real likelihood."

The relevant facts presented by the parties are as follows. On November 5, 2018, a raw coal silo at Ramaco's Elk Creek property collapsed. Ramaco held a property insurance policy with Defendant Federal Insurance Company ("Federal")[1] and reported the loss immediately. At the time of the report, Ramaco's insurance broker advised Ramaco of a potential coverage issue, noting that the insurance policy excluded loss or damage related to "settling, cracking, shrinking, bulging, or expansion of … concrete surfaces, buildings or other structures." (ECF No. 85-1). The broker advised that "engineers findings are paramount here" and added that "[s]ounds like something is amiss when previous engineering inspections revealed no structural issues and something of significance seems to be occurring." (*Id.*). In response to the broker's statements, an executive at Ramaco decided to find the prior reviews of the silo to understand what caused the cracking. (*Id.*).

---

[1] Federal is the parent company of most of the insurance subsidiaries of Chubb Group of Insurance Companies. "Federal" and "Chubb" are used interchangeably for purposes of this opinion.

Federal began an investigation of the silo collapse and retained the services of an engineering firm to assist in identifying the cause of the loss. According to declarations supplied by Ramaco, at the same time, Ramaco hired an engineering firm, Cintar, to examine two remaining silos on Ramaco's property, in order to make any necessary repairs or additions to prevent similar collapses. (ECF Nos. 78-1, 78-2, 79 at 2). When initially retaining Cintar, Ramaco did not request that Cintar do a loss investigation on the silo that collapsed.

Over the next month, Federal continued its investigation, which included several site visits. In email communications between Ramaco's broker and Federal, occurring in late November, the broker acknowledged Federal's desire to bring a metallurgist to the site of the silo collapse to "support/enhance" the structural engineer's investigation into the cause of the failure, but urged Federal to expedite the matter. (ECF No. 79-1). The broker reminded Federal that Ramaco was incurring significant costs associated with the collapse, and while it understood that coverage questions had to be resolved, Ramaco was "committed to this claim" and requested that all efforts be made to complete the process as quickly as possible. (*Id.*).

On some of the site visits, Federal's representatives were accompanied by Daniel Zaluski, Ramaco's Vice President of Administration, Legal & Environmental, and Corporate Secretary, who acted in the role of in-house counsel for Ramaco. (ECF No. 78-1). Mr. Zaluski states in his declaration that, on or about December 3, 2018, when he heard that Federal intended to bring a metallurgist on site to examine whether the coal's content caused a chemical reaction with the steel in the silo that ultimately caused it to fail, he anticipated that Federal would deny the claim and require Ramaco to file suit. (*Id.*). After Mr. Zaluski discussed his concerns with Ramaco's Chief Executive Officer and Chief

5

Operating Officer ("COO"), Ramaco decided to retain Cintar to complete an independent evaluation of the cause of the first silo's collapse. (*Id.*). Ramaco, through its COO, advised Cintar that this project was to be administered and billed separately from the work on the remaining silos and was "privileged and confidential." (ECF No. 78-2). According to Ramaco, this evaluation was not requested because Ramaco had a legal, regulatory, or policyholder duty to conduct such an assessment; rather, it was undertaken in anticipation of litigation. (ECF Nos. 78-1, 78-2).

By early January 2019, it is clear that Ramaco had, at least indirectly, communicated to Federal that it intended to sue Federal for bad faith if it denied the silo claim. (ECF No. 79-1). Interoffice emails between Federal's employees confirm their understanding as of January 7, 2019 that declining coverage would likely result in a lawsuit and in Ramaco finding different coverage at the time of policy renewal. (*Id.*).

Federal denied Ramaco's claim on January 18, 2019, prompting Mr. Zaluski to send a certified letter on February 1, 2019, advising Federal of Ramaco's displeasure with the decision. (ECF No. 78-6). In the letter, Mr. Zaluski indicated that "[s]ince litigation seems an unfortunate possibility," Ramaco had already assembled a group of experts to discredit Federal's engineering report and had retained outside legal counsel to vigorously pursue a claim "if need be." (*Id.*). Citing to the expense of litigation, and the potential that Federal would have to pay the fees and expenses incurred by Ramaco if it won, Mr. Zaluski asked Federal to revisit its decision and "provide the insurance its policyholder has paid for." (*Id.*). Thereafter, Federal and Ramaco met and spoke on several occasions, but were unable to resolve their differences. In June 2019, Ramaco stated that it had "come to the end of the rope" with Federal. Accordingly, in August 2019, Ramaco filed the instant action.

Although Defendants argue that Ramaco did not believe litigation was "imminent" until July 2019, when it announced in a business document that negotiations with Federal were "at the end of the rope," the evidence belies this position. According to in-house counsel for Ramaco, he suspected that litigation would be likely as early as December 2018. By early January 2019, the parties involved in the investigative process clearly knew that Ramaco intended to sue Federal if the silo claim was denied. Accordingly, when the claim was denied on January 18, 2019, the prospect of litigation was imminent. Ramaco announced that it had retained experts and counsel to vigorously pursue the claim in court if necessary. The fact that the parties continued negotiations in an effort to resolve their differences does not preclude a finding by this Court that Ramaco was already gearing-up for litigation. As such, the undersigned agrees with Ramaco that documents created on or after January 18, 2019 may be protected as attorney work product.

Given this finding, the Court **GRANTS**, in part, and **DENIES**, in part, Defendants' Motion to Compel. Many of the documents sought by Defendants—including significant portions of Cintar's work on the collapsed silo—are now subject to disclosure or have already been disclosed. To the extent other documents exist, the parties are hereby **ORDERED** to meet and confer about their production, taking into account the Court's ruling.

### B. Motion to Compel Defendants' Documents (ECF No. 71).

Defendants have produced certain guidelines requested by Ramaco in discovery, which Defendants redacted. Ramaco now moves the Court to compel Defendants to provide a unredacted version of the guidelines. Defendants object to producing an unredacted version on the grounds that the guidelines are proprietary and Ramaco does not need the redacted portions, because they are irrelevant. The Court **GRANTS** the

7

motion to compel and **ORDERS** Defendants to produce the unredacted guidelines within **fourteen (14) days**. Although parties typically are not entitled to irrelevant information, the relevancy of the guidelines is a matter of debate. In addition, Ramaco argues that the redactions included such things as definitions, the absence of which makes it difficult for Ramaco to understand the remaining portions of the guidelines. Furthermore, the guidelines in dispute are not particularly lengthy, so providing an unredacted version will not be overly burdensome. The guidelines are subject to the existing protective order. As such, Defendant's concerns regarding their proprietary nature should be alleviated.

The Clerk is directed to provide a copy of this Order to counsel of record.

**ENTERED:** June 30, 2020

_____
Cheryl A. Eifert
United States Magistrate Judge