IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**RAMACO RESOURCES, LLC,**

    **Plaintiff,**

v.                                                              Case No.:  2:19-cv-00703

**FEDERAL INSURANCE COMPANY, and**
**ACE AMERICAN INSURANCE COMPANY,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER**

Pending is Plaintiff's Motion to Compel the Resumed Deposition of William Blake. (ECF No. 109). Defendants have filed a response in opposition to the Motion, (ECF No. 124), and Plaintiff has replied. (ECF No. 127). The Court does not find that oral argument on the Motion is necessary. For the reasons that follow, the Court **GRANTS** the Motion to Compel.

**I.**    **Relevant Background**

This case involves an insurance dispute over the November 5, 2018 collapse of a raw coal silo on the Elk Creek Property owned and operated by Plaintiff, Ramaco Resources, LLC ("Ramaco"). Ramaco held a property insurance policy with Defendant, Federal Insurance Company ("Federal"),[1] and reported the loss to Federal immediately. At the time of the report, Ramaco's insurance broker advised Ramaco of a potential coverage issue, noting that the insurance policy excluded loss or damage related to

---

[1] Federal is the parent company of most of the insurance subsidiaries of Chubb Group of Insurance Companies. "Federal" and "Chubb" are used interchangeably for purposes of this opinion.

1

"settling, cracking, shrinking, bulging, or expansion of ... concrete surfaces, buildings or other structures." After investigating the loss for approximately two months, Federal denied Ramaco's claim. Federal based its denial on a rust exclusion contained in the insurance policy. Federal contended that Wiss Janney Elstner, Inc. ("WJE"), the engineering firm Federal hired to determine the cause of the loss, had concluded that corrosion of the hopper and supporting plate resulted in the silo's collapse.

In August 2019, Ramaco filed suit against Federal in the Circuit Court of Logan County, West Virginia, asserting various claims including bad faith, breach of contract, and violations of the West Virginia Unfair Trade Practices Act ("UTPA"). (ECF No. 1-1 at 5). Federal removed the case to this Court in September 2019 on the basis of diversity of citizenship. (ECF No. 1). A Rule 26(f) meeting was held in late October 2019, and discovery began shortly thereafter.

On April 6, 2020, Daniel Zaluski, Vice-President and Corporate Secretary of Ramaco, wrote a letter to Frank Gonsalves, a representative of Federal. Zaluski reviewed highlights of discovery in the case between Ramaco and Federal, and posited that recent evidence confirmed Ramaco's position that corrosion was not the sole cause of the silo's collapse. (ECF No. 109-1). Pointing to deposition testimony by WJE's engineers, Zaluski argued that WJE's investigation of the loss was biased and unreasonably flawed. Based on this evidence, Zaluski asked Federal to withdraw its denial of Ramaco's claim "and make a prompt, fair, and equitable settlement offer." (*Id.* at 6). Mr. Zaluski added that "[c]ontinued refusal can be used as evidence of continued bad faith," citing to *Jackson v. State Farm Mut. Auto, Ins. Co.*, 600 S.E.2d 346, 359 (W. Va. 2004). (*Id.*).

On April 16, 2020, William T. Blake, Chubb's VP Claim Leader, North American Property Claims, responded to Zaluski's letter. (ECF No. 109-2). Blake captioned the

written response "FOR SETTLEMENT PURPOSES ONLY," and indicated that he was writing on behalf of Federal. Blake noted that Zaluski had made "a significant number of specific factual assertions relating to a deposition of ... WJE," prompting Blake to obtain a copy of the transcripts for review. Blake agreed to consider other evidence referenced by Zaluski in his letter and promised to provide an assessment of the information and a response to the settlement demand by May 6, 2020. (ECF No. 109-2).

As promised, on May 6, 2020, Blake sent a more detailed response to Zaluski's letter. (ECF No. 109-3). Again, Blake captioned his correspondence "FOR SETTLEMENT PURPOSES ONLY" and further designated it as a confidential settlement communication. Blake stated in his response that he had reviewed the discovery referenced by Zaluski and had spoken to WJE about the assertions made in Zaluski's letter. Blake assured Zaluski that "[a]t all times, Federal has been willing to review any factual information that Ramaco has regarding this matter, and ... remains willing to review any information Ramaco wants to provide." (*Id.*). However, Blake disagreed with Zaluski's contention that corrosion was not the cause of the silo's collapse and noted that Ramaco had never offered an alternative theory of causation. Blake declined to make a settlement offer on behalf of Federal, but agreed to engage in private mediation. He additionally asked that all further communications be directed to Federal's counsel. (*Id.*).

