UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

RAMACO RESOURCES, LLC,

       Plaintiff,

v.                            Civil Action No. 2:19-cv-00703

FEDERAL INSURANCE COMPANY; and
ACE AMERICAN INSURANCE COMPANY,

       Defendants.


## MEMORANDUM OPINION AND ORDER


       Pending is plaintiff Ramaco Resources, LLC, motion for sanctions, filed on September 8, 2020.  ECF No. 148.  Defendants ACE American Insurance, Company and Federal Insurance Company filed a response on September 22, 2020, to which plaintiff replied on September 29, 2020.  ECF Nos. 169, 175.


### I. Background

       This case involves a dispute over insurance coverage for losses suffered by plaintiff following the collapse of the hopper in one of its three raw coal silos at its Elk Creek plant in Logan County, West Virginia, resulting in the subsequent demolition of the silo.  Defendant Federal Insurance, Co. ("Federal") denied plaintiff's claim for that and related losses, and argues that a number of policy exclusions apply,

including the so-called "Rust Exclusion."  In assessing coverage, defendant Federal utilized claims personnel who work for defendant ACE American Insurance, Co. ("ACE").

Plaintiff filed this motion seeking an entry of default against defendants for a vast array of alleged misconduct in the course of litigating this case, but plaintiff primarily complains of defendants' alleged misrepresentations regarding their privity with an affiliated company, Chubb Custom Insurance Company ("Chubb Custom"), which was a defendant in an earlier case in another jurisdiction – a case which plaintiff argues has preclusive effect on the interpretation of the Rust Exclusion in this case.  Plaintiff argues that this misconduct, as well as other misconduct in the course of litigation, is so egregious that the court should utilize either Federal Rule of Civil Procedure 37 or the court's inherent powers to strike all of defendants' defenses and impose default as a sanction against defendants.

Plaintiff raises a number of specific allegations against defendants, grouped broadly as follows: (1) privity with Chubb Custom, (2) failure to educate a Rule 30(b)(6) witness, (3) false statements, and (4) refusal to cooperate.

A. Privity with Chubb Custom

On September 19, 2018, the United States District Court for the District of Alaska, in issuing partial summary judgment, found a Rust Exclusion that is identical to the one at issue here to be ambiguous as a matter of Alaska law. Copper River Seafoods, Inc. v. Chubb Custom Ins. Co., 2018 WL 6220064 (D. Alaska Sept. 19, 2018). The insurer-defendant in that case was Chubb Custom, an affiliate of defendants. Despite the fact that the finding in that case was based in part on contract language and involved different applicable law, plaintiff contends that the Alaska court's finding of ambiguity in that case is binding on the defendants in this case and thus defendants are estopped from arguing that the exclusion is unambiguous.

Chubb Custom is owned by Chubb INA Holdings, Inc., which also owns defendants Federal and ACE. Chapin Dec., ECF No. 169-2 ¶¶ 4-6. Prior to October 1, 2017, Chubb Custom was owned by defendant Federal. Id. at ¶ 8. A series of corporate transactions resulted in Executive Risk Indemnity Inc., another subsidiary of Chubb INA Holdings, taking ownership of Chubb Custom as of October 1, 2017. Id. Chubb Custom and Federal utilize the same pool of claims personnel to handle and assess claims. Id. at ¶ 11. Prior to January 1, 2017, those

individuals were employed by Federal and today they are employed by ACE.  Id. at ¶¶ 11-13.  All claims personnel who worked on the Copper River case were, until January 1, 2017, employees of Federal and all claims personnel who worked on plaintiff's claim were employees of ACE.  Id.  Only one individual, James Hamilton, a Vice President of ACE, worked on both plaintiff's claim and on the Copper River claim.  Id. at ¶ 15.

During discovery, plaintiff sought information through depositions and written discovery concerning the relationship that existed between these entities in order to prove their issue preclusion argument.  Plaintiff contends that (1) defendants misrepresented or obfuscated as to that relationship in responses to written discovery and (2) failed to prepare their Rule 30(b)(6) witnesses to testify as to that corporate relationship.

1. Written Discovery

In June 2020, plaintiff requested a number of items of discovery involving the Copper River litigation including: an admission that "Chubb Custom Insurance Company and Federal Insurance Company are in privity with respect to the matter of Copper River Seafoods," ECF No. 148-1 at Request for Admission ("RFA") No. 47, production of "the name, address, and title for each representative who was responsible for the handling,

processing, adjusting, analyzing coverage, or underwriting of the claim at issue in the matter of Copper River Seafoods," id. at Interrogatory No. 14, and the claims file and training materials concerning that case. Id. at Request for Production ("RFP") Nos. 38 & 51.

