```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**RAMACO RESOURCES, LLC,**

      Plaintiff,

v.                                        Civil Action No. 2:19-cv-00703

**FEDERAL INSURANCE COMPANY; and**
**ACE AMERICAN INSURANCE COMPANY,**

      Defendants.

<u>ORDER</u>

      On April 24, 2024, the court held a status conference to discuss the post-remand status of the above-captioned matter. During the conference, the court <u>sua sponte</u> raised concerns regarding the propriety of defense counsel, Hissam Forman Donovan Ritchie PLLC (the "Firm"), from proceeding with this case despite having employed the undersigned's former clerk, who had worked on this matter prior to its appeal. <u>See</u> Transcript of Status Conf. 4:11-6:9, ECF No. 428 (Apr. 24, 2024) (hereinafter, "Conf. Tr.").

      The court directed the parties to brief the issue, <u>see</u> Conf. Tr. 7:3-8:5 (defense counsel asking to brief the matter and all parties subsequently agreeing to a briefing schedule), which they have now done. <u>See</u> Defendants' Brief Regarding Disqualification, ECF No. 249 (hereinafter, "Def. Brief");

Plaintiff's Response in Opposition to Defendants' Brief Regarding Disqualification, ECF No. 430 (hereinafter, "Pl. Resp."); Defendants' Reply Brief Regarding Disqualification, ECF No. 431 (hereinafter, "Def. Reply").

## I. Background

The above-captioned matter was removed to this court on September 27, 2019. See ECF No. 1. It involves an insurance contract dispute between Ramaco Resources, LLC ("Ramaco" or "plaintiff") and defendants Federal Insurance Company and ACE American Insurance Company ("defendants"). The court held a trial for this matter from June 30, 2021, through July 15, 2021, in which the jury returned a verdict of $7.1 million in contract damages, $500,000 in prejudgment interest, and $25 million in Hayseeds damages. See ECF Nos. 317-345. After trial, the court granted defendants' renewed motion for judgment as a matter of law by reducing the contract damage award to $1.6 million and $200,000 in prejudgment interest, and conditionally granting defendants' motion for new trial as to Hayseeds damages. See ECF No. 393 at 63. Ramaco appealed. See ECF No. 395.

From August 2021 to August 2022 (i.e., as this court deliberated on and issued its order on post-trial motions), Carl Shaffer ("Attorney Shaffer") served as a law clerk to this

court.[1]  See Declaration of Carl Shaffer ¶ 4, ECF No. 429-2 (hereinafter "Shaffer Decl.").  In January 2023, Attorney Shaffer became employed as an associate attorney at the Firm.  Id. ¶ 3.

On appeal, the United States Court of Appeals for the Fourth Circuit reinstated the jury's total general damages award of $7.6 million and affirmed this court's "alternative holding ordering a new trial on Hayseeds damages."  See Ramaco Res., LLC v. Fed. Ins. Co., 74 F.4th 255, 267-68 (4th Cir. 2023) (appearing on the docket of the above-captioned matter at ECF No. 405).  The Fourth Circuit remanded this matter to this court to hold a new trial on Hayseeds damages.  Id.

From August 2022 to August 2023 (i.e., as the Fourth Circuit panel drafted its opinion on this case), Kayla Reynolds ("Attorney Reynolds") served as a law clerk for the Hon. Stephanie D. Thacker, who sat on the Fourth Circuit panel that ruled upon this matter.  Declaration of Kayla Reynolds ¶ 4, ECF No. 429-3 ("Reynolds Decl.").  In August 2023, Attorney Reynolds became employed as an associate attorney at the Firm, where she is now a non-equity partner.  Id. ¶ 3, 4.

---

[1] Attorney Shaffer had also previously served as a law clerk for this court from September 2018 to September 2019.

The Fourth Circuit issued its opinion on August 3, 2023, see ECF No. 405, and, pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure, issued its mandate on August 23, 2023, see ECF No. 410.

On August 29, 2023, Michael B. Hissam ("Attorney Hissam") and Jonathan Zak Ritchie ("Attorney Ritchie"), each of whom are partners at the Firm, filed notices of their appearances in this matter on behalf of defendants. See ECF Nos. 413, 415. The Firm, through Attorney Ritchie, had been representing defendant ACE American Insurance Company ("ACE") since January 2021 in a state court matter unrelated to this case, and ACE "asked [Attorney Ritchie and the Firm] to provide representation to the Defendants in this case following the Fourth Circuit's decision." Def. Brief 2.

On August 16, 2023 – 13 days before the Firm noted its appearance in this case on behalf of defendants – Attorney Ritchie "circulated a conflict check email . . . to all persons at the Firm indicating that the Firm may represent [defendants]" in this matter. Declaration of J. Zak Ritchie ¶ 5, ECF No. 429-1 ("Ritchie Decl."). "Immediately thereafter," Attorney Ritchie was approached separately by Attorneys Shaffer and Reynolds, each of whom "verbally disclosed" that this matter was pending before their respective judges during their respective

clerkships. Id. ¶ 6; Shaffer Decl. ¶ 6; Reynolds Decl. ¶ 5. Attorney Ritchie did not ask about the extent of either attorney's involvement in this case, but he separately told both that they would be "screened from the case," "reminded [them] not to discuss the case with anyone and to excuse [themselves] from any conversations at the [F]irm in which any discussion of the case might inadvertently arise," and "restricted" each attorney's "electronic access to all case files concerning the [d]efendants." Ritchie Decl. ¶ 8-9; see Shaffer Decl. ¶ 7-8; Reynolds Decl. ¶ 6-7. Attorney Ritchie represents that "[t]here have been no known breaches of the screen, which will continue for the life of this case." Def. Brief 3.

The Firm, on behalf of defendants, began to engage in post-remand communication with plaintiff's counsel on September 7, 2023. See Pl. Resp. 4. Counsels' initial conversation pertained only to "the facilitation of [Federal Insurance Company's] payment of the portion of the judgment that had been affirmed (sic, the $7.6 million that had been reinstated) by the Fourth Circuit" and "did not concern any aspect of the remand proceeding." Def. Reply 2 n.2. On January 31, 2024, "counsel for [p]laintiff (also new to the case upon remand) reached out to [Attorney Ritchie] concerning a proposed schedule" for post-remand proceedings in this court. Def. Brief 3; Ritchie Decl. ¶

14. Counsel for the parties exchanged emails and calls in an attempt to agree on a proposed schedule, but their efforts were unsuccessful, and the parties sought to confer with the court. See ECF Nos. 423, 424, 425 (filings requesting a conference) (filed March 13, 14, and 21, 2024, respectively).

The court then set a status conference. See ECF No. 426. On April 24, 2024, at the status conference, the court sua sponte raised concerns regarding the Firm's representation of defendants in light of Attorney Shaffer's "intimate[]" work on this matter while clerking for this court. Conf. Tr. 4:24. Defense counsel had not previously informed plaintiff or plaintiff's counsel of Attorney Shaffer's and Attorney Reynolds's conflict, and the status conference was the first time that plaintiff and plaintiff's counsel learned of Attorney Shaffer's time as a law clerk in this court during the pendency of this matter from 2021 to 2022. See Pl. Resp. 4.

Defense counsel asked for an opportunity to file briefing responding to the court's concerns and addressing the propriety of the Firm's representation of defendants in this matter, and the parties agreed to the briefing schedule. Such briefing is now complete.

II. Discussion

As an initial matter, the court notes that it is "charged with the duty and responsibility of supervising the conduct of attorneys who appear before it." Tessier v. Plastic Surgery Specialists, Inc., 731 F. Supp. 724, 729 (E.D. Va. 1990) (collecting cases); see MMR/Wallace Power & Indus. v. Thames Associates, 764 F. Supp. 712, 717 (D. Conn. 1991). The court must exercise that duty in a manner "predicated upon a proper understanding of applicable ethical principles." Aetna Cas. & Sur. Co. v. United States, 570 F.2d 1197, 1200 (4th Cir. 1978).

"Courts are 'loathe to separate a client from his chosen attorney,'" and "[d]isqualification of an attorney is not lightly granted." In re Heck's, Inc., 83 B.R. 410, 416 (S.D.W. Va. 1988). "Only in extraordinary instances may the client be deprived of the privilege of selecting and continuing with his own counsel." Id. at 423; see also Kanter v. Robertson, 102 F.2d 92, 93 (4th Cir. 1939) ("Only in the rarest cases should the [client] be deprived of selecting his own counsel"). "[T]he court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." Reese v. Virginia Int'l Terminals, Inc., 894 F. Supp. 2d 665 (E.D. Va. 2012) (quoting Wyeth v. Abbott Lab'ys, 692 F.

Supp. 2d 453, 457 (D.N.J. 2010) (quoting U.S. v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980))).

The Fourth Circuit has additionally cautioned against a "mechanical and didactic application of" ethical rules where doing so might do "more harm than good" in light of the "problems sought to be met" by such rule and "how real in the practical world they are" in a given case. Aetna Cas. & Sur. Co., 570 F.2d at 1202 (quoting International Electronics Corp. v. Flanzer, 527 F.2d 1288, 1293 (2d Cir. 1975)

Under Local Rule of Civil Procedure 83.7, attorneys practicing in this court "shall conduct themselves in accordance with the Rules of Professional Conduct and the Standards of Professional Conduct promulgated and adopted by the Supreme Court of Appeals of West Virginia, and the Model Rules of Professional Conduct published by the American Bar Association." L. R. Civ. P. 83.7.  Accordingly, attorneys practicing in this district must abide by the West Virginia Rules of Professional Conduct (the "West Virginia Rules") and the Model Rules of Professional Conduct (the "Model Rules").  Id.; see In re Morrissey, 305 F.3d 211, 224, 225 n.6 (4th Cir. 2002) (recognizing that attorneys practicing in the Eastern District of Virginia are subject to Virginia's ethical codes, as articulated by the district's local rules).

The relevant rule, Rule 1.12, is identical between the West Virginia Rules and the Model Rules.[2] Rule 1.12(a) states in relevant part that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a . . . law clerk to" a judge. Model Rules Prof'l Conduct 1.12(a); W. Va. R. Prof'l Conduct 1.12(a). It is undisputed that Rule 1.12(a) applies to Attorneys Reynolds and Shaffer and prohibits them from "represent[ing] anyone in connection with this matter." Id.; see Def. Reply 6 ("[Defendants] do[] not dispute that [Attorneys Reynolds and Shaffer] are individually disqualified under Rule 1.12(a)").

However, it is possible for a law firm for which a disqualified lawyer works to undertake representation that the disqualified lawyer would be prohibited from undertaking. See Rule 1.12.(c). Rule 1.12 continues:

> (c) If a lawyer is disqualified by [Rule 1.12(a)], no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:
>
>> (1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

---

[2] Accordingly, the court will refer to both rules as "Rule 1.12."

> (2) written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this Rule.

The Firm may thus continue representation under the Rules so long as both requirements of Rule 1.12(c) are satisfied as to Attorneys Reynolds and Shaffer.

### a. Timely Screen and Fee

Rule 1.12(a)(1) requires that, in order for the Firm to continue representation under the Rules in this matter, Attorneys Shaffer and Reynolds be "timely screened" from any participation therewith and are "apportioned no part of the fee therefrom." Rule 1.12(a)(1).

Attorney Ritchie has attested that neither Attorney Shaffer nor Attorney Reynolds "have been apportioned any part of the fee" accrued to the Firm from this case. Ritchie Decl. ¶ 12. That declaration appears sufficient for plaintiff, who has not challenged it. See generally Pl. Resp. The court finds this requirement satisfied.

The parties disagree as to whether Attorneys Shaffer and Reynolds were "timely screened." Plaintiff argues that the screen was not timely as to Attorney Shaffer because it was

implemented only in August of 2023, approximately seven months after he began his employ at the Firm, despite the Firm's continued representation of ACE in an unrelated matter.  See Pl. Resp. 7-8.  Defendants contend that the screen was timely because it was implemented immediately upon determining that Attorney Shaffer was disqualified from participation in the Firm's representation of defendants in this matter – a representation that only began in August of 2023, after remand.

Rule 1.12(a)(1) clearly contemplates a matter-specific screen, requiring that any disqualified attorney must be screened "from any participation in the matter."  Rule 1.12(a)(1) (emphasis added).

Here, when Attorneys Reynolds and Shaffer informed Attorney Ritchie of their conflict with this matter, Attorney Ritchie informed them that "they would be screened from the case," instructed them "not to discuss the case with anyone," "restricted" their "access to all case files concerning the [d]efendants," and "communicated with all [F]irm personnel that they were not to communicate with [Attorneys Shaffer and Reynolds] regarding this case."  Ritchie Decl. ¶¶ 8-10; see Shaffer Decl. ¶¶ 6-8; Reynolds Decl. ¶¶ 5-7.  The screen has remained and will remain in effect "for the life of this case."  See Ritchie Decl. ¶¶ 9-10, 13; Shaffer Decl. ¶ 9; Reynolds Decl.

¶ 8.   Inasmuch as the screen was implemented "immediately" upon determination of the conflict of each attorney regarding this matter, the court finds that the screen was timely.  And it being understood that Attorneys Reynolds and Shaffer have not and will not be apportioned any part of the fee from this case, the court finds that Rule 1.12(a)(1) is satisfied.

### b.   Notice

Under Rule 1.12(a)(2), the Firm must also "promptly" provide written notice "to the parties and [the court] to enable them to ascertain compliance with the provisions of this Rule." Rule 1.12(a)(2).  Comments to the Model Rules provide that such notice should include a description of the screened lawyer's prior representation and of the screening procedures employed and "generally should be given as soon as practicable after the need for screening becomes apparent."  Model R. Prof'l Conduct, Rule 1.12, Cmt. 5.

As indicated by the text of the rule, the notice requirement is prophylactic.  Prompt notice of conflict and screening ensures that the court and all parties have an "opportunity to protest and to allow arrangements to be made for monitoring compliance."  Restatement (Third) of the Law Governing Lawyers § 124 (2000).  Courts have held that notice provided after delay may still be sufficient even if not given

"as soon as practicable," so long as the circumstances do not indicate a taint on the representation, opposing parties have not been prejudiced, a screen was timely introduced, and disqualified attorneys did not share any confidential information. See Monument Builders of Pennsylvania, Inc. v. Cath. Cemeteries Ass'n, Inc., 190 F.R.D. 164, 168 (E.D. Pa. 1999) (finding the firm is not disqualified under analogous rule where notice given at "the first Rule 16 conference" and disqualified attorney was screened and had not shared confidential information); Am. Tax Funding, LLC v. City of Schenectady, No. 1:12-CV-1026 MAD/RFT, 2014 WL 6804297 (N.D.N.Y. Dec. 2, 2014) (permitting law firm representation where law firm waited one week to inform tribunal and opposing parties that the disqualified attorney had been a law clerk and where a screen had been timely implemented); Reese v. Virginia Int'l Terminals, Inc., 894 F. Supp. 2d 665 (E.D. Va. 2012) (refusing to disqualify a law firm "[i]n the absence of any articulable prejudice to" the opposing party under Virginia's ethical code regarding imputation of conflicts from prior representation); see also Aetna Cas. & Sur. Co., 570 F.2d at 1202 (warning against rigid application of the rule where practical circumstances do not so warrant).

13

Plaintiff contends that the above-cited cases are distinguishable. In Monument Builders, for example, the disqualified lawyer had not obtained any confidential information regarding the proceeding during her time as a law clerk, whereas in this matter Attorney Shaffer was "intimately" involved in the court's deliberation. Conf. Tr. 4:11; see Monument Builders, 190 F.R.D. at 168. In Am. Tax Funding, LLC, the extent of the disqualified lawyer's participation as a law clerk was that he had merely observed a scheduling conference, and the delay of the notice provided by the disqualified law firm was far shorter than the case here – there, it was one week; here, it was approximately seven months.[3] See Am. Tax Funding, LLC, 2014 WL at *4. However, the thrust of the precedent is that courts must analyze a potential conflict of a prior judicial law clerk in the context of the circumstances of a given case, keeping vigilant watch for prejudice while crediting timely and effective screens.

Here, the Firm failed to provide notice to the court and plaintiff of the conflict and screening of Attorneys Shaffer and Reynolds until the court raised the issue at the April 24, 2023, status conference. It is clear to the court that they

---

[3] Approximating notice as provided at the April 24, 2024, status conference.

should have done so sooner. Indeed, the Firm should have provided both the court and all parties notice of Attorney Shaffer's and Attorney Reynolds's conflicts when counsel began on September 7, 2023, to engage in post-remand communication regarding the payment of the reinstated jury award.

The court nonetheless declines to disqualify the Firm from their representation of defendants in this matter. The parties have not yet engaged in substantive proceedings in this matter since it was remanded by the Fourth Circuit. To be sure, counsel for the parties have, beginning on September 7, 2023, discussed payment of the jury award of $7.6 million as ordered by the Fourth Circuit and, beginning on January 31, 2024, engaged in conversation to determine a proposed schedule, but neither the parties nor the court have yet engaged on the merits of this matter post-remand. Further, the court is satisfied that the screens of Attorneys Shaffer and Reynolds were timely implemented and that they have not discussed this matter with other attorneys or employees at the Firm.

Given the lack of substantive discussion or activity in this matter during the entire course of the Firm's representation of defendants (i.e., post-remand), the immediate and effective screen imposed by the Firm between this matter and Attorneys Reynolds and Shaffer, and the fact that prejudice has

15

not been alleged, the court finds that the Firm's failure to provide sooner notice of Attorney Reynolds's and Attorney Shaffer's disqualification does not justify the Firm's disqualification from this matter.

### III. Conclusion

In light of the foregoing, the court declines to disqualify the Firm from this case. The court ORDERS that the Firm must maintain for the life of this case the described screen of Attorneys Shaffer and Reynolds.

The court ORDERS that lead counsel for the parties appear for a status and scheduling conference before the court at 11:00 am on June 21, 2024.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: June 10, 2024

John T. Copenhaver, Jr.
Senior United States District Judge