UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

RAMACO RESOURCES, LLC,

      Plaintiff,

v.                          Civil Action No. 2:19-CV-00703

FEDERAL INSURANCE COMPANY;
and ACE AMERICAN INSURANCE COMPANY,

      Defendants.


MEMORANDUM OPINION AND ORDER

      Pending is plaintiff's motion for summary judgment on each of its three economic loss models, filed on May 1, 2025. See ECF Nos. 559 (motion); 560 (memorandum in support). Pending as well is defendants' motion for partial summary judgment in its favor with respect to Ramaco's "Eight Kay Mine Theory," filed on May 1, 2025. See ECF No. 561. The parties have filed responses and replies to these motions. See ECF Nos. 592, 609, 617, and 619.


I.     BACKGROUND

      Plaintiff Ramaco Resources, LLC ("Ramaco") is a publicly traded coal mining company operating in, among other places and at all times relevant herein, West Virginia. See Defs.' Mot. Par. Summ. J., ECF No. 561, Ex. 36 (SEC 10-K

Disclosure Fiscal Year 2024) at 4. Defendant Federal Insurance Company ("Federal") is an Indiana corporation with its principal place of business in New Jersey. See Answer to First Complaint, ECF No. 29 at ¶11. Defendant ACE American Insurance Company ("ACE") is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. Id. at ¶12.

Plaintiff mines coal from four sets of properties that it refers to as complexes, consisting of the Elk Creek Complex, Berwind Complex, Knox Creek Complex, and Maben Complex. See Defs.' Mot. Par. Summ. J., ECF No. 561, Ex. 36 (SEC 10-K Disclosure Fiscal Year 2024) at 4.

The Elk Creek Complex is located approximately 45 miles south of Charleston, West Virginia, in Logan, Wyoming, and Mingo Counties. See id. at 67. Currently, Elk Creek has seven active mines. These are

- The Ram No. 1 Surface and Highwall Mine

- The Ram No. 3 Surface and Highwall Mine

- The Stonecoal No. 2 Alma Deep Mine

- The Rockhouse Eagle Deep Mine

- The No. 2 Gas Deep Mine

- The Michael Powellton Deep Mine, and

- The Crucible Deep Mine Lower Cedar Grove B and C seams.

There are also two planned and permitted mines at Elk Creek:

- The Ram No. 2 Surface and Highwall Mine, scheduled to start in late 2025, and

- The Glen Alum Tunnel #1 Deep Mine, scheduled to start in 2027.

Finally, Elk Creek has two permitted but inactive mines:

- The Eight Kay Deep Mine, projected to start in 2027, and

- The Monarch Deep Mine, projected to start in 2026.

Id.

After being mined, raw coal must be processed at a preparation plant before it is marketable for delivery.  See ECF No. 371, Ex. E (Blanchard Tr. Transcript. July 1, 2021) at 18-20.  Elk Creek contains a preparation plant, built in 2017, which, until expanded in June 2023, could process 700 tons of coal per hour.  See ECF No. 561, Ex. 36 (SEC 10-K Disclosure Fiscal Year 2024) at 68.  In June 2023, Ramaco completed an

3

expansion of the Elk Creek preparation plant, which raised the plant's processing capacity to 1050 tons per hour.  Id.

The Elk Creek Complex contains three silos, which were being used to process coal when one of the silos collapsed on November 5, 2018.  At the time of the failure event, the three silos were covered as a single building under an all-risk property insurance policy issued by defendant Federal.  See ECF No. 154-16, Policy FIC_008579.  After the silo collapse, Ramaco filed a claim with Federal under the policy.

Federal denied the claim in January 2019, and the matter was tried before a jury in a twelve-day bifurcated trial from June 30, 2021, to July 16, 2021.  After the first phase of the trial established liability in favor of Ramaco, the jury awarded an approximate total of $7.1 million in contract damages and $0.5 million in pre-verdict interest.  See Ramaco Res., LLC v. Fed. Ins. Co., 589 F. Supp. 3d 567, 571 (S.D.W. Va. 2022), aff'd in part, rev'd in part & remanded, 74 F.4th 255 (4th Cir. 2023) (appearing on the docket at ECF No. 393).  Under Hayseeds, Inc. v. State Farm Fire & Cas, policyholders who "substantially prevail" against their insurers over property damage claims are entitled to reasonable attorneys' fees, aggravation and inconvenience damages, and damages for net economic losses

4

caused by the delay in settlement.  352 S.E.2d 73, 80 (W. Va. 1986).

The court found that Ramaco, by virtue of the $7.6 million verdict, had substantially prevailed.  The jury then, in the second phase of the trial, considered <u>Hayseeds</u> damages and returned a verdict in Ramaco's favor in the amount of $25,000,000 for aggravation and inconvenience.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Hayseeds, Inc. v. State Farm Fire & Cas.</u>, 352 S.E.2d 73 (W. Va. 1986).

During the <u>Hayseeds</u> phase of the trial, the court heard arguments as to the scope of <u>Hayseeds</u> damages, during which time defendants' counsel stated their position that the <u>Hayseeds</u> portion of the trial should proceed only on aggravation and inconvenience damages — excluding the net economic loss portion of <u>Hayseeds</u> damages — because "full net economic damages were claimed and recovered under the [$7.6 million] jury verdict, including all interest," meaning there was "no net economic damages evidence to be introduced."  Tr. Transcript. 2298:12-16, ECF No. 392 (transcript proceedings on July 16, 2021).  In response, plaintiff stated, "the plaintiff does not have any further evidence on that economic loss damages."  <u>Id.</u> at 2298:19-20.  When the court sought to clarify, the court and plaintiff's counsel had the following exchange:

> THE COURT: What we're dealing with now is what the jury's going to take into account having to do with the denial. And what I need for you to do is to address what factors should go to the jury on that point.
>
> Now, if you're not making a claim for net economic loss, that's fine; it can simply go on the basis of aggravation and inconvenience.
>
> MS. POMEROY (PLAINTIFF'S COUNSEL): Yes, sir.
>
> THE COURT: Well, if that's the case, then it seems to me that the Instruction Number 23 covers the matter. That's all the jury's going to be asked to consider.

Id. at 2299:6-19. That trial instruction provided:

> You may award Ramaco such sums as you believe based on a preponderance of the evidence will fairly and reasonably compensate Ramaco for any aggravation and inconvenience Ramaco suffered as a result of the defendants' actions in denying the claim . . . . Such damages are not to be awarded as punitive damages or retribution or punishment, nor for attorney fees, but solely to compensate for proved aggravation and inconvenience.

Id. at 2299:6-19. Plaintiff's counsel responded that plaintiff was "fine with that instruction." Id. at 2307:23-24.

After trial, the court granted defendant Federal's renewed motion for judgment as a matter of law, reducing contract damages and interest to $1.8 million. By virtue of the reduced amount, the court found that Ramaco had not substantially prevailed on its claim. The court therefore rejected Hayseeds damages but conditionally granted a new trial on Hayseeds damages in the event the appellate court found they

6

were permissible, because the $25 million figure awarded by the jury was punitive.  See ECF No. 393.

On appeal, the Fourth Circuit reversed in part and affirmed in part.  See Ramaco Res., LLC, v. Fed. Ins. Co., 74 F.4th 255, 263 (4th Cir. 2023).  The Fourth Circuit reversed the court's decision as to contract damages and interest and reinstated the jury's award of $7.6 million, id. at 63, but affirmed the court's finding that, even though Ramaco was entitled to Hayseeds damages, the original award of $25 million was punitive, id. at 20.  On remand, this court found, pursuant to the above exchange, that Ramaco had waived its known right to seek damages incurred up until the first trial for any Hayseeds net economic loss caused by Federal's delay of payment.  The court added, however, that Ramaco had not waived its entitlement to seek the full scope of Hayseeds damages, including aggravation and inconvenience damages prior to the first trial, as well as both net economic loss and aggravation and inconvenience damages between the Jury's Hayseeds verdict on July 16, 2021, and Federal's eventual payment on October 2, 2023.  See ECF No. 538 at 2.  The court further found that, "a brief discovery period, limited to Hayseeds damages, defined as 'damages for net economic loss caused by the delay in settlement as well as an award for aggravation and inconvenience' incurred

between July 15, 2021, and October 2, 2023, is warranted." __Id.__ at 15.  This period of some 26.5 months is sometimes referred to as the "NEL period."

### A. The Eight Kay Mine Theory

Plaintiff has filed a motion for summary judgment in which it has presented three models for calculating its net economic loss during the allowable period, insisting that it is entitled to summary judgment on all three.  The first theory (the "Eight Kay Mine" Theory) asserts that, had Federal paid the $7.1 million it owed Ramaco in the first quarter of 2019, it would have used that money in 2019 to open the Eight Kay Mine at the Elk Creek Complex.  See ECF No. 457, Ex. E (Rule 26 Expert Disclosures) at 11-12.  Ramaco has presented testimony from four witnesses, Jeremy Sussman, Ramaco's Chief Financial Officer, Christopher Blanchard, Ramaco's Executive Vice President of Mine Planning and Development, Richard Whiting, a member of Ramaco's Board of Directors, and Randall Atkins, Ramaco's Chief Executive Officer, all of whom assert that had the mine been opened, Ramaco "would have produced at least roughly 200,000 tons a year at full production during the NEL period" of some 26.5 months, being a total of 441,667 tons.  __Id.__ at 10.

In its own motion for partial summary judgment, Federal disputes the Eight Kay Mine Theory on the grounds that

"no contemporaneous evidence connects the dots between Federal's failure to pay and Ramaco's decision not to put in the Eight Kay Mine."  <u>See</u> Defs.' Mot. Par. Summ. J., ECF No. 561 at 6. Federal reads the record as "undisputably demonstrat[ing] that Federal's purported delay in payment had no impact on the decision not to develop the Eight Kay Mine."  <u>Id.</u> at 22.  It also disputes Ramaco's timeline, noting that "[n]othing in the record establishes that Ramaco had any belief or expectation that it was due $7.1 million *in the first quarter of 2019*, as that number was first established by the jury in July of 2021." <u>Id.</u> at 5.  Instead, "during the first trial and on appeal, Ramaco asserted that it's covered loss extended until June of 2019," but now retroactively asserts "that Chubb should have made its payment in satisfaction of the full loss in the first quarter of 2019."  <u>Id.</u>

        Since November 2, 2018, Ramaco has had in place a Credit Security Agreement ("CSA") with Key Bank, its primary lender.  <u>See</u> Pl.'s Mot. to Exclude Expert Testimony of John Weiss, ECF No. 563-1 at 66 (Credit and Security Agreement).  The initial agreement provided Ramaco with a $30 million revolver loan, secured by inventory and receivables, and an additional $10 million term loan secured by Ramaco's mining equipment.  <u>See</u> <u>id.</u> at 73; <u>see</u> <u>also</u> Sussman Dep. Tr. (April 11, 2025) at 66: 21-

9

24; 67:1-17.  The CSA contained certain positive covenants requiring that Ramaco maintain a fixed charge coverage ratio. Id. at 84.  It also contained certain negative covenants which barred Ramaco from selling, pledging, leasing, or transferring any of its property or assets except in the orderly course of business and with Key Bank's written consent, as well as from creating, assigning, or transferring any liens upon or against any of Ramaco's collateral.  Id. at 123-24.

Ramaco's Board approved its annual budget for calendar year 2019 on December 12, 2018, being about five weeks after the silo collapse on November 5, 2018.  See Defs.' Mot. for Par. Summ. J., ECF No. 561 at 7; Ex. 7 at HYDS_031901;31922.  This "2019 Budget allocate[d] $3,047,959 to develop the Eight Kay Mine in 2019, with the mine to start producing coal in 2019." Id.  This was to be spent in calendar year 2019.  Id.  In addition to this initial "capital expenditure" (sometimes referred to as "capex"), Ramaco's 2020 budget included $1,240,000 in "maintenance" capital expenditure, to be spent in 2020.[1]  Id.  In line with these budgets, Ramaco spent $2,658,199

---

[1] "Initial capex" or "growth capex" refers to the cost of getting a mine up and running, including costs for equipment, the haul road, and the face up.  See ECF No 561, Ex. 3 (Blanchard Dep. Tr. April 23, 2025) at 19: 19-24; 20: 1-6.  "Maintenance capex" is not clearly defined in the record, but Mr. Sussman has referred to maintenance capex as the cost to "maintain a mine"

on the Eight Kay Mine in 2019 and $664,925 on the Eight Kay Mine in 2020. <u>Id.</u>, Ex. 8 (Ramaco's Capital Expenditure 2019-2023).

In an August 9, 2019, email discussing ways to cut down on capex costs, Ramaco's Chief Financial Officer Jeremy Sussman noted that "[m]ost of Eight Kay capex will be spent in 2019 (the bulk of which already complete)." <u>Id.</u>, Ex. 13 at RamacoHYDS032221. Ramaco's Vice President, Chris Blanchard, in an August 26, 2019, email likewise discussing how to reduce capex, noted that they could eliminate "[a]pproximately [$]863,000 from Eight Kay, for normal advancement and support capex. Hard to envision running this mine before the [Elk Creek preparation] plant upgrade complete."[2] <u>Id.</u>, Ex. 23 at RamacoHYDS032230. As noted, the Elk Creek preparation plant upgrade was completed in June 2023. When asked what work remains to be done on the Eight Kay Mine and if the cost of that work today would be approximately $225,000, Mr. Blanchard testified in April 2025 that "[w]ith the inflation we've had in the last five years, no, it would be more than that now . . . I would guess that between the road and the faceup now would

_____

once it is up and running. <u>See</u> <u>id.</u>, Ex. 2 (Sussman Dep. Tr. April 11, 2025) at 40:23-24.

[2] It's unclear whether "support capex" is the same as "maintenance capex," as the term does not otherwise appear in the record.

probably be a million dollars."[3]  Id., Ex. 3 ((Blanchard Dep. Tr.
April 23, 2025) at 19:3-18.  In other words, in looking at
Ramaco's budget, spending, and internal communications, Federal
maintains that most of the spending for the Eight Kay Mine was
to take place in 2019 and, by August of 2019, had already
occurred.

     Despite the low remaining capex, Federal maintains
that Ramaco chose not to open the Eight Kay Mine because of a
downturn in the coal market and a need to diversify production
following the silo collapse in November 2018.  In a May 2019
letter to the board of directors, Mr. Atkins stated that the
silo collapse at Elk Creek revealed that Ramaco was a "one trick
pony," meaning it was overly reliant on the Elk Creek Complex,
and that it "need[ed] to get [its] other mine complexes opened
and expanded to guarantee some operational and financial
insurance and flexibility."  Id., Ex. 10 (May 2019 Letter from
CEO Randall Atkins to Board of Directors) at 2.  To that end,
Ramaco spent $15 million over its capex budget in 2019 largely
on projects outside of the Elk Creek Complex.  Id., Ex. 11
(September 19, 2019, Letter from CEO Randall Atkins to Board of

---

[3] The "road" refers to the "haul road" or the "mine road."  The
road must be completed before the faceup, and the faceup is the
last step in developing the mine before mining can begin.  See
ECF No. 576 Ex. A at 4; Ex C at 19:3-18.

Directors) at 4-5.  This includes $8.7 million more than it had budgeted at the Berwind Complex, which constituted capital losses that year, and $3.7 million over budget at the Knox Creek Complex.[4]  Id.

Perhaps more importantly, coal market conditions had deteriorated substantially by September 2019.  Ramaco now was deciding how "to deal with the new reality of a decidedly lower priced market and a curtailment in met coal demand."  Id., Ex. 11 (September 2019 Letter from CEO Randall Atkins to Board of Directors) at 1.  To accomplish this, Mr. Blanchard recommended in an email to Mr. Sussman on August 9, 2019, that Ramaco "cut approximately 200k [of production] at Elk Creek and eliminate Eight Kay production entirely."  Id., Exhibit 13 at HYDS032221.

---

[4] The Berwind Complex is located approximately 80 miles south of Charleston in Buchanan and Tazewell counties of Virginia and in McDowell County, West Virginia.  See ECF No. 561, Ex. 36 at 68. Berwind has two active mines operating, the Laurel Fork Pocahontas 3 Deep Mine and the Berwind No. 1 Pocahontas 4 Deep Mine.  Id. at 69.  Berwind contains a preparation plant, built in 1955 and refurbished in 2021-22, which has a processing capacity of 600 tons per hour.  Id. at 69.

The Knox Creek Complex is located 80 miles south of Charleston in Buchanan, Russell, and Tazewell Counties of Virginia, and in McDowell County of West Virginia.  Id. at 69. Knox Creek's only active mine is the Big Creek Surface and Highwall Mine.  Id.  The Complex also has two planned and permitted mines, the Knox Creek Tiller Deep Mine and the Kennedy No. 3 Deep Mine, both scheduled for 2029 startup.  Id.  It has one closed mine, the Big Creek Jawbone No. 1 Deep Mine, which was closed in 2024.  Id.  Knox Creek has a preparation plant, built in 1981, that can process 750 tons of coal per hour.  Id.

Hours later, Mr. Blanchard clarified in an email that this was not something they should do yet, but "is just what we could do easily if we find the sales environment next year isn't to our liking." Id., Exhibit 13 at HYDS032219. In an email on August 26, 2019, Mr. Blachard wrote that it was "[h]ard to envision running [the Eight Kay] mine before the plant upgrade complete." Id., Ex. 23 at RamacoHYDS032230.

Despite poor market conditions, Mr. Atkins wrote that Ramaco's liquidity position in September 2019 "is fairly comforting." Id., Ex. 11 (September 2019 Letter from CEO Randall Atkins to Board of Directors) at 7. Ramaco expected to "end 2019 with roughly $18.5 million in liquidity and less than $5 million left on the term debt." Id. As of the writing, with Key Bank, Ramaco had $10 million outstanding on its $30 million revolver loan and $6.8 million remaining on its $10 million term loan. Id. at 9. Mr. Atkins also noted that Ramaco was seeking additional loans from Key Bank. He wrote that "[g]iven the situation in the basic sales environment, I went back to KeyBank last week and said we were willing to move forward at this time" and that Ramaco "would use the funding for capital purposes, but not necessarily new mine expansion." Id. at 9.

In discussing development projects, Mr. Atkins recommended that, even with this liquidity, Ramaco should idle

14

the Tiller/Jawbone mines and put the Elk Creek Plant Expansion on hold.  "Until we see more clarity in the market, the [expansion of the Elk Creek processing plant] is a luxury bet we can ill afford, especially when we cannot place our current production into this market."  Id. at 11.  The Eight Kay Mine is not mentioned in development discussions.

By December 2019, Mr. Atkins reported that "[t]he market price and customer demand on both the domestic and export fronts [were] still miserable for the foreseeable future." Id. Ex. 15 (December 2019 Letter from CEO Randall Atkins to Board of Directors) at 3.  Again, despite the continued deterioration of market conditions, Ramaco's liquidity position was "fairly comforting[,]" as it would "end 2019 with roughly $12 million in liquidity."  Id. at 9.  Regarding the Elk Creek plant expansion, Mr. Atkins reiterated his recommendation that "until we see more clarity in the market, the increase in production at Elk Creek is a luxury we can postpone."  Id. at 12.  He also noted that, regarding the development of the Jawbone mine at Knox Creek and Glen Alum Tunnel Mine at Elk Creek, Ramaco was "not even remotely considering putting in new mines until we see some rainbows, instead of tornados on the horizon."  Id. at 13.  The Eight Kay Mine is not mentioned in development discussions.

15

By March 2020, Randall Atkins wrote to the board of directors that Ramaco was now in "Deafcon 1." Id. Ex. 17 (March 2020 Letter from CEO Randall Atkins to Board of Directors) at 1. He continued,

> Our hand has now been forced on all fronts by outside circumstances such as the advent of the [corona]virus, it's impact on our steel customers and their markets, as well as our basic concern of how to safely operate in our own mines and offices. That list does not even include self-created problems from our inability to secure any new spot coal sales before this virus closed down the world markets.

Id. "The irony[,]" he continued, is that despite having "had some of the most productive and cost-effective mining to date[,]" Ramaco was "hobbled by the continued inability to make any traction on sales. As a result, even before the virus hit, we were going to be dealing with the impending stockpile and liquidity problems as we had discussed in February." Id. Thus, despite the fact that Ramaco had "roughly $16 million of current undrawn availability under our Key Bank Revolver[,]" Ramaco decided to "take immediate steps to stop all growth Capex until further notice." Id. at 2-5. This included "the Eight Kay faceup and associated work," which was "to come to a full stop." Id., Ex. 18 (email from Chris Blanchard on March 21, 2020) at HYDS033810. Thus, work on the Eight Kay Mine did not formally stop until March 21, 2020, when Ramaco shut down all growth capital expenditure in response to market conditions.

16

Nearly two years later, by February 2022, Ramaco was in "simply the best metallurgical coal market we have ever seen." ECF No. 609, Ex. E (Sussman Dep. Tr. April 11, 2025) at 24:5-7. This is because "in early 2022 Russia was invad[ing] Ukraine and cut[ting] off the world's third largest or fourth largest, depending on the year, supplier of metallurgical coal to the rest of the world." Id. at 24:7-13. Despite the fact that Ramaco was "on sound financial footing" by February 2022, it still chose not to open the Eight Kay Mine. Id., Ex. F (Sussman Dep. Tr. April 22, 2025) at 49:18-22. Mr. Sussman testified that, by this time, Ramaco "had other options like the Crucible mine and the second section of 2 Gas," both mines in the Elk Creek Complex considered superior to the Eight Kay Mine, and "so [they] did go ahead and expend capital on those in 2022." ECF No. 609, Ex. E (Sussman Dep. Tr. April 11, 2025) at 281: 3-13. These two mines, in addition to the Michael Powellton Mine, were the first mines Ramaco opened at Elk Creek since halting all development in March of 2020. See SEC 10-K Disclosure, Calendar Year 2022 at 54-55.

Federal also contends that even if Ramaco was able to open the Eight Kay Mine in 2019, "Ramaco's damages do not reasonably flow from the failure of Federal to pay" the claim because Ramaco's "Elk creek plant had massive and unresolved

capacity issues from 2019 through when it ultimately expanded the plant in [June] 2023." Defs.' Motion for Par. Summ. J., ECF No. 561, at 24-25. Contemporaneous statements made during the NEL period by both Mr. Blanchard and Mr. Atkins suggest that processing capacity at the Elk Creek Complex was a concern.

Likewise, when the coal market had improved, Mr. Atkins plainly noted in a July 5, 2022, letter to the board of directors that Ramaco had added 200,000 tons of raw coal to its inventory that year "as the mines at Elk have outpaced the processing capacity at the preparation plant." ECF No. 561, Ex. 31 at 15. In a December 2022 presentation to Ramaco's Board of Directors, Mr. Atkins stated that "[a]s of Oct. 31, we had A LOT of cash on the ground. Specifically, inventory stood at over 400,000 tons." Id., Ex. 33 at 4. Though it's not clear how much of the excess coal in this presentation was from the Elk Creek Complex, the presentation also noted that Ramaco's raw coal inventory had increased 208,000 tons between December 31, 2021, and October 31, 2022, and that processing its excess raw coal "won't likely occur until after the Elk Creek plant upgrade is completed this spring." Id.

Ramaco's stockpile of coal continued to grow well into 2023, causing Ramaco to delay the opening of new mines, such as the Ram#3 surface mine, at Elk Creek. See id., Ex. 34 (February

2023 Letter from CEO Randall Atkins to Board of Directors) at 14 ("Until we get a better handle on coal processing at Elk Creek and work down some of the raw coal stockpiles, we would probably not start the higher capex Ram#3 surface mine at Elk."). By July 17, 2023, Mr. Atkins noted that inventory remained "an acute issue." Id., Ex. 35 (July 2023 Letter from CEO Randall Atkins to Board of Directors) at 3. Ramaco was "sitting with roughly 1.3 [million] tons of clean and raw coal on the ground, up 500k tons since year end," of which approximately 1,103,000 tons were raw coal needing to be processed. Id. at 3-4. This "translates into about $100 million worth of coal waiting to be converted to cash[.]" Id. at 3.

Ramaco's Plant Capacity Availability chart shows that, in July 2023, Elk Creek's raw inventory levels peaked at 1,115,266 tons. See ECF No. 609, Ex. I RamacoHYDS_000004. The same chart shows that by October 2023, the end of the NEL period, the Elk Creek Complex began the month with 559,522 tons of raw coal inventory, up 20,000 tons from the prior month. Id. From January 1, 2022, to June 30th, 2023, Ramaco had seen six straight quarters of raw coal inventory build. See ECF No. 561, Ex. 2 (Sussman Dep. Tr. April 11, 2025) at 215:1-8. Thus, Federal maintains that even if Ramaco had opened the Eight Kay Mine, it would not have been able to process the additional coal

19

it produced.  That being said, the capacity chart shows a decrease from 1,115,266 tons of raw coal inventory in July 2023 to 559,522 tons in October 2023.  This decrease coincides with the upgrade of the Elk Creek preparation plant in June 2023. Based on the roughly 200,000 tons a year at full production that Ramaco's witnesses project for the Eight Kay Mine had it been opened, Ramaco could have processed some 50,000 tons of Eight Kay coal for the three months from July 1, 2023, when the plant upgrade was completed, to October 2, 2023, when the NEL period ended.

In support of its own motion for summary judgment, as well as in its opposition and reply briefs, Ramaco has produced testimony from four witnesses: Jeremy Sussman, Ramaco's CFO, Christopher Blanchard, Ramaco's Executive Vice President, Richard Whiting, a member of Ramaco's Board of Directors, and Randall Atkins, Ramaco's CEO, all of whom have testified that "the reason Ramaco did not develop the Eight Kay Mine in 2019 was the Defendants' failure to pay the insurance claim."  See ECF No. 609 at 11.  See also id., Ex. C at 13:6-9 (Atkins Dep. Tr.) (Q: "Why was Ramaco unable to finish development of the Eight Kay Mine?" A: "Because your client didn't give us payment for the claim that we had contracted for them to pay for."; Ex. E at 64:3-12 (Sussman Dep. Tr.) (Q: . . . "the idea is that

Chubb[5] should have paid the roughly $7 million in the first quarter of 2019, so before you joined, right?" A: Yes sir."[6] Q: And had Chubb done so, the company would have continued in putting in the Eight Kay Mine, as planned?" A: "Yes sir."); Defs.' Rep. Br., ECF No. 617, Ex. C (Whiting Dep. Tr. April 9, 2025) at 57:8-13 ("we had damn sure missed the opportunity to put the mine in on our plan after the silo failed because we didn't get the claim."); Defs.' Mot. Par. Summ. J., ECF No. 561, Ex. 2 (Sussman Dep. Tr.) at 16:12-18 ("So, as I believe you're aware, we had intended to put the Eight Kay Mine in in 2019. After Chubb's failure to pay what was owed to us, we stopped the mine, but, I guess, had we gotten the money that we were owed from Chubb, we would have continued with the mine.").

This testimony notwithstanding, each of these witnesses has also expressed that market conditions were, at the very least, a key factor in deciding to stop production of the Eight Kay Mine. Mr. Blanchard, for example, has testified that the Eight Kay Mine suffered a "death by a thousand cuts," with such cuts being "the delay due to liquidity, then the softening

---

[5] Federal Insurance Company is a wholly owned subsidiary of Chubb INA Holdings, Inc. Chubb was voluntarily dismissed from this matter pursuant to an order of this court on November 27, 2019.

[6] Mr. Sussman joined Ramaco in May 2019. See Sussman Dep. Tr. April 11, 2025, ECF No. 561, Ex. 2 at 8:9-10.

of the market[,]" and finally "having better options for deployment of capital" by the time the market recovered.  ECF No. 561, Ex. 3 (Blanchard Dep. Tr. April 23, 2025) at 144:14-20.

Mr. Sussman testified that good market conditions are a necessary factor in opening new mines. When asked whether market conditions were responsible for stopping development of the Eight Kay Mine, Mr. Sussman testified that, in deciding whether to bring on a new mine, Ramaco asks "whether we bring production on because the market is good[,]" whether "we have liquidity, and can we pass the covenant test? The reality is, even if Mr. Blanchard wanted to – you have to pass all three of those." Id., Ex. 2 (Sussman Dep. Tr. April 11, 2025) at 88:22-24, 89:1-6.  CEO Atkins has likewise testified on May 1, 2025, that "the question of whether [Federal's] funding had an impact on . . . whether we would put the mine in at that point in September of 2019 was somewhat secondary to the market conditions that we would have had to consider at that point in time as to whether or not that expenditure for that mine or other projects would have been prudent."  ECF No. 617, Ex. D (Atkins Dep. Tr. May 1, 2025) at 38:22-39:3.

Regarding Ramaco's formally approved 2019 budget, Mr. Blanchard and Mr. Sussman have testified that this budget is "incorrect" and is a "mistake." See ECF No. 561, Ex. 2 (Sussman

Dep. Tr. April 11, 2025) at 294:6-10; Ex. 3 (Blanchard Dep. Tr.) at 69:5-16. When asked about the $3.047 million the budget allocated to the Eight Kay Mine to be spent in 2019, Mr. Blanchard testified that "3.047 is clearly a carry-forward mistake." Id. Ex. 3 at 69:9-10. The number, he claims, "should be four to five million." Id. at 71: 8-9. Likewise, Mr. Sussman testified that the money allocated in the 2019 budget is insufficient to open the Eight Kay Mine, noting that it would cost "you know, $5 million for equipment, plus, you know, over a million dollars in development such as the roads, the ponds, etcetera, plus – it's not in there, but plus, of course, any capitalized development[,]" which he testified amounted to somewhere between $1 and $2 million. Id. Ex. 2 at 293:1-11. Federal points out that "no document has ever been produced that shows any correction to this number, and no records support any correction being made." Defs.' Mot. Par. Summ. J., ECF No. 561 at 7.

Irrespective of the cost to open the mine and the then-deteriorating market conditions, Ramaco's executives maintain that, had they not "missed the window" to put the mine in because of Federal's non-payment, the mine would have been producing coal during the NEL period. See Defs.' Mot. Par. Summ. J. ECF No. 561, Exhibit 2 (Sussman Dep. Tr.) at 275:15-23.

Mr. Sussman and Mr. Blanchard have testified that, depending on the market conditions, the number of days per week the mine would have been operated, and the number of shifts per day the mine would have run, the coal produced by the Eight Kay Mine would have generated between $38.2 and $69.9 million in free cash flow during the NEL period.  See Pl.'s Reply in Support of Mot. Par. Summ. J., ECF No. 617, Ex. P (Blanchard Dep. Tr., May 7, 2025) at 60-61; ECF No. 561, Ex. 2 (Sussman Dep. Tr. April 11, 2025) at 276:16-23; ECF No. 457, Ex. E (Rule 26 Expert Disclosures) at 11-12.

Mr. Sussman's Eight Kay Mine damages model organizes the profits Ramaco would have derived from this production into four scenarios: the Upside Case, Market Price; Upside Case, Actual Price; Base Case, Market Price; and Base Case, Actual Price.  Id. at 11.  The Upside Case, Market Price scenario assumes that Ramaco would have run extra shifts at the Eight Kay Mine "given the actual strong market conditions during the NEL Period."  Id.  It also assumes that "the Company would have sold

all additional Eight Kay tonnage at higher spot[7] High Vol A[8]
prices . . . because the Company signed spot contracts to sell
coal from other Elk Creek Complex mines from 2Q21 to 3Q23 for
coal with similar specifications to Eight Kay at or above 100%
of the US High Vol A index." Id.  In this scenario, Mr. Sussman
maintains that Ramaco lost roughly $69.9 million in cash flow
during the NEL period.  Likewise, the Base Case, Market Price
scenario also assumes that Ramaco would have sold 100% of the
Eight Kay Coal at spot High Vol A prices, but that Ramaco would
only have run the mine 5 days per week with no additional
shifts.  Id. at 12.

        In the Upside Case, Actual Price scenario, Mr. Sussman
asserts that Ramaco would "still have worked extra days to take
advantage of the strong market conditions but would have sold
coal at the same actual average price as other mines in the Elk
Creek Complex" during the NEL period, as opposed to the spot

---

[7] Mr. Sussman testified that "spot prices" are "any export sale
that is linked to index price."  Sussman Dep. Tr. April 11,
2025, ECF No. 561, Ex. 2 at 17:20-22.  He continues, "So when I
refer to spot, I guess the way it would work is we assume that
that would go into the export market" and would have been sold
at a higher price.  Id. at 17:22-24.

[8] The Elk Creek Complex produces high-volatile A and B
metallurgical coals, which are used for making steel.
Metallurgical coals are generally classified as high, medium, or
low-volatile ("vol").  See ECF. No 561, Ex. 37 at 4-6.  The
Eight Kay Mine would have produced high vol-A coal.

price.  Id. at 11.  In this scenario, Ramaco claims to have lost roughly $43.1 million of cash flow.  Id.  In the Base Case, Actual Price scenario, Ramaco "would have sold the incremental Eight Kay tons produced working five days per week at the same price as what Ramco actually realized and reported publicly on a quarterly basis for all other coal at Elk Creek."  Id. at 12. In this scenario, Ramaco claims it "missed out on the ability to generate roughly $38.2 million in additional free cash flow during the NEL period."  Id.

Ramaco claims in its opposition brief to Federal's motion for partial summary judgment that its "historical documents confirm that Defendants' failure to timely pay the claim put a devastating strain on the Company's liquidity."  ECF No. 609 at 12.  The historical documents Ramaco references in its brief are one letter from CEO Randall Atkins to the Board of Directors in September 2019, three emails from the summer of 2019, and four public filings with the SEC.  Federal responds that none of the SEC filings are "contemporaneous with the failure to finish Eight Kay" and that that none of the documents cited ever connect Federal's nonpayment to Ramaco's liquidity concerns.  See Defs.' Reply to Pl.'s Opp., ECF No. 617 at 9.

In the September 2019 letter, Mr. Atkins briefly updated the Board of Directors on the lawsuit with Federal.  See

ECF No. 617, Ex. E at 11 (September 2019 Letter from CEO Randall Atkins to Board of Directors).  He stated that he expects a "long slog" and that "the money is too large to walk away," but he does not suggest that Federal's failure to pay impacted any development decisions or strained liquidity.  Id.  In contrast, where he describes liquidity issues and the commensurate need to curtail development projects, Mr. Atkins attributes these decisions to other factors, such as a downturn in the market. See id. at 11 ("Until we see more clarity in the market, the [expansion of the Elk Creek Processing Plant] is a luxury bet we can ill afford, especially when we cannot place our current production into this market"); id. (weighing whether, "given the market conditions," to "continue to produce at [the] Berwind [Complex] or . . . [to] put[] the mine on a 'hot idle' mode").[9]

Ramaco also cites the three emails in support of the claim that Federal's nonpayment strained its liquidity such that it could not open the Eight Kay Mine.  The first is an email from Kevin Chesser, an analyst, to Randall Atkins, Jeremy Sussman, and Chris Blanchard on May 7, 2019, warning that, on its current trajectory, "the company would be out of compliance

---

[9] At this time, the Berwind Complex had only one active mine, which was idled in 2020 and restarted in early 2021.  Berwind's second mine, the Pocahontas No. 4 mine, was opened in late 2021. See ECF No. 617, Ex. H (SEC 10-K Disclosures 2022) at 5.

with debt covenants [with Key Bank] in 2019 and 2020 under existing debt terms," but that "this non-compliance should be eliminated by any new term debt obtained specifically for financed capex." See ECF No. 617-6. In the second email, Jeremy Sussman responds to Chesser's financial projections on May 20, 2019, with concerns that Ramaco was "on a path to potentially breaching" its lending agreement. Id. RamacoHYDS033518. Mr. Sussman then noted that this is because, by this point, Ramaco's capex had increased by $7.4 million more than budgeted.

In describing the "biggest items" contributing to this increase, Mr. Sussman noted in the email that there was a $6 million increase in Berwind capex, a $2 million increase in Eight Kay/2gas capex, and a $2 million increase in "plant carryover." This $10 million increase in capital expenditure was offset by a $2.8 million decrease in capex elsewhere — "taking out $1.4 million of the direct shipment bypass at Elk, and $1.4 million of other, smaller items." Id.

Finally, in the third email, Chris Blanchard opines on August 26, 2019, that he's edited the model to "highlight capital to be removed in low price scenarios" for 2020. Id. at RamacoHYDS032230. Among the capex to be removed in poor pricing situations was "approximately [$]863,000 from Eight Kay, for

normal advancement and support capex.  Hard to envision running this mine before the plant upgrade complete." Id.

Despite these concerns with its liquidity position in August 2019, Ramaco's liquidity position by December 2019, was, in the words of CEO Atkins, "fairly comforting." Id. Ex. 15 (December 2019 Letter from CEO Randall Atkins to Board of Directors) at 3.  As previously mentioned, Ramaco had secured a $5 million refinancing from its primary lender, Key Bank, on its term loan and would end 2019 with $12 million in liquidity. Id. at 9.  Ramaco was also "on track" to securing an additional $15 million syndicated equipment loan from the same. Id. at 9-10. All told, Atkins estimated that Ramaco was expecting to end 2020 "with ~$20 million in liquidity," for a total of up to $35 million if Ramaco closed its new syndicated loan as planned. Id.

None of the three emails mention Federal, the lawsuit, or the insurance claim.  At most, the emails suggest that Ramaco could partially alleviate its liquidity concerns by eliminating capital expenditure, including at the Eight Kay Mine.  Moreover, on May 17, 2019, one week after the initial email exchange expressing liquidity concerns, Randall Atkins sent a letter to the board of directors detailing several development projects. Id., Ex. 10 at 2-8.  These include an expansion of the Elk Creek Plant and the opening of a new High Vol-A mine at the Knox Creek

Complex, which together would cost "roughly $35 million in new
capex" split evenly over 2019 and 2020.  Id. at 2.  Nowhere on
this list of eight development projects is the Eight Kay Mine
mentioned or included.  The last item on the list, however, is
Ramaco's lawsuit regarding its insurance claim with Federal.
Aside from listing it as an item for discussion, there is no
further elaboration or description indicating what was
discussed.  Id. at 8.

        In its briefing, Ramaco also argues that its SEC
filings, in which it makes required financial disclosures,
demonstrate that Federal's failure to pay impacted its liquidity
and its ability to open the Eight Kay Mine.  Ramaco's disclosure
form for the fiscal year ending in 2019 states

> From time to time, we are subject to various litigation and
> other claims in the normal course of business.  No amounts
> have been accrued in the consolidated financial statements
> with respect to any matters.
>
> On November 5, 2018, one of three raw coal storage silos
> that fed our Elk Creek plant experienced a partial
> structural failure. A temporary conveying system completed
> in late-November 2018 restored approximately 80% of the
> plant capacity. We completed a permanent belt workaround
> and restored the preparation plant to its full processing
> capacity in mid-2019. Our insurance carrier, Federal
> Insurance Company, disputed our claim for coverage based on
> certain exclusions to the applicable policy and therefore
> on August 21, 2019 we filed suit against Federal Insurance
> Company and Chubb INA Holdings, Inc. in Logan County
> Circuit Court in West Virginia seeking a declaratory
> judgment that the partial silo collapse was an insurable
> event and to require coverage under our policy. Chubb INA
> Holdings, Inc. has filed a motion to dismiss and Federal

Insurance Company has filed a motion to remove the case to federal court in West Virginia.

See ECF. No 617, Ex. H (2019 10-K Excerpt).  Nowhere in this disclosure, nor in any disclosure that followed, does Ramaco suggest there are financial or developmental concerns associated with the lawsuit or with Federal's nonpayment.

Regarding its alleged plant capacity issues, Ramaco respond's that "Ramaco's witnesses have testified that the processing plant was in fact capable of processing Eight Kay coal, in addition to all other coal from the Elk Creek Complex, before, during, and after the Allowed Period."  Pl.'s Res. To Defs.' Mot. Par. Summ. J., ECF No. 601-1 at 5.  Mr. Blanchard has testified "that the Elk Creek processing plant was more than capable of processing the Eight Kay Coal in addition to all other coal from the Elk Creek Complex from 2019 to 2024."  Id. at 18.  Additionally, Ramaco has produced a Plant Capacity Availability table with a hypothetical column purporting to show what would have occurred had the Eight Kay Mine been opened. See ECF No. 609, Ex. I.  Mr. Blanchard testified on May 7, 2025, six days after Federal filed its motion for partial summary judgment, that this column demonstrates that during the NEL period, "not only would [Ramaco] have processed every ton produced at Eight Kay, but essentially another 500-600,000 tons of raw coal from the other mines."  Id., Ex. J (Blanchard Dep.

Tr. May 7, 2025) at 61:2-15.  Mr. Blanchard asserted that "by utilizing the plant more efficiently," Ramaco "would have actually processed even more of the coal through Elk Creek than what we actually did through the period." Id. at 60:14-20.  On this account, the fact that Ramaco had steadily increased its raw coal inventory from 88,048 tons in July 2021 to a high of 1,115,266 tons in July 2023, without any of it from Eight Kay Mine, does signify processing issues prior to the completion of the preparation plant upgrade.

Mr. Blanchard further testified that "[o]ur CEO and our CFO, because coal has value even on the ground, prefer that [inventory number] to be zero because that is real cash on the ground.  However, from an operational standpoint, somewhere around 500,000 tons of raw coal inventory at Elk Creek is what I would consider healthy." Id. at 66:8-16.  This is so, Blanchard claims, because it amounts to "three and a half weeks of buffer for some of the unexpected events" that occur during the mining process. Id. at 66:16-19.  Thus, Ramaco maintains that Federal, by alleging processing capacity issues, "create[s] a 'problem' where one does not — and never did — exist, simply to suggest that Ramaco has failed to meet its burden." See Pl's Mot. for Summ. J., ECF No. 601 at 18.  Of course, Blanchard thought it to be a problem when he suggested on August 9, 2019, that Eight Kay

production be eliminated entirely, as did CEO Atkins in March 2020 and Blanchard on March 21, 2020, when he directed that Eight Kay was "to come to a full stop." See Defs.' Mot. Par. Summ. J., ECF No. 561, Ex. 13(email from Chris Blanchard on August 9, 2019) at HYDS032221; Ex. 17 (March 2020 Letter from CEO Randall Atkins to Board of Directors) at 2-5; Ex. 18 (email from Chris Blanchard on March 21, 2020) at HYDS033810.

B. The Elk Creek Complex Theory and the Later-Developed Mines Theory

Ramaco also seeks summary judgment on two other theories of damages alleged to have been sustained during the NEL period, both of which were developed by Jeremy Sussman: the "Elk Creek Complex" Theory, which is purportedly "independent" of the Eight Kay Mine, and the "Later-Developed Mines" Theory.

The Elk Creek Complex Theory calculates Ramaco's net economic loss during the NEL period based on the performance of four other mines at Elk Creek — the RAM 1 Surface and Highwall Mine, the first section of the 2Gas Mine, the Stonecoal Mine, and the Rockhouse Eagle Mine. See ECF No. 457, Ex. E, at 12-13. Based on plaintiff's $22.085 million investments made "largely in 2017," plaintiff asserts that these mines generated $301.779 million in free cash flow — a return on investment of 1366%. Id. Thus, Mr. Sussman asserts that had Federal timely paid

Ramaco the $7.1 million it owed pursuant to the contract, Ramaco could have generated the same 1366% return on investment, which "would have amounted to more than $97 million."  Id.

When asked whether Ramaco was claiming this $97 million as a loss, CFO Jeremy Sussman testified that he is "not valuing loss," and that he is "simply saying that for, you know, roughly — you know, that mines that were in place at the time, and were put in in mostly 2017, you know, generated $302 million during that, during that timeframe, on 3.75 million tons."  ECF No. 561, Ex. 2 (Sussman Dep. Tr. April 11, 2025) at 273:16-23. The court notes that if 3.75 million tons of coal were sold for a total of $302 million, the hypothetical 500,000 tons of coal produced from the Eight Kay Mine would be presumed to generate $42.67 million, less than half of the $97 million claimed by Mr. Sussman; if, instead, it was limited to the first 50,000 of the 200,000 tons roughly projected by Ramaco's witnesses once the preparation plant was expanded to process it, the figure would be reduced to $4.267 million.

When asked again whether Mr. Sussman believed that "Chubb's failure to pay in 2019 roughly $7 million caused Ramaco to lose $97.26 million," Mr. Sussman responded that "[h]ad they paid, the Eight Kay Mine would be in, the Eight Kay Mine would have generated a tremendous amount of free cash flow during that

34

period." Id. at 275:15-24.  The court understands Mr. Sussman's answer to mean that the 1366% return claimed in the Elk Creek Complex Theory flows from the fact that Ramaco was precluded from opening the Eight Kay Mine.  Indeed, if the $97 million would have come from some source other than the Eight Kay Mine, Ramaco has not identified that source.

In response, Federal asserts that "[n]owhere in the [Elk Creek Complex] theory or elsewhere does Mr. Sussman identify *how* Ramaco would have generated $97 million had it received Defendants' payment in 2019, or through what projects and investments."  Defs.' Res. to Pl.'s Mot. for Summ. J., ECF No. 592 at 8 (emphasis in original).  Federal notes that Mr. Sussman has "explicitly tied the theory to the amount of damages claimed under the 'Base Case Actual Price' sub-theory of the Eight Kay Mine."  Id. at 17; see also id., Ex. 3 at 13.  Federal also points out that Ramaco "only calculated this rate of return for Elk Creek mines, and did not take into account either the Berwind Mine or the Jawbone/Tiller Mine at Knox Creek — both of which received heavy investment in 2019," id. at 7-8, and at least one of which amounted to capital losses that year.

Finally, Mr. Sussman's "Later-Developed Mines" Theory similarly calculates its net economic losses by assessing the performance of two mines developed in 2022-2023: the Crucible

35

Mine and the second section of the 2Gas mine.  <u>See</u> ECF No. 457,
Ex. E (Rule 26 Expert Disclosures) at 13-14.  For a collective
net capital investment of $10 million, these mines "would
generate a free cash flow of $63 million over 26.2 months (a
length of time equal to that in the NEL period)."[10]  <u>Id.</u> at 13.
This is based on the actual performance of the two mines for a
12-month period, January 2023 to December 2023, and an
extrapolation of the cash flow for an additional 14.5 months.
<u>Id.</u>  The court notes that Sussman's chosen period for coal
production and sales results — the year 2023 — bears little
relation to the NEL 26.5 months of July 16, 2021, to October 2,
2023.

        Mr. Sussman has testified that the Crucible Mine cost
$7 million in capital expenditure, primarily in 2022.  <u>See</u> ECF
No. 561, Ex. 2 (Sussman Dep. Tr. April 11, 2025) at 266:19-24.
Using the same questionable period of the year 2023, he also
maintains that the Crucible Mine generated $14 million in cash
flow in 2023 and that, after projecting the average monthly
figures for an additional 14.5 months (to total the length of
the NEL period), the Crucible Mine would generate $30 million in

---

[10] The Rule 26 disclosure lists the NEL period in error as 26.2
months.  The NEL period is 26.5 months.

free cash flow for 26.5 months of production.  <u>See</u> ECF No. 457,
Ex. E (Rule 26 Expert Disclosures) at 13-15.

Mr. Sussman likewise maintains that the second section
of the 2Gas Mine cost $3 million in capital expenditure in 2023
and generated $15 million in free cash flow for that year.  <u>Id.</u>
As with the Crucible Mine, Mr. Sussman stated that he projected
the average monthly figures of the second section of the 2Gas
Mine for an additional 14.5 months and concluded that the mine
would have generated a total of $33 million in free cash flow
for 26.5 months of production.  <u>Id.</u>

It is not clear how these amounts show a net economic
loss, as Ramaco is not alleging that it was precluded from
opening either the Crucible or the 2Gas mines.  When asked
whether the loss being claimed pursuant to the Later-Developed
Mines Theory was tied to the Eight Kay Mine, Federal's attorney
and Mr. Sussman had the following exchange:

> Q: Does this section of Exhibit 2, later-developed mines,
> is the claimed net economic loss here tied to inability to
> develop the Eight Kay Mine?
>
> A: Similar to the section about, the elk — the Elk Creek
> Complex section, this shows that Ramaco put in two mines
> that were — you know, later on after it was on sound
> financial footing that were not available to be put in at
> the time of, you know, Chubb's failure to pay in a timely
> manner in early 2019.  And those mines generated a
> projected return of roughly $58 to $63 million.

Q: Okay. Maybe another way to ask that is if the Eight Kay Mine was unavailable to Ramaco, would Ramaco still be claiming the same range of net economic loss based on the later-developed mines theory?

A: If Eight Kay was unavailable, Ramaco has shown an ability that mines that were either in place or developed later would – did or would have returned on average somewhere between $58 and $97 million.

ECF No. 561, Ex. 5 (Sussman Dep. Tr. April 22, 2025) at 49:11-24, 50:3-13. As with the Elk Creek Complex Theory, Federal responds that this theory is again explicitly presented as support for the "Base Case Actual Price" sub-theory of the Eight Kay Mine calculation and that, if the theory is not tied to the Eight Kay Mine, then "again, Mr. Sussman has failed to explain *how* [this calculation] shows a loss amount." Defs.' Res. to Pl.'s Mot. Summ. J., ECF No. 592 at 17 (emphasis in original). As evidenced by the above colloquy, Ramaco's executives have steadfastly avoided clarifying whether these two theories are tied to its inability to open the Eight Kay Mine, though the position it has taken in its briefing is that the theories are completely independent of the Eight Kay Mine.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

38

Civ. P. 56(a).  Courts at this stage do not resolve disputed facts, weigh evidence, or make determinations of credibility. See Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797, F.2d 179, 182 (4th Cir. 1986). "Material" facts are those necessary to establish the elements of a party's cause of action.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010).  A dispute of material fact is "genuine" if, in viewing the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party.  See Anderson, 477 U.S. at 248.  The moving party is entitled to summary judgment if the record as a whole could not lead a trier of fact to find for the non-moving party.  See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48.  "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts

showing that there is a genuine issue for trial.'" Id. at 248
(quoting First Nat'l Bank of Ariz. v. City Servs. Co., 391 U.S.
253 (1968) (quoting Fed. R. Civ. P. 56(e))); see also Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584 (1986)
(the non-movant "must do more than simply show that there is
some metaphysical doubt as to the material facts").  A non-
movant who "fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial" will
lose at summary judgment because "the nonmoving party has failed
to make a sufficient showing on an essential element of her case
with respect to which she has the burden of proof." Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986).

### III. ANALYSIS

Plaintiff asserts that it is entitled to summary
judgment on each of its three net economic loss models.  This is
so, they reason, (1) because there are no disputes of material
fact with respect to its "unrebutted" second and third models,
and (2) because defendants cannot establish any legitimate
"offset" of Ramaco's NEL damages related to the Eight Kay Mine.
Conversely, defendants assert that they are entitled to partial
summary judgment regarding the Eight Kay Mine for three reasons:
(1) that because Ramaco's damages theory is premised exclusively

on the decision not to open the mine in 2019, Ramaco has waived
the right to damages; (2) that Federal's non-payment was not a
proximate cause of Ramaco's purported damages; and (3) that,
because Ramaco has not shown it would have been able to process
all of the coal it mined from Eight Kay during the NEL period,
it has not shown its damages with reasonable certainty.  See
Defs.' Motion for Par. Summ. J., ECF No. 561 at 16-25.

  A. The Eight Kay Mine Theory

          It is axiomatic that courts must not make
determinations of credibility or weigh the evidence at the
summary judgment stage.  See Russell v. Microdyne Corp., 65 F.3d
1229, 1239 (4th Cir. 1995).  "[T]he party opposing the motion is
entitled to have his or her version of the facts accepted as
true and, moreover, to have all internal conflicts resolved in
his or her favor."  Energy Corp. of Am. v. Bituminous Cas.
Corp., 543 F. Supp. 2d 536, 544 (S.D.W. Va. 2008) (citing
Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir.
1979); see also Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir.
1986) ("Plaintiff is entitled to have all her evidence
considered.  Moreover, the credibility of her evidence must be
assumed.").[11]  But conclusory allegations or mere speculation

_____

[11] But see the unpublished, per curium opinion Harris v. Home
Sales Co., 499 F. App'x 285, 294 (4th Cir. 2012), in which it is

41

alone are insufficient to defeat a motion for summary judgment. See Dash v. Mayweather, 732 F.3d 303, 311 (4th Cir. 2013).

Federal argues that "no contemporaneous evidence connects the dots between Federal's failure to pay and Ramaco's decision not to put in the Eight Kay Mine." Defs.' Mot. Par. Summ. J., ECF No. 561 at 6. It maintains that "the only evidence Ramaco can muster to support that connection are self-serving assertions of Ramaco's executives and board members offered in their *2025* depositions," and that this is insufficient to defeat Federal's motion for partial summary judgment absent other corroborating evidence. Id. at 22 (emphasis in original). Federal reads the record as showing that Ramaco chose not to put in the Eight Kay Mine despite (according to the budget) its low cost due to a downturn in the coal market, the coronavirus pandemic, a need to diversify coal production in the short-term following the silo collapse, or all three. Ramaco responds that its "witnesses unambiguously and unanimously testified that the reason Ramaco did not develop the

---

noted that courts "should also not find a genuine dispute of material fact based solely on [a party's] self-serving testimony" arising only after the deed to which it refers has been finalized. See also National Enterprises, Inc. v. Barnes, 201 F.3d 331, 334 (4th Cir. 2000), in which the Fourth Circuit upheld a grant of summary judgment by the district court over the "self-serving affidavit describing the content of" repurchase agreements that are not produced.

Eight Kay Mine in 2019 was the Defendants' failure to pay the insurance claim." See ECF No. 609 at 11-12.  It also provides documents that reference the lawsuit with Federal and discuss liquidity concerns generally from May 2019 to August 2019.

Federal's argument notwithstanding, "Rule 56 of the Federal Rules of Civil Procedure does not contain a corroboration requirement or necessarily bar 'self-serving testimony.'"  Lilly v. Crum, No. 2:19-CV-00189, 2020 WL at 4* 1879469 (S.D.W. Va. Apr. 15, 2020).  Moreover, Ramaco does not offer alone the mere speculation or opinions of its executives, "but testimony as to the facts surrounding" their decision not to open the Eight Kay Mine.  Id. at 4.  Specifically, Ramaco's witnesses have unanimously testified that it was precluded from opening the Eight Kay Mine because of Federal's failure to pay the insurance claim.  Such testimony relating to facts is distinct from mere opinion testimony.  Though Ramaco has failed to produce other evidence corroborating the testimony of its witnesses, a "lack [of] extensive corroborating evidence is of little import, because the volume of corroborating evidence 'relates only to the credibility and weight of the evidence, which are issues for the jury.'"  Nnadozie v. Genesis HealthCare Corp., 730 F. App'x 151, 159–60 (4th Cir. 2018) (emphasis in original) (quoting EEOC v. Warfield-Rohr Casket Co., 364 F.3d

160, 164 (4th Cir. 2004) (distinguishing "self-serving opinions" and "testimony replete with alleged facts" for purposes of summary judgment). The court cannot disregard the testimony of Ramaco's witnesses, and "[s]ummary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018) (quoting Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015)).

The same analysis applies to Federal's argument that capacity issues at the Elk Creek Plant were such that, even if Ramaco had opened the Eight Kay Mine, "there is no reasonable basis for a jury to conclude that it would have been able to process, sell, and profit" from the additional coal it would have produced. Defs.' Mot. Par. Summ. J., ECF No. 561 at 25. That is, as earlier presented, the Eight Kay coal mined could have been processed once the preparation plant was expanded on July 1, 2023, to the extent of some 50,000 tons during the last three months of the NEL period ending October 2, 2023.

Federal points out that Randall Atkins plainly noted in a letter to the Board of Directors, dated July 5, 2022, that Ramaco added 200,000 tons of raw coal to its inventory that year "as the mines at Elk have outpaced the processing capacity at

44

the preparation plant." Id., Ex. 31 at 15.  By December 2022, Mr. Atkins warned that "[a]s of Oct. 31, we had A LOT of cash on the ground.  Specifically, inventory stood at over 400,000 tons." Id., Ex. 33 at 4.  Processing Ramaco's excess raw coal "won't likely occur until after the Elk Creek plant upgrade," which was completed in June 2023.  Id.  In February 2023, Mr. Atkins noted that Ramaco will delay opening the Ram#3 surface mine at Elk Creek "[u]ntil we get a better handle on coal processing at Elk Creek and work down some of the raw coal stockpiles." Id., Ex. 34 (February 2023 Letter from CEO Randall Atkins to Board of Directors) at 14.  By July 2023, Ramaco had seen six straight quarters of inventory build.  Id., Ex. 2 (Sussman Dep. Tr. April 11, 2025) at 215:1-8.  Elk Creek's raw coal inventory peaked that month at 1,115,266 tons, and by October 2023, the end of the NEL period, raw coal inventory at Elk Creek totaled 559,522 tons.

These numbers notwithstanding, Mr. Blanchard testified on May 7, 2025, six days after Federal filed their motion for partial summary judgment, that "by utilizing the plant more efficiently," Ramaco "would have actually processed even more of the coal through Elk Creek than what we actually did through the period." ECF 601, Ex. J (Blanchard Dep. Tr. May 7, 2025) at 60:14-20.  He references a hypothetical plant capacity chart

purporting to show that "not only would [Ramaco] have processed every ton produced at Eight Kay, but essentially another 500-600,000 tons of raw coal from the other mines." Id. at 61:2-15. Regarding Mr. Atkin's concerns, Mr. Blanchard claims that "[o]ur CEO and our CFO, because coal has value even on the ground, prefer that [raw inventory number] to be zero because that is real cash on the ground. However, from an operational standpoint, somewhere around 500,000 tons of raw coal inventory at Elk Creek is what I would consider healthy." Id. at 66:8-16. This is so, Blanchard claims, because it amounts to "three and a half weeks of buffer for some of the unexpected events" that occur during the mining process. Id. at 66:16-19.[12]

Federal responds in its briefing that Mr. Blanchard's testimony that Ramaco could have processed all the coal produced from the Eight Kay Mine, let alone an additional 500,000-600,000 tons of coal, is specifically contradicted by the plant capacity chart on which he relies. Mr. Blanchard testified that the hypothetical plant capacity table "assumes the addition of Eight

---

[12]   Mr. Blanchard is inconsistent on this number in both directions. Earlier in the deposition, Mr. Blanchard claimed that Elk Creek had "750,000 [raw] tons on the ground, which is not too far from optimal." Id. at 34:15-21. Two weeks earlier in his April 23, 2025, deposition, Mr. Blanchard indicated that raw coal inventory capacity at Elk Creek was 406,000. See ECF No. 561, Ex. 3 (Blanchard Dep. Tr. April 23, 2025) at 149:5-7 (noting that the raw coal inventory at Elk Creek in April 2020 was "nowhere near capacity at 406[,000 tons].").

Kay coal in a vacuum with everything else that transpired at Elk Creek staying the same," though it assumes that Elk Creek would have run more shifts at the Elk Creek plant to process the additional Eight Kay coal.  ECF No. 601, Ex. J (Blanchard Dep. Tr. May 7, 2025) at 25:1-24.  But even assuming Ramaco would have run these additional shifts, the plant capacity chart shows that, during the NEL period, opening the Eight Kay Mine would have increased their raw stockpile at Elk Creek by 493,950 tons. Id., Ex. I (Elk Creek Plant Capacity Chart) at Inventory Build column (summing entries from July 2021 to October 2023).  The total expected production from the Eight Kay Mine during the NEL period was between 444,740 tons in the base case and 502,186 tons in the upside case.  See ECF No. 561, Ex. 9 at RamacoHYDS_000001 (Eight Kay Projected Production).  In other words, Federal argues that Ramaco's own hypothetical plant capacity chart appears to show that, even if Ramaco would have opened the Eight Kay Mine, almost all the coal it extracted therefrom would have simply been added to their raw coal inventory.  Indeed, another 200,000 tons from the Eight Kay mine alone would thereafter be added to the July 2023 inventory of 1,115,266 tons on the ground.

     Still, the court may not disregard the testimony of the Ramaco witnesses who have testified that the Eight Kay mine

would have been installed if Federal had timely paid the insurance proceeds except in the narrow circumstance in which the plaintiff's version of events "is blatantly contradicted by the record, so that no reasonable jury could believe it[.]" Scott v. Harris, 550 U.S. 372, 380 (2007).  But this high standard "is the exception, not the rule[,]" and it is not satisfied even where the record evidence "makes it unlikely that the plaintiff's account is true." Harris v. Pittman, 927 F.3d 266, 276 (4th Cir. 2019) (internal quotations omitted).  See also Alexander v. Connor, 105 F.4th 174, 179 (4th Cir. 2024). At this stage, Ramaco is entitled to have all inferences, however unlikely, construed in its favor, if such inferences are not "blatantly and demonstrably false." Scott, 550 U.S. at 380.

Federal has not met this high bar.  Ramaco's witnesses' have testified that it would have opened the Eight Kay Mine had Federal timely satisfied its insurance claim. Coupled with contemporaneous statements made by Ramaco's executives with respect to liquidity and a depreciating coal market, this testimony creates disputes of material fact as to whether the Eight Kay Mine would indeed have been opened.  The court therefore declines to grant summary judgment in favor of either party regarding the Eight Kay Mine.

**B. The Elk Creek Complex & Later-Developed Mines Theories**

Plaintiff's Elk Creek Complex Theory evaluates the returns generated from investments made in the Elk Creek Complex.  Mr. Sussman testified that "Largely in 2017," plaintiff spent roughly $22 million in capital expenditure ("capex") to develop four mines in the Elk Creek Complex: the RAM 1 Surface and Highwall Mine, the first section of the 2Gas mine, the Stonecoal mine, and the Rockhouse Eagle mine.  See ECF No. 457, Ex. E (Rule 26 Expert Disclosures), at 12.  Collectively, these four mines returned "approximately $302 million in cash flow" during the NEL period, amounting to a return of over 1300%.  Id.  Plaintiff maintains that, had Federal timely paid the $7.1 million in contract damages, it would have invested this money in the Elk Creek Complex and achieved the same 1300% return on investment amounting to over $97 million.  Id. at 13.

Mr. Sussman's "Later-Developed Mines" Theory similarly calculates Ramaco's net economic losses by assessing the performance of two mines developed at Elk Creek in 2022-2023: the Crucible Mine and the second section of the 2Gas mine.  Id. at 13-14.  For a collective net capital investment of $10 million, these mines "would generate a free cash flow of $63

49

million over 26.[5] months (a length of time equal to that in the NEL period)." Id.

Businesses may recover damages for lost profits in a breach of contract action, but only "if the plaintiff establishes the lost profits with reasonable certainty; lost profits may not be granted if they are too remote or too speculative." Cell, Inc. v. Ranson Invs., 427 S.E.2d 447, 450 (W.Va. 1992). This is especially true where a business "is a new one or if it is a speculative one that is subject to great fluctuations in volume, cost or prices." Restatement (Second) of Contracts § 352 cmt. b (1981). One example is "new coal mining operations[,]" which implicate "the kind of speculative claim that requires heightened scrutiny" of alleged lost profits. Am. Safety Indem. Co. v. Stollings Trucking Co., No. CIV A 204-0752, 2007 at *12 WL 2220589 (S.D.W. Va. July 30, 2007).

Additionally, Hayseeds provides that the "net economic loss caused by the delay in settlement" are "consequential damages." Hayseeds, Inc. v. State Farm Fire & Cas., 177 W. Va. 323, 330 (1986). To recover consequential damages, a party must show that they are proximately caused by the breach. Middle E. Broad. Networks, Inc. v. MBI Glob., LLC, 689 F. App'x 155, 163 (4th Cir. 2017). "The proximate cause of an event is that cause

50

which in actual sequence, unbroken by any independent cause, produces the event and without which the event would not have occurred." Matthews v. Cumberland & Allegheny Gas Co., 138 W. Va. 639, 654 (1953)

The net economic losses alleged under Ramaco's Elk Creek Complex and Later-Developed Mines Theories are both speculative and lacking in proximate cause. Under both Theories, the flaw is the same: Ramaco does not make clear how the allegedly lost profits would have been generated. It alleges no specific investments outside of the Eight Kay Mine that it would have made had Federal timely satisfied its claim. Rather, Ramaco simply insists that it would have made investments and that these investments would have been profitable. This is insufficient.

In its briefing, Ramaco claims that both Theories, developed by its CFO, Jerry Sussman, are "unconnected to the development of the Eight Kay Mine." ECF No. 560 at 3. But in their depositions, Ramaco's witnesses fastidiously refused to clarify whether the Elk Creek Complex Theory and the Later-Developed Mines Theory were predicated on the inability to open the Eight Kay Mine. See Supra at 27-28. When asked how these theories amounted to a loss by Ramaco — i.e., what mines they would have opened if not Eight Kay, Mr. Sussman repeatedly

referred to the "tremendous" profits that "the Eight Kay Mine would have generated" had it been put in.  See ECF No. 556, Exhibit 2 at 275-78; see also id., Exhibit 3 at 41-43.

Assuming arguendo that these theories are premised on the notion that plaintiff would have invested the $7.1 million into mining ventures other than the Eight Kay Mine, both the Elk Creek Complex Theory and the Later-Developed Mines Theory fail because they do not identify any such investments Ramaco would have made had Federal made timely payment.  Defendants correctly point out that, "[w]hile Ramaco calculates a purported return on investment, it doesn't tie that rate of return to any particular mining project."  ECF No. 557 at 14.  Indeed, Ramaco fails to identify any specific investments it would have made, or that it was precluded from making, pursuant to the Elk Creek Complex Theory or the Later-Developed Mines Theory.

Neither Ramaco's Elk Creek Complex Theory nor its Later-Developed Mines Theory attribute its alleged lost profits to any specific source.  Both theories point to the profits generated from six of its mines in the Elk Creek Complex and demand a rate of return comparable to some combination of those six mines.  But Ramaco does not allege that it was precluded from opening any of these highly profitable mines, does not identify investments it would have made other than Eight Kay,

52

and does not allege or attempt to demonstrate that it could have extracted higher profits from these mines had Federal satisfied its claim.  Ramaco emphasizes in its briefing that these theories are independent of the Eight Kay Mine, but it fails to identify any investments it would have made.  If Ramaco is alleging that Federal's nonpayment prevented it from making investments in ventures at the Elk Creek Complex other than the Eight Kay Mine, it must specify clearly what those ventures are. Insisting that Ramaco would have profited to the extent of over 1300% while refusing to clarify how it would have done so is far too speculative a claim on which to grant summary judgment in its favor.  Accordingly, the court finds that granting summary judgment in Ramaco's favor with respect to its Elk Creek Complex Theory and its Later-Developed Mines Theory is unwarranted.

## IV. CONCLUSION

In light of the foregoing, the court ORDERS that plaintiff's Motion for Summary Judgment on each of its three theories be, and hereby is, DENIED.  Additionally, the court ORDERS that defendants' motion for partial summary judgment with respect to the Eight Kay Mine Theory be, and hereby is, DENIED.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: December 17, 2025

John T. Copenhaver, Jr.
Senior United States District Judge