On June 25, 2020, Ramaco took Blake's deposition. (ECF No. 109-4). In the course of the deposition, Ramaco's counsel asked Blake questions about the April and May 2020 correspondence between him and Zaluski. (*Id.*). Counsel for Defendants objected to the questioning, providing three grounds for the objection: (1) attorney-

3

client privilege; (2) relevancy, given that the letters were written after the denial of coverage and the inception of litigation; and (3) the letters constituted post-litigation settlement communications, which were inadmissible under Federal Rule of Evidence 408. Defense counsel instructed Blake not to answer most of the questions posed about the letters. (*Id.*).

## II. <u>Motion to Compel and Response</u>

Ramaco now moves the Court to compel Blake to return for a "resumed" deposition in order to answer the questions posed by Ramaco regarding the April and May 2020 correspondence. In support of the motion, Ramaco argues several points. First, Ramaco asserts that defense counsel's instructions to Blake based on the attorney-client privilege were improper, because no privilege attached to the information sought. Ramaco indicates that its counsel never asked about privileged communications; rather, he inquired regarding Blake's actions, which were matters of fact. (ECF No. 110). Ramaco contends that, in any event, if attorney-client privilege attached to the information contained in the correspondence, the privilege was waived by Blake sending the letters to Ramaco. (ECF No. 127).

Second, Ramaco asserts that defense counsel's relevancy objection is meritless, because the steps taken by Federal to reevaluate Ramaco's claim—even post-litigation—are relevant. According to Ramaco, insurance companies have an ongoing obligation to exercise good faith in assessing and reassessing an insured's claim for coverage, and this obligation extends beyond the commencement of litigation. Relying on *Barefield v. DPIC Companies, Inc.,* 600 S.E.2d 256, 266 (W. Va. 2004), Ramaco argues that the UTPA intends for insurers to deal fairly with individuals asserting a right, or demanding relief under an insurance policy, regardless of whether litigation is pending, (ECF Nos.

4

110, 127).

Finally, Ramaco claims that defense counsel's reliance on a "settlement communications" exemption from discovery is misplaced. (ECF No. 110). Ramaco emphasizes that the Rules of Evidence do not govern discovery; instead, discovery is guided by the Federal Rules of Civil Procedure, which allow the collection of evidence even when it is not admissible. Furthermore, as settlement communications are not always inadmissible, Ramaco has the right to conduct discovery on them. Ramaco contends that it is entitled to investigate "what actions Mr. Blake took to reassess Ramaco's claim based on the information provided in Mr. Zaluski's letter." (*Id*. at 14). Ramaco asks that the Court order the deposition to be reconvened, and that Ramaco be awarded fees and costs associated with the motion to compel and the resumed deposition.

In response, Defendants claim that Ramaco has misread *Barefield* and seeks information that is not discoverable, because it is irrelevant to the claims and defenses in the case. (ECF No. 124). Specifically, Defendants contend that the *Barefield* decision applies only to the duties of an insurance company after a third-party has filed a lawsuit against the *insured*, not the actions of an insurance company after its insured has filed a lawsuit against *it*. As such, *Barefield* does not make information regarding post-litigation settlement discussions relevant to the underlying claim of unfair trade practices.

Defendants further argue that Ramaco's questions were improper, because they could not be answered without invading privileged attorney-client communications. (*Id*.). Defendants indicate that even asking Blake what materials he reviewed required him to tell Ramaco what documents had been selected for his review by counsel.

5

Defendants argue that defense counsel allowed Blake to answer questions to the extent his answers did not reveal attorney work product and privileged communications, but Blake was unable to do so, because his actions in responding to the letter written by Zaluski were "formulated in consultation with counsel." (*Id.* at 12).

III. **Discussion**

Each of Defendants' three reasons for prohibiting discovery concerning the April and May 2020 letters is addressed below.

**A. Relevancy of Post-litigation Communications Between Insurer and Insured**

Ramaco claims that Federal has an ongoing obligation to act in good faith when evaluating Ramaco's claim for coverage under the insurance policy issued by Federal. This obligation includes evaluating new evidence pertinent to the claim whenever the evidence is supplied or obtained. In Ramaco's view, an insurer's breach of the duty to act in good faith, as well as violations of the UTPA, are actionable regardless of when they occur—before or after institution of a lawsuit against the insurer. In contrast, Federal contends that there is no law upon which to assert a first-party claim of post-litigation bad faith in a pending bad faith case brought by the insured against its insurance company for denying coverage. Federal argues that Ramaco's interpretation of the *Barefield* decision is erroneous; therefore, its motion to compel, which is based largely on *Barefield,* is meritless.

Federal Rule of Civil Procedure 26(b) sets forth the scope and limits of discovery. Rule 26(b)(1) states:

> **(1) *Scope in General.*** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the

>issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Consequently, if Ramaco asserts a potentially valid claim for breach of an ongoing duty,[2] then Blake's actions in response to Zaluski's letter are relevant, and discovery is appropriate, unless the information sought is otherwise privileged, or its collection is disproportional to the needs of the case. Ramaco relies on the *Barefield* decision as establishing the ongoing duty of good faith by an insurance company. Defendants argue that Ramaco is not correct, because the facts underlying the *Barefield* decision vary from those in this case, making the decision distinguishable and inapposite.

Defendants are correct that *Barefield* involved a different procedural and factual setting. In *Barefield*, the Supreme Court of Appeals of West Virginia ("WVSC") considered two certified questions from the United States District Court for the Northern District of West Virginia in a case that examined the duties of an insurer after its insured had been sued by a third party. *Barefield,* 600 S.E.2d at 262. Of relevance here, the WVSC answered the question of whether "an insurance company under any circumstances [could] be held liable for its violations of the [UTPA] that occur after the filing of a civil action against an insured." *Id.* In contrast, in this action, the question is whether an insurance company can be held liable for violations of the UTPC, which occur after the institution of a lawsuit by the insured alleging, in part, violations of the UTPC. Defendants insist that *Barefield* cannot be read that broadly.

---

[2] Even though Ramaco has not expressly asserted a claim for the alleged breach of Federal's ongoing duty, such a claim could be added under Fed. R. Civ. P. 15(d). Therefore, as the discovery sought by Ramaco could potentially provide the factual basis for such a claim, the court will consider the relevance of the discovery in the context of a claim for relief.

7

Although the WVSC did not consider in *Barefield* the precise situation that exists in this case, the principles and policies expressed in *Barefield* can be applied here and support, at least, a colorable claim that an insurance company can be held liable for violations of the UTPA, which occur after the initiation of litigation by its insured. In *Barefield,* the WVSC held that "[t]he UTPA is intended to require insurance companies to deal fairly with individuals seeking to recover under an insurance policy, and to promptly resolve valid claims that are not reasonably in dispute—*regardless of whether or not a lawsuit has been filed.*" *Id*. at 265 (emphasis added). The WVSC added that the word "claim" in the UTPA is not limited to pre-litigation claims, and found "nothing to show that the public policy established in *W. Va. Code* 33-11-1 is obviated once litigation ensues … therefore … the language of the UTPA does not restrict the scope of conduct that is proscribed by the Act to that which occurred prior to the filing of a lawsuit." *Id*. at 266. The WVSC explained further:

> Were we to adopt the defendant's argument, and hold that the UTPA did not apply to insurance company conduct occurring after litigation ensues, would be to suggest that the Legislature intended to reward obstinacy by insurance companies in the compromise and settlement of claims. Such an interpretation of the UTPA would provide a disturbing incentive for insurance companies to push meritorious claims into litigation, thereby consuming limited judicial resources, further crowding congested dockets, and burying claimants in a "prolonged blizzard of mindless motions, countless continuances, and dreadful delay."

*Id*. at 267 (citation omitted). Finally, the WVSC concluded:

> In summary, we hold that the conduct of an insurance company or other person in the business of insurance during the pendency of a lawsuit may support a cause of action under the West Virginia Unfair Trade Practices Act, *W.Va.Code,* 33–11–1 to –10. In so holding, we reject the district court's conclusion in *McDaniel, supra,* that the word "claim" in the UTPA precludes the application of the UTPA to "litigation" conduct by an insurance company or other person in the business of insurance.

*Barefield,* 600 S.E.2d at, 271. Given these pronouncements by the WVSC, which make

no distinction between first-party or third-party litigation, Ramaco's claim of ongoing violations by Federal is sufficiently viable to allow discovery. Indeed, at least one other court in this circuit has reached a similar conclusion by allowing a plaintiff to supplement its pleading under Rule 15(d) and add a claim alleging ongoing, post-litigation bad faith by the defendant insurance company. *See Episcopal Church in South Carolina v. Church Insur. Co. of Vermont,* Case No.: 2:13-cv-02475-PMD, 2014 WL 12605568, at *2 (D.S.C. June 3, 2014). Accordingly, the undersigned finds that the requested discovery of Blake is relevant. As the questions asked by Ramaco at Blake's deposition were limited to the circumstances surrounding his 2020 correspondence with Ramaco, which are key to a claim of ongoing violations by Federal, the undersigned further finds that the discovery is proportional to the needs of the case.

### B. The Propriety of Discovery Regarding Settlement Discussions

Defendants argue that discovery regarding settlement communications is not permitted, because Federal Rule of Evidence 408 prohibits the introduction of such evidence at trial. Defendants' argument is without merit inasmuch as Rule 26 explicitly states that "[i]nformation within the scope of discovery need not be admissible to be discoverable." Fed. R. Civ. P. 26(b)(1). Moreover, courts in this circuit have "generally declined to recognize a federal settlement privilege." *Townsend v. Nestle Healthcare Nutrition, Corp.,* No. 3:15-CV-06824, 2016 WL 1629363, at *5 (S.D.W. Va. Apr. 22, 2016) (listing cases). Accordingly, the mere fact that the information sought by Ramaco involves settlement communications is not enough to prohibit its discovery.

### C. The Discovery Seeks Information that is Privileged as Attorney/Client Communications or Attorney Work Product

Federal Rule of Evidence 501 supplies the general rule for matters of privilege in

a federal court proceeding, providing in relevant part, "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Fed. R. Evid. 501. The substantive claims and defenses in this civil action are matters of state law; accordingly, the question of whether information related to Blake's letters is privileged as a confidential attorney-client communication is governed by West Virginia law. The WVSC has set forth a three-factor test for asserting the attorney-client privilege as follows:

> In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be intended to be confidential.

*State ex re. Montpelier U.S. Insurance Company v. Bloom,* 757 S.E.2d 788, 794 (W. Va. 2014) (citation omitted). The attorney/client privilege protects from disclosure:

> Communications made in confidence either by an attorney or a client to one another are protected by the privilege. In other words, the privilege protects the substance of communications. Communications are protected whether they are made verbally or in writing, including electronic mail messages and facsimile transmissions.

*State ex rel. Med. Assurance of W. Virginia, Inc. v. Recht*, 583 S.E.2d 80, 88 (2003). However, as a general matter, it has been recognized that "[s]tatements made by a client to an attorney are not within the attorney-client privilege if the information is given with the intent that it be used and disseminated to third parties." *Montpelier U.S. Insurance Company,* 757 S.E.2d at 794 (quoting *State ex rel. Ash v. Swope,* 751 S.E.2d 751, 757 (2013)). Moreover, while communications between an attorney and his client are privileged, "neither the fact that the attorney communicated with his client, nor that

subsequently the client acted under advice of counsel, nor the date that the attorney communicated with such client, is excluded by reason of privilege." *State v. Rodoussakis*, 511 S.E.2d 469, 480 (W. Va. 1998)."The burden of establishing the attorney-client privilege or the work product exception, in all their elements, always rests upon the person asserting it." *Med. Assurance of W. Virginia, Inc.,* 583 S.E.2d at 88. "Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter." *State ex rel. McCormick v. Zakaib*, 189 W. Va. 258, 261, 430 S.E.2d 316, 319 (1993) (citation omitted).

While issues of the attorney-client privilege are governed by state law, the extent of any waiver of the privilege is a matter of federal law. *See* Fed. R. Evid. 502(f). Federal Rule of Evidence 502(a) provides that when a disclosure is made and an attorney-client privilege or work product protection is waived, the waiver extends to undisclosed information or communications *only if* (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together. One exception to this rule is when a disclosure is made inadvertently. In that case, the disclosure does not operate as a waiver of the privilege attached to the communication and, understandably, never results in a subject matter waiver, so long as the factual circumstances surrounding the disclosure correspond with the conditions outlined in Federal Rule of Evidence 502(b).

Although state law governs the scope of the attorney-client privilege in cases pending in federal court, "[i]n matters involving work product protection … federal

11

courts apply federal law, even in diversity cases." *Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.*, 143 F.R.D. 601, 605 (M.D.N.C. 1992); *see, also, Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 769–74 (D. Md. 2008) (collecting cases). Federal Rule of Civil Procedure 26(b)(3) codifies the doctrine of work product protection, stating as follows:

> (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

As plainly stated, "[t]o qualify as work-product shielded from discovery, the evidence must be: (1) documents or tangible things otherwise discoverable; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party to the lawsuit or by or for the party's representative." *United Prop. & Cas. Ins. v. Couture*, No. 2:19-CV-01856-DCN, 2020 WL 2319086, at *4 (D.S.C. May 11, 2020). As can be further deduced from the rule's language, work product is separated into two categories: (1) opinion work product, or in other words, "mental impressions, conclusions, opinions, or legal theories" of an attorney or other representative, which is "absolutely" immune from discovery; and (2) fact work product consisting of "documents prepared by an attorney that do not contain the attorney's mental impressions," which may be discovered "upon

a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings #5 Empanelled January 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005); *see also Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983-84 (4th Cir. 1992). The work product doctrine protects not only those materials prepared by a party and its agents, including its attorney, but also those materials prepared by "agents for the attorney." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975). "The same 'principle applies to intangible work product: an attorney's analysis made in anticipation of litigation which has not been memorialized. Such work-product is immune from discovery just as if it had been reduced to writing.'" *Wellin v. Wellin*, 211 F. Supp. 3d 793, 808 (D.S.C. 2016), *order clarified,* No. 2:13-CV-1831-DCN, 2017 WL 3620061 (D.S.C. Aug. 23, 2017) (quoting *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 2002 WL 31296430, at *5 (S.D.N.Y. Oct. 11, 2002).

In this case, Blake wrote two letters responding to Ramaco's correspondence. Counsel for Defendants would not allow Blake to provide answers to even the most basic questions about the letters. As Ramaco points out, its counsel did not ask about attorney communications, seek trial strategy, or request documents and tangible things. Instead, he asked questions about the actions of Blake, a fact witness in the case. While there may be questions that could be posed to Blake, which would inappropriately seek attorney-client communications, defense counsel interfered with the deposition before Ramaco's counsel got to that point. Ramaco is entitled to discover factual information underlying claims and defense, which Blake clearly has in his role as a corporate Vice President. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by

13

those who communicated with the attorney."). Defendants' claim that even allowing Blake to answer questions about what materials he reviewed before writing the letters would invade attorney-client communications is unpersuasive. While it is true that, in some circumstances, documents collected, culled and provided by an attorney to a client might constitute work product, in this case, Blake simply reviewed materials highlighted by Ramaco in its letter to Federal. Accordingly, lodging a blanket objection to the entire line of questioning and effectively instructing the witness not to answer any questions were inappropriate.

As to whether Blake waived Federal's attorney-client privilege by writing the letter, the answer is not entirely clear, because no background information about the letters was provided. Apparently, the information supplied by Blake in the letters was not produced inadvertently. Therefore, if a waiver of the privilege was made, the extent of the waiver would be governed by Fed. R. Evid. 502(a).

### D. Fees and Costs

As for Plaintiff's motion for fees and costs, it is hereby **ORDERED** that Plaintiff shall have through and including **September 4, 2020** in which to file an affidavit of reasonable fees and expenses incurred in making the motion to compel and rescheduling the deposition, as well as any supportive documentation or argument to justify the amount of fees and expenses requested. *See Robinson v. Equifax Information Services, LLC,* 560 F.3d 235, 243-44 (4th Cir. 2009). Failure to timely file the affidavit and supporting documentation shall result in a denial of fees and costs.

Defendants shall have through and including **September 23, 2020** in which to respond to Plaintiff's submission. The response shall include any justification that would obviate against an award of expenses. Failure to file a response shall be deemed an

admission of or agreement with the representations and arguments of Plaintiff. Plaintiff shall have through and including **September 30, 2020** in which to file a reply memorandum. At the conclusion of the period allowed for briefing, the Court shall either schedule a hearing, or simply rule on the request for reasonable fees and costs.

The Clerk is instructed to provide a copy of this Memorandum Opinion and Order to counsel of record.

**ENTERED:** August 6, 2020

_____
Cheryl A. Eifert
United States Magistrate Judge