On July 3, 2020, defendants denied that they were in privity with Chubb Custom with respect to Copper River. See ECF No. 148-4 at RFA No. 47. On July 13, 2020, defendants objected to Interrogatory No. 14 as irrelevant, inasmuch as it "refer[red] to a claim that went to litigation in Alaska, involving a completely different policy, a different insurance company, and dissimilar facts." ECF No. 148-8 at Interrogatory No. 14. On July 14, 2020, defendants declined to produce the claims file and training materials concerning Copper River because it "involve[d] another entity." ECF No. 148-9 at Nos. 38 & 51.

On July 30, 2020, plaintiff states that its counsel and defendants' counsel met and conferred to discuss defendants' refusal to provide information about the identity and employer of those who handled Copper River. Plaintiff alleges that its counsel proposed defendants at least reveal whether the people who handled plaintiff's claim also handled the Copper River claim. On August 7, 2020, defendants' counsel followed up on

the July 30 meet-and-confer call with an e-mail. ECF No. 148-11. In response to Interrogatory Number 14 and plaintiff's clarifying questions, counsel said: "[t]he personnel that handled the Copper River claim were not employed by ACE American Insurance Company." Id. He added that Mr. Hamilton was not the "claim owner" and that the adjuster in Copper River was "a former employee," without identifying that individual's identity. See id. Regarding RFP 52, defendants' counsels' view was that "the existence of a claims handling file in a separate lawsuit, involving non-parties, pertaining to unrelated matters, is immaterial . . . and disproportionate to the needs of the case." Id.

## 2. Rule 30(b)(6) Deposition

On June 29, 2020, plaintiff served each defendant with a Rule 30(b)(6) notice that included several topics related to privity and Copper River. ECF No. 148-3 at Topics 1, 42–43. On July 7, 2020, defendants' counsel claimed by letter that plaintiff was not entitled to take a Rule 30(b)(6) deposition. ECF No. 148-5. Plaintiff filed a motion to compel the Rule 30(b)(6) deposition on July 14, 2020, which defendants responded to in opposition on July 28, 2020. ECF Nos. 111, 125. In their response, defendants claimed Copper River "did not involve either defendant here," that plaintiff's inquiry into issues

surrounding that case involved "the acts of an entity that is
not a party to this case," and that the case involved a
different insurer.  ECF No. 125 at 7, 9.  On August 6, 2020, the
magistrate judge compelled defendants to sit for a Rule 30(b)(6)
deposition.  ECF No. 129.

On August 12, 2020, after two meet and confer phone
calls to narrow the Rule 30(b)(6) topics, the parties had a
conference call with the magistrate judge regarding, in part,
the interrelationships between defendants and Chubb Custom.
Defendants' counsel argued that the corporate structure issues
were "plainly irrelevant" because Copper River involved a
different insurance company.  Plaintiff argued that Copper River
was relevant, as it involved a Chubb INA entity that appeared to
have been Federal's wholly owned subsidiary and concerned an
identically phrased Rust Exclusion.  The magistrate judge
ordered defendants to prepare a witness regarding the corporate
structure, including the identities of their officers and
directors going back to the beginning of the Copper River claim.

On August 28, 2020, plaintiff deposed defendants'
corporate representative, during which the representative
testified that the individuals who worked on the Copper River
claim were employees of defendant Federal.  ECF No. 148-12 at
331.  He also confirmed that the claims personnel employed by

Federal had changed to being employed by ACE around January
2017.  Id. at 338.  Moreover, he testified that Federal and
Chubb Custom share the same group of employees who handle
claims.  Id.

During the deposition, the 30(b)(6) witness was unable
to answer a number of questions, which plaintiff argues stems
from a failure to prepare.  In particular, the deponent was
unable to identify the officers and directors of Federal, ACE,
and Chubb Custom since the Copper River claim.  Id. at 324-25.
The witness testified that he believed this information was
produced in discovery, which defendants' counsel clarified on
the record that it was not produced.  Id. at 325-26.  The
witness also testified that he did not investigate whether the
insured in Copper River has communicated with Chubb Custom about
whether the Rust Exclusion was ambiguous and had not reviewed
communications in the Copper River claims file in preparation
for the deposition.  Id. at 359-62.  These were topics that
plaintiff's counsel insisted the witness be prepared to answer
but to which defendants did not agree prior to the deposition.

## B. False Statements

Plaintiff raises a number of allegedly false
statements made by defendants in the course of litigation to
support the proposition that defendants' allegedly false

statements regarding the Copper River litigation were not isolated but instead a part of a pattern of deception.

First, plaintiff contends that defendants' counsel repeatedly falsely claimed that there were no underwriting manuals to produce in this case. Defendants' underwriter, Robert Tarpey, testified on March 24, 2020 that there was an online system where policyholder documents were housed, including a retention guide and flood guidelines. Tarpey Dep. 23-24. These documents were not discovered or produced during the first search of documents but were produced after being disclosed in Tarpey's deposition. While searching the online system based on Tarpey's testimony, defendants discovered an underwriting manual from May 2007, which they produced on May 13, 2020. See Tarpey Dec. ¶ 7, ECF No. 169-2; see also ECF No. 71. This document was not found in the initial searches because the custodians over those documents were unaware of the existence of any underwriting manual. Id. at ¶ 4. When defendants produced the manual, portions were redacted. Plaintiff moved for an order to compel that the redactions be lifted, which was granted by the magistrate judge. ECF No. 100.

Second, plaintiff claims that defendants misrepresented plaintiff's position in a reply brief in support of a motion to compel. Two days before defendants filed their

brief, plaintiff offered a compromise on the anticipation-of-litigation date whereby the parties would agree that plaintiff was entitled to work product protection beginning on January 18, 2019, rather than December 3, 2018, which was plaintiff's initial position.  ECF No. 148-16.  Defendants did not take this offer and stated in their brief that plaintiff "was committed to its . . . anticipation of litigation cutoff of December 3, 2018," and that "there was no flexibility in Ramaco's position."  ECF No. 84 at 13.  Plaintiff filed a sur-reply, with leave of the court, in part to inform the magistrate judge that plaintiff had offered the compromise position and that defendants' statement regarding plaintiff's position was inaccurate.  ECF No. 97.  The magistrate judge ultimately adopted the January 18, 2019 cutoff, without addressing the verity of defendants' statement.  ECF No. 100.

Third, plaintiff claims that defendants' counsel, in a declaration in support of defendants' motion to modify the schedule, misrepresented the magistrate judge's holding by stating that the magistrate judge had "rejected" the December 3, 2018 anticipation of litigation date.  ECF No. 108-2 at ¶ 2.  That statement read in part, "[d]efendants have been diligent, and have completed those depositions it could, which were those that were not impacted by: (a) Ramaco claiming a December 3,

10

2018 anticipation of litigation date (which was rejected by the Court's June 30, 2020 Order (Docket No. 100)." Plaintiff contends this was a misrepresentation because the magistrate judge's order never addressed the December 3, 2018 anticipation-of-litigation date in adopting January 18, 2019 as the cutoff date.

Fourth, plaintiff states that in connection with the same motion to modify the schedule, defendants assembled a hypothetical schedule of the remaining weeks of discovery, to demonstrate the difficulty in completing the remaining depositions. That schedule indicated that defendants planned to take a Rule 30(b)(6) deposition of plaintiff, which they did not ultimately take. Defendants assert they opted not to proceed with the Rule 30(b)(6) deposition based on "circumstances created by Ramaco's tactics, including its refusal to make certain experts available until the very end of the extended discovery schedule." They assert further that the extension which was granted was nonetheless necessary given that defendants needed to, and did, complete five depositions that were taken in August.

Fifth, plaintiff claims that defendants repeatedly misrepresented that they did not have reinsurance covering the claims at issue in this case. ECF No. 148-9 at RFP Nos. 49, 50.

Specifically, RFP Nos. 49 and 50 requested the underwriting file and communications between defendants and "Chubb Middle Market and/or Westchester," who were ostensibly reinsurers referenced in an internal company exchange that was produced in discovery. Defendants responded that the references to reinsurance in that exchange "were incorrect because there was no such reinsurance." Id. In a January 10, 2020 letter from defendants' counsel to plaintiff's counsel, defendants' counsel indicated that "there is no facultative or quota share reinsurance on this loss. We have confirmed that with regard to the claims and allegations of loss or damage that Ramaco made pre-suit, there is no reinsurance." ECF No. 148-9.

In preparing for Chapin's Rule 30(b)(6) deposition, defendants discovered that there was a generally applicable reinsurance treaty[1] that would cover, among other policies, plaintiff's policy if there was a liability in excess of a certain dollar amount. Defendants explained in that email that there had been no correspondence with the treaty reinsurers and there were no reinsurance notices or files relating to plaintiff's claim. They indicated that they had nothing new to

---

[1] Facultative reinsurance covers a single risk to an insurer, such as the risk of claims arising under one policy, whereas a reinsurance treaty covers an entire book of business, i.e., many policies.

produce and that the 30(b)(6) deponent could answer questions about reinsurance.

## C. Refusal to Cooperate

Plaintiff also contends that defendants engaged in "obstruct-and-delay" tactics, amounting to sanctionable misconduct.

First, plaintiff states that defendants failed to supplement written discovery requests, which defendants' counsel indicated they would supplement in a March 6, 2020 letter. ECF No. 148-18. Defendants indicated that they were waiting on production of the documents by a document vendor. Id. Defendants concede that as of briefing the sanctions motion, after the close of discovery and the dispositive motions deadline, they had not formally supplemented their responses; however, they indicate that the information that would be contained in such responses was already disclosed to plaintiff in other forms and that information and documents gathered from numerous searches have been produced to defendants on a rolling basis. Defendants also acknowledge that the Federal Rules of Civil Procedure require that the responses to written discovery requests be formalized.

Second, plaintiff contends that defendants failed to produce insurance licenses for those who handled plaintiff's insurance claim, which defendants had said they would produce. Plaintiff requested production of a copy of the insurance licenses of defendants' employees Frank Gonsalves, Michael Nicolaro, Tim Blake, Steven Magnotta, James Hamilton, and Kurt Chapin from 2016 to present on June 3, 2020. ECF No. 148-1 at RFP No. 29. Defendants objected to the RFP as irrelevant but indicated that they would produce "the West Virginia licensing information for these employees during the period they were handling the Ramaco claim." Resps. to RFPs, ECF No. 148-9. Plaintiff followed up on its request multiple times, and on August 18, 2020, defendants' counsel indicated by email that he would "check on the license materials and review any other places where [defendants] indicated a production would be made[] and provide an update." ECF No. 148-23. On August 24, 2020, he told plaintiff's counsel that defendants would "send . . . responsive items today." ECF No. 148-24. Plaintiff alleges that defendants never produced this information. Defendants have not responded to this allegation.

Third, plaintiff argues that defendants failed to follow through on a burdensome request to inspect the two silos on plaintiff's grounds that were not destroyed in the failure

event.  On April 21, 2020, defendants requested an inspection of the interior and exterior of the silos.  ECF No. 148-25. Plaintiff responded by stating that inspection of the interior of the silo above the hopper posed safety concerns and required plaintiff to halt operations and empty the silos.  ECF No. 148-26.  Plaintiff indicated that the request required greater specificity as to what kinds of equipment would be used and who would be involved in the inspection, and that the request could not be accommodated without substantial planning.  Id.  The parties met and conferred over the inspection, and defendants found plaintiff's conditions for inspection to be burdensome to the point of impossibility.  Defendants ultimately opted not to follow through with the inspection and not to seek an order compelling inspection without the conditions for inspection.

### III. Discussion

Plaintiff requests case dispositive sanctions. Plaintiff states that if the court does not grant its separate summary judgment motion, then the court should hold that the entire matter has been established in plaintiff's favor and that any affirmative defenses should be stricken as a sanction.  It argues that in that event, the case should proceed to trial only on plaintiff's claim for punitive damages and that the jury

should be instructed that defendants have engaged in bad-faith
conduct during litigation.  Remarkably, plaintiff argues that if
it prevails on its summary judgment motion, the court should
grant damages in excess of its losses, up to the maximum amount
recoverable under the policy limit.

Plaintiff argues that this court may impose case
dispositive sanctions either under Rule 37 or under the court's
inherent powers.  While this court may, under its inherent
powers, dismiss actions for deception of the court or abuse of
process, this is "the most extreme sanction" and must be
exercised with maximum restraint and caution, and only to the
extent that is necessary.  U.S. v. Shaffer Equipment Co., 11
F.3d 450, 462 (4th Cir. 1993).  Before dismissing a case
pursuant to the court's inherent powers, the court must consider
the following factors:

> (1) the degree of the wrongdoer's culpability; (2) the
> extent of the client's blameworthiness if the wrongful
> conduct is committed by its attorney, recognizing that
> we seldom dismiss claims against blameless clients;
> (3) the prejudice to the judicial process and the
> administration of justice; (4) the prejudice to the
> victim; (5) the availability of other sanctions to
> rectify the wrong by punishing culpable persons,
> compensating harmed persons, and deterring similar
> conduct in the future; and (6) the public interest.

Id. at 462-63.

Under Rule 37, the court has the power to sanction parties for discovery misconduct, including by "directing that . . . matters . . . be taken as established for purposes of the action, as the prevailing party claims"; "prohibiting the disobedient party from supporting or opposing designated claims or defenses"; "striking pleadings in whole or in part"; and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i)–(iii), (v)–(vi); Fed. R. Civ. P. 37(c)(1)(C). Given a party's right to trial by jury and the interest of a fair day in court, a four part test applies when deciding whether to dismiss a case based on discovery misconduct: "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., 872 F.2d 88, 92 (4th Cir. 1989). "Such an evaluation will insure that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default." Id.

Though plaintiff has presented a long list of complained-of conduct, some of which is objectionable, case dispositive sanctions in this case are unnecessary and would be grossly disproportionate to the alleged misconduct by plaintiff. The court notes that virtually all of the misconduct raised by plaintiff arises out of the acts of defendants' counsel, rather than defendants themselves, and there is little, if any, evidence that such conduct by defendants' counsel occurred out of bad faith rather than inadvertence. Additionally, the public interest is disserved by dismissing a case for reasons apart from the merits where lengthy discovery has already been completed and dispositive motions fully briefed.

First, as to written discovery on the Copper River litigation, it does not appear that defendants made any affirmative misrepresentations as to the relationship between Chubb Custom and defendants. For example, answers in written discovery that stated that Copper River involved a "different insurance company" or "another entity" from the defendants in this case were accurate statements, even if the companies utilized the same pool of claims adjusting personnel. While the court does not reach whether defendants were, as a matter of law, in privity with Chubb Custom, it suffices that the request to admit privity called for a legal conclusion on a complex

legal question, to which defendants staked out a reasonable
position by denying.

Second, to the extent plaintiff was misled or confused
by defendants' answers or statements concerning Copper River, it
was not prejudiced by those statements.  This is primarily
because Chubb Custom's participation in the Copper River
litigation is not relevant to the merits of this case.  As
explained further in the court's June 23, 2021 order on summary
judgment, that case is not preclusive against defendants.
Plaintiff is unable to clear the hurdle of identicality of
issues to that presented in Copper River, which involved an
insurance policy with materially different terms that were
pertinent to the decision in that case.  Without that threshold
showing, its issue preclusion argument fails, rendering the
question of privity between the defendant in the first case and
these defendants irrelevant.

The irrelevance of the privity argument also militates
against sanctioning defendants based on the supposed failure of
their 30(b)(6) deponent to prepare by reading the Copper River
claim file or searching communications between the insured in
Copper River and the insurer, inasmuch as plaintiff was not
prejudiced by any unpreparedness.  Likewise, his inability to
name the officers and directors of the three companies, which

does not obviously arise out of a failure to prepare, did not prejudice plaintiff in making its case.

Beyond the _Copper River_ issues, two of the five allegedly false statements unrelated to defendants' relationship with the _Copper River_ case appear to be honest and routine mistakes of fact and do not appear to have caused any prejudice to plaintiff.  For example, defendants inquired of the employees most knowledgeable about the existence of any underwriting manuals to respond to plaintiff's RFP prior to their informing plaintiff that there were no manuals to produce.  When defendants learned that there was in fact an underwriting manual, they produced it.  There is no evidence in plaintiff's motion that the underwriting manual was relevant to the merits of this case or that it suffered prejudice by its late disclosure.

Similarly, defendants' initial denial that plaintiff's claim was covered by reinsurance, while incorrect, appears to be an inadvertent misstatement, resulting from defendants' conflation of "reinsurance" with "facultative reinsurance."  As with the underwriting manual, defendants informed plaintiff when they learned that their prior answer was inaccurate. Furthermore, plaintiff has made no showing as to the relevance

of defendants having reinsurance, or prejudice to plaintiff from the late disclosure.

Additionally, two of the five alleged false statements unrelated to Copper River do not appear to be false at all. For example, when the magistrate judge adopted January 18, 2019 as the "anticipation-of-litigation" date for work product purposes, implicit in that holding was the rejection of plaintiff's original position that the date should be December 3, 2018. Thus, defendants' statement in their declaration to modify the scheduling order was not inaccurate. Moreover, the statement about what the magistrate judge had decided was entirely ancillary to the motion to extend the deadline and was not a basis for the court's order granting the deadline. See ECF No. 121. Plaintiff took the opportunity, in its opposition to defendants' motion to extend, to clarify and contextualize what the magistrate judge had specifically ruled. ECF No. 118 at 17. Thus, plaintiff was not prejudiced by the statement.

Similarly, defendants' inclusion of a Rule 30(b)(6) deposition of plaintiff on their hypothetical schedule submitted in connection with that motion was not a falsehood, as that schedule appears to reflect defendants' intention at the time, which subsequently changed. And, inasmuch as the court's order granting the motion to modify the schedule was largely based on

other grounds, any misrepresentation would not have resulted in prejudice to plaintiff.

The one false statement by defendants which is of some concern is defendants' statement in its reply brief in support of its motion to compel that plaintiff "was committed to its . . . anticipation of litigation cutoff of December 3, 2018," and that "there was no flexibility in Ramaco's position," despite the plaintiff having contacted defendants two days earlier to offer a compromise position of January 18, 2019. That statement was incorrect, and defendants knew it was incorrect. Accordingly, it should not have appeared in defendants' reply brief.

There is no evidence, however, that defendants included this untrue statement in their reply brief intentionally or willfully, and the court notes that the offer from plaintiff came just two days before the submission of defendants' reply brief. Further, plaintiff has not shown prejudice inasmuch as (1) they filed a sur-reply to that motion correcting the record prior to the magistrate judge's ruling and (2) the magistrate judge adopted the January 18, 2019 cutoff date that plaintiff had indicated was an acceptable cutoff date. Additionally, this error appears to be the mistake of defendants' counsel in drafting their brief, not defendants

themselves and concerns a fairly minor matter of discovery. Crucially, to the extent plaintiff believed this reflected misconduct by defendants' counsel, plaintiff had other recourse at its disposal more proportionate to the conduct than default, such as Rule 11 sanctions.

As it relates to conduct allegedly taken pursuant to an obstruct-and-delay strategy, the court agrees with plaintiff that representations made by defendants' counsel to plaintiff's counsel that written discovery would be supplemented and that insurance licenses for specific individuals would be produced should have been observed. Defendants' counsel acknowledges that they fell short of what is required by the Federal Rules of Civil Procedure as it relates to the written discovery and do not offer an explanation as to why insurance licenses were not produced despite their representations to opposing counsel otherwise.

Still, other enforcement mechanisms exist to force production of documents or written discovery. Such matters are ordinarily handled by motions to compel, and if plaintiff thought that the result of such supplementation respecting the insurance licenses could have made a substantial difference in connection with summary judgment, which appears doubtful, it could have sought an extension or a motion to compel. Moreover,

plaintiff has not demonstrated it suffered prejudice resulting from these failures.  As to the written discovery requests, they do not contest that they received the underlying information and documents that required formalized supplementation.  Plaintiff has not explained the relevance of the insurance licenses of these individuals to the merits of the claim or what prejudice it suffered as a result of not receiving them.  Additionally, to the extent these errors were discovery misconduct, they are attributable to defendants' counsel, not defendants themselves.

Finally, defendants' request to search the remaining two silos and its subsequent choice to not pursue an investigation of the silos was clearly not misconduct.  Rather, it appears that defendants intended to conduct such an investigation and abandoned that course of investigation in light of the conditions plaintiff placed on such an investigation.  Given the relevance of the silo construction and the similarity of these two silos to the one that collapsed, such a search likely would have been reasonable to the claim and not done in order to harass plaintiff.  Similarly, their choice to abandon such a search appears reasonable in light of the difficult and costly conditions plaintiff insisted upon.

In sum, plaintiff has requested extraordinary relief but has not demonstrated extraordinary misconduct.  In the

course of a lengthy and wide-ranging discovery process, which involved defendants producing over 100,000 pages of documents and plaintiff taking 19 depositions, errors appear to have been made and some obligations were not met.  However, plaintiff has failed to show that any intentional or bad-faith conduct prejudiced it in this case, and certainly not to such an extent that this court would impose the most severe punishment it has in its arsenal and deprive defendants of their right to a trial on the merits.

### III. Conclusion

Accordingly, it is hereby ORDERED that plaintiff's motion for sanctions be, and it hereby is, denied.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: June 24, 2020

John T. Copenhaver, Jr.
Senior United States District Judge