IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

RAMACO RESOURCES, LLC,

        Plaintiff,

v.                               CIVIL ACTION NO.   2:19-cv-00703

FEDERAL INSURANCE COMPANY, and
ACE AMERICAN INSURANCE COMPANY,

        Defendants.

**ORDER**

Pending is Defendant Federal Insurance Company's ("Federal") Motion in Limine No. 4 to Exclude Expert Testimony of Seth Schwartz, [ECF No. 547-1], filed on May 1, 2025. Plaintiff Ramaco Resources, LLC ("Ramaco") filed its response in opposition, [ECF No. 584-1], on May 8, 2025, to which Federal replied, [ECF No. 590-1], on May 15, 2025.

**I. BACKGROUND**

Federal seeks to exclude Mr. Schwartz's proposed expert testimony regarding Ramaco's "Eight Kay Mine" theory of net economic loss caused by Federal's nonpayment of Ramaco's insurance claim for the period spanning July 15, 2021, through October 2, 2023 (also known as the NEL, or Allowed, Period). The Eight Kay Mine Theory envisions "a scenario where Ramaco invested in and developed the Eight Kay Mine at the Elk Creek complex" with the insurance money it hoped to receive under its policy with Federal following the silo collapse at the Elk Creek complex. [ECF No. 547-1, at 1]. Mr. Schwartz's testimony specifically "addresses the cash flow Ramaco would have earned [from the production and sale of Eight Kay coal] had it received the

proceeds of the insurance claim and developed the new Eight Kay mine at the Elk Creek mine complex." Schwartz Expert Rep., [ECF No. 547-3, at 2].

In his report, Mr. Schwartz calculated Ramaco's net economic loss for the Allowed Period under four cases, as follows:

> Base Case, Average Price: If Ramaco had developed the Eight Kay mine in 2019 as budgeted, this mine would have generated $38,232,129 million in cash flow during the Allowed Period (Ramaco's "net economic loss"), assuming budgeted production rates and sales at the average price actually received by Ramaco for sales from the Elk Creek mine complex during the Allowed Period.

> Base Case, Market Price: If the coal production from the Eight Kay mine had been sold at the monthly average market price for coal of this quality during the Allowed Period, Ramaco's net economic loss would have been $62,071,046 at budgeted coal production. The market prices during this period was greater than Ramaco's average sales price because export coal prices were very high during late 2021 and 2022, while Ramaco's domestic contracts were fixed at lower prices.

> High Case, Average Price: Ramaco may reasonable have operated the Eight Kay mine at higher rates than budgeted due to the favorable market price during the Allowed Period. Had it operated at higher production rates, Ramaco's net economic loss would have been $43,092,556 at average sales prices.

> High Case, Market Price: Had Ramaco operated the Eight Kay mine at higher production rates, Ramaco's net economic loss would have been and [sic] $69,942,701 at export market prices.

*Id.* at 3–4. Mr. Schwartz's calculations of net economic loss "exclude expenditures and cash flow that would have occurred before the Allowed Period [running from July 15, 2021, through October 2, 2023], including the initial capital investment to develop the Eight Kay mine, . . . as well as earning from Eight Kay operations." *Id.* at 4.

Mr. Schwartz based his opinions, in substantial part, on information provided to him by Ramaco's Chief Financial Officer Jeremy Sussman and Executive Vice President Christopher Blanchard, including the assumption that the Eight Kay mine "would have been producing coal

2

throughout the Allowed Period," and that the mine "would have produced 444,740 tons of coal during the Allowed Period, operating at the budgeted rate of 5 days per week." *Id.* at 4–5. He adds that, "[b]ecause the market price for this coal was favorable during the Allowed Period, it is reasonable that the Eight Kay mine would have operated 6 days per week and produced 502,186 tons."[1] *Id.* Mr. Schwartz appeared remotely for deposition regarding his proposed testimony and opinions on April 24, 2025. *See generally* Schwartz Dep. Tr., [ECF No. 547-9].

## II. DISCUSSION

Federal argues that Mr. Schwartz's expert testimony should be excluded because it "rests on unreliable methodologies, insufficient facts and data, and improper damages theories," and thus "will not be helpful to the jury" in calculating Ramaco's net economic losses. [ECF No. 547-1, at 3].

Federal Rule of Evidence 702 provides that a qualified expert's testimony is admissible if it will assist the trier of fact and is (1) "based upon sufficient facts or data," (2) "the product of reliable principles and methods," and (3) "the principles and methods [have been applied] reliably to the facts of the case." Fed. R. Evid. 702(b)–(d); *see United States v. McLean*, 715 F.3d 129, 144 (4th Cir. 2013). "Admissibility of such testimony is governed by a two-part test: the evidence is admitted if 'it rests on a reliable foundation and is relevant.'" *Coleman v. Union Carbide Corp.*,

---

1 In addition to the information provided by Messrs. Sussman and Blanchard, Mr. Schwartz relied upon additional documents including Ramaco's Form 8-K public quarterly SEC filings from 2019 through 2023, as well as information from the U.S. Energy Information Administration, U.S. Mine Safety and Health Administration, and the Platts Coal Trade International report. [*See* ECF No. 547-3, at 21]. In forming his rebuttal report, Mr. Schwartz noted, in part, that he further reviewed Ramaco's public SEC Forms 10-Q and 10-K. [ECF No. 547-4, at 13].

3

No. 2:11-0366, 2013 WL 5491855, \*17 (S.D. W. Va. Sept. 30, 2013) (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597 (1993)).

"Neither Rule 702 nor case law establish a mechanistic test for determining the reliability of an expert's proffered testimony." *Id.* Instead, "'the test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999)).

At the same time, "[t]he gatekeeping role exercised by the district court is a critical one." *Coleman*, 2013 WL 5461855 at \*18. Indeed, given that "expert witnesses have the potential to be both powerful and quite misleading[,]" the court must "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 123 (4th Cir. 2011); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) and *Daubert*, 509 U.S. at 588, 595). "As observed in *Westberry*, '[t]he inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached.'" *Coleman*, 2013 WL 5461855 at \*18 (quoting *Westberry*, 178 F.3d at 261 (quoting *Daubert*, 509 U.S. at 594–95)).

### A. Sufficiency of the Underlying Facts and Data

Federal argues that Mr. Schwartz's expert opinion is based on insufficient facts and data because it "largely rel[ies] upon cherry picked numbers and assumptions hand selected by Ramaco's executives" without independent investigation. *Id.* at 9. These include "a wide range of assumptions" provided by Mr. Sussman and Mr. Blanchard, and a "limited scope of documents"

4

provided to him by Ramaco. *Id.* Specifically, Federal takes issue with the accepted assumptions and related documents provided to Mr. Schwartz by Mr. Blanchard: two documents allegedly depicting the Eight Kay mine's projected production for the Allowed Period as well as for a period spanning 2020-2024, [ECF No. 547-11, at RamacoHYDS_000001-2 (hereinafter, "Eight Kay Production Projection")]; and a document labeled as a Plant Capacity Availability table, *id.* at RamacoHYDS_000004.

Regarding the Eight Kay Production Projection, Federal notes that while Mr. Schwartz's report refers to Ramaco's budget generally, the document he actually considered is "an excerpted document of unknown origin" that conflicts with Ramaco's 2019 Board-approved Budget. [ECF No. 547-1, at 9 (comparing Eight Kay Production Projection, [ECF No. 547-11, at RamacoHYDS00001-2], with Ramaco's 2019 Board-Approved Budget Production estimates, [ECF No. 547-12, at 31])]. Mr. Blanchard testified that he created the Eight Kay Production Projection document for litigation purposes using "an actual budget map that was prepared during 2018 for the Eight Kay mine." Blanchard Dep. Tr. (Apr. 23, 2025), ECF No. 547-5, at 9:12–11:1. Ramaco confirms that the 2019 Board-approved Budget is "not to be confused with the [Eight Kay] Mine's budget map." [ECF No. 584-1, at 17].[2] Mr. Schwartz was not provided with a copy of Ramaco's 2019 Board-approved Budget to review in preparing his report, but testified that his analysis would have been different if he had used the numbers therein, which differ from the numbers in Mr. Blanchard's Eight Kay Production Projection. *See* Schwartz Dep. Tr. at 42:13-15; 45:6-46:5.

---

2 Ramaco does not indicate whether the 2018 budget map for the Eight Kay Mine has been made part of the record, and the court appears to possess only Mr. Blanchard's later-created Production Projection.

Nor did Mr. Schwartz review or independently verify Ramaco's mine plan for the Eight Kay Mine (including projected feet of advance per shift or clean tons of coal per foot of advance), or actual work levels, plant shift capacity, inventory levels, and plant processing capacity at the Elk Creek Complex, during the Allowed Period before submitting his report. *See id.* at 36:3–38:16; 72:12–22. Rather, "[i]t was Mr. Blanchard's testimony which [he] relied on that the plant had the available capacity to process . . . the Eight Kay coal and maintain inventory levels as [Ramaco] desired." *Id.* at 72:12–22.

Like the Eight Kay Production Projection, the Plant Capacity Availability table used by Mr. Schwartz in his calculations was created by Mr. Blanchard. The Plant Capacity Availability table contains a hypothetical column purporting to show what would have occurred had the Eight Kay Mine been opened. [*See* ECF No. 547-11, at RamacoHYDS_000004]. Mr. Blanchard testified that this column demonstrates that during the NEL Period, "not only would [Ramaco] have processed every ton produced at Eight Kay, but essentially another 500-600,000 tons of raw coal from the other mines [at the Elk Creek Complex]." Blanchard Dep. Tr. (May 7, 2025), ECF No. 609-11, at 61:2–15. He asserted that this would have been possible "by utilizing the plant more efficiently," and that with the Eight Kay Mine open, Ramaco "would have actually processed even more of the coal through Elk Creek than what we actually did through the period." *See id.* at 60:14–20.

However, as the court previously found, Mr. Blanchard opined in an email dated August 26, 2019, that it was "[h]ard to envision running [the Eight Kay] mine before the [Elk Creek] plant upgrade complete." [ECF No. 617-6, at RamacoHYDS_032230]. Indeed, Mr. Blanchard evidently thought the Elk Creek's processing capability posed a problem when he suggested on August 9,

6

2019, that Eight Kay production be eliminated entirely, as did CEO Randall Atkins in March 2020 and Mr. Blanchard again on March 21, 2020, when he directed that development work on Eight Kay was "to come to a full stop." [*See* Defs.' Mot. Par. Summ. J., ECF No. 561, Ex. 13 (Blanchard email dated August 9, 2019), at HYDS032221; Ex. 17 (March 2020 Letter from CEO Randall Atkins to Board of Directors), at 2–5; Ex. 18 (Blanchard email dated March 21, 2020), at HYDS033810].

Additional "[c]ontemporaneous statements made during the NEL period by both Mr. Blanchard and [Ramaco CEO Randall] Atkins suggest that processing capacity at the Elk Creek Complex was a concern." [ECF No. 630, at 18]. For example, during a period of improvement in the coal market, Mr. Atkins noted in a July 5, 2022, letter to the board of directors that Ramaco had added 200,000 tons of raw coal to its inventory that year "as the mines at Elk have outpaced the processing capacity at the preparation plant." [ECF No. 561-31, at 15]. In a December 2022 presentation to Ramaco's Board of Directors, Mr. Atkins stated that "[a]s of Oct. 31, [2022,] we had A LOT of cash on the ground. Specifically, inventory stood at over 400,000 tons." [ECF No. 561-33, at 4]. It is not clear how much of the excess coal came from the Elk Creek Complex, but the presentation noted, in relevant part, that processing the excess raw coal "won't likely occur until after the Elk Creek plant upgrade is completed this spring." *Id.*

Ramaco's stockpile of coal continued to grow well into 2023, causing Ramaco to delay the opening of other new mines, such as the Ram#3 surface mine, at Elk Creek. *See id.*, Ex. 34 (February 2023 Letter from CEO Randall Atkins to Board of Directors), at 14 ("Until we get a better handle on coal processing at Elk Creek and work down some of the raw coal stockpiles, we would probably not start the higher capex Ram#3 surface mine at Elk."). From January 1, 2022,

7

to June 30, 2023, Ramaco saw six straight quarters of raw coal inventory build. *See* Sussman Dep. Tr. (April 11, 2025), [ECF No. 547-7 at 215:1–8]. By July 17, 2023, CEO Atkins acknowledged that inventory remained "an acute issue." [ECF No. 561-35 (July 2023 Letter from CEO Randall Atkins to Board of Directors), at 3]. Ramaco was "sitting with roughly 1.3 [million] tons of clean and raw coal on the ground, up 500k tons since year end," of which approximately 1,103,000 tons were raw coal needing to be processed. *Id.* at 3–4. This "translates into about $100 million worth of coal waiting to be converted to cash[.]" *Id.* at 3. This is confirmed by the Plant Capacity Availability table, which shows that the Elk Creek Complex's actual raw inventory levels peaked at 1,115,266 tons in July 2023. [ECF No. 547-11, at RamacoHYDS_000004].

Indeed, the record indicates that it was not until the upgrades to the Elk Creek plant concluded on or around July 1, 2023, that the additional Eight Kay coal might have been able to be processed. To this end, the Plant Capacity Availability table shows a decrease from 1,115,266 tons of raw coal inventory in July 2023 to 559,522 tons in October 2023. *Id.* Based on Messrs. Sussman and Blanchard's projections that, had it been opened, the Eight Kay Mine would have produced roughly 200,000 tons a year at full production, [*see* ECF No. 547-2, at 5, 10], Ramaco could have processed some 50,000 tons of Eight Kay coal for the three months from July 1, 2023, when the plant upgrade was completed, to October 2, 2023, the end of the Allowed Period.

Federal adds that, at the very least, the issues noted regarding the Elk Creek processing capabilities undermine Mr. Schwartz's opinion and calculations regarding the "market price" and "high side production" scenarios. [*See* ECF No. 549-1, at 13–14]. It argues that Mr. Schwartz's calculation of loss in the "market price" scenarios "inherently assumes that all of the coal produced in a single month will be sold at the spot market price for that month," when, "according to the

8

numbers [in the Plant Capacity Availability table] provided to Mr. Schwartz, Ramaco did not have the capacity to process all of the raw Eight Kay coal into saleable amounts." *Id.* at 13 (emphasis in original). Likewise, in the "high side" cases, Federal asserts that "Mr. Schwartz assumed that Ramaco would run the Eight Kay mine six days per week to be able to produce more coal," but, had he independently analyzed that assumption, "he would have learned that Ramaco was forced to cut production at Elk Creek in 2023 to deal with the raw coal inventory buildup." *Id.* at 14 (emphasis in original). Accordingly, as Federal notes, Mr. Schwartz's "opinion is based on insufficient facts and data, and unreliable application of any principles or methods to the facts of the case." *Id.*

In response, Ramaco maintains that Mr. Schwartz's reliance on Ramaco's provided assumptions and figures is "entirely appropriate under Rule 703" because "Ramaco's executives, Messrs. Blanchard, Fanning, and Sussman, do these calculations and analyses as part of their day jobs." *Id.* at 14–15. In addition, Ramaco asserts that Mr. Schwartz conducted an independent analysis of the figures provided to him. As examples, Ramaco points to Mr. Schwartz's testimony that he "evaluated Ramaco's publicly reported quarterly financial statements that showed the cash cost average for the Elk Creek Mine Complex" and "reviewed with Mr. Blanchard the adjustments that he made . . . in the analysis he provided me as to the cash costs" to account for "the difference in royalty rates, severance taxes, and mining height or coal height for the Eight Kay Mine compared to the average for the Elk Creek Mine Complex" during the Allowed Period. *See* Schwartz Dep. Tr. at 27:13–28:6. Likewise, Ramaco maintains that Mr. Schwartz "independently determined that it was reasonable" that, as Mr. Blanchard and Mr. Sussman represented to him, Ramaco would have run the Eight Kay Mine six days a week instead of five during the Allowed

9

Period due to the higher market prices at the time. [ECF No. 584-1, at 16]. Nevertheless, it is strange indeed that Ramaco actually chose to run the rest of the similar Elk Creek complex high volatile met coal mines only five days a week at a time when record prices were being obtained without doing the same for the Eight Kay Mine coal.

Ramaco also argues that, although Mr. Schwartz was not provided the 2019 Board-approved Budget in forming his opinion and report, but rather relied on data prepared for litigation, questions regarding the weight and credibility of his opinion and testimony should be decided by the jury. *See id.* at 17–18. Finally, Ramaco contends Federal's arguments regarding Mr. Schwartz's reliance on the Plant Capacity Availability table are inapposite because "Mr. Schwartz neither prepared the chart nor relied on it." Rather, Ramaco argues that "Mr. Schwartz relied on Mr. Blanchard's representation to him that the plant had sufficient capacity to process additional raw tons from Eight Kay during the Allowed Period, not on the chart," and that Mr. Blanchard's representations to Mr. Schwartz are consistent with his testimony about plant capacity. *Id.* at 18–19 (emphasis in original).

Federal Rule of Evidence 703 permits an expert to base his opinion "on facts or data in the case that the expert has been made aware of or personally observed." The opinion may be admitted, even if based on inadmissible facts or data, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Id.* Nevertheless, "[a]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 142 (4th Cir. 1994); *Bygum v. City of Montgomery*, No. 2:19-CV-00456, 2021 WL 4487610, at *1 (S.D. W. Va. Sept. 30, 2021) (Copenhaver, J.).

The court finds that Mr. Schwartz's opinion and testimony are based on speculative and unreliable assumptions unsupported by the record and must be excluded. While it is true that Mr. Schwartz may rely on the testimony of Ramaco's executives in forming his opinion to a reasonable extent, as Federal notes, the Plant Capacity Availability table prepared by Mr. Blanchard "ignores what Ramaco actually did during the relevant period and instead asserts what Ramaco might have done under ideal conditions that Ramaco wishes had occurred." [ECF No. 590-1, at 14]. That is, the Plant Capacity Availability table—and Mr. Blanchard's testimony in support thereof—relied upon by Mr. Schwartz attempts to demonstrate what hypothetical results Ramaco could have achieved during the Allowed Period "by utilizing the plant more efficiently" than Ramaco actually did during the period, including a scenario where Ramaco ran "every shift at the plant" despite not actually doing so during that time—even with raw coal build-up from other, open mines going unprocessed. *See* Blanchard Dep. Tr. (May 7, 2025), at 59:22–62:4.

Indeed, while the parties' experts agree that market prices were favorable for coal like that in the Eight Kay Mine during the Allowed Period, Ramaco only "commenced expansion of the Elk Creek preparation plant during 2022 to increase production in future periods." [Ramaco SEC Form 10-K Fiscal Year 2022, ECF No. 605-2]. And Mr. Schwartz conceded in his deposition that he failed to independently verify Ramaco's actual projected production levels or plant capacity.

While the parties dispute whether the Eight Kay Mine would have opened during the Allowed Period, it appears undisputed that the Elk Creek Complex was unable to process all of the coal being mined from the existing mines on the property until the plant upgrade was completed in the latter four months of that period. This contradicts the assumptions provided by Ramaco and adopted by Mr. Schwartz in his report that the Elk Creek Complex had the available plant capacity

11

to process all of the coal from the Eight Kay Mine, even in the Base Case scenarios. Accordingly, inasmuch as Mr. Schwartz's opinion is "based on assumptions not supported by the record," it must be excluded. *Tyger Const. Co. Inc.*, 29 F.3d at 143.

**B. Reliability of Principles and Methods**

Federal also contends Mr. Schwartz's analysis of Ramaco's net economic loss fails to account for actual net economic loss because he calculated only an estimate of the profit Ramaco could have made from the Eight Kay Mine during the Allowed Period "without any attempt to account for future sales of the Eight Kay coal that Ramaco still stands to receive." [ECF No. 541-1, at 5]. Specifically, Federal notes that Ramaco's public SEC filings indicate a plan to open the Eight Kay Mine in 2027, and that Ramaco's executives have confirmed through sworn testimony that the company intends to mine and sell Eight Kay coal in the future. *See id.* at 6. Mr. Schwartz's rebuttal report acknowledges the fact that the Eight Kay coal is "still in the ground and available to be mined in the future." [ECF No. 547-4, at 9]. Nevertheless, he maintains that "current market conditions are unfavorable" and "[i]t is highly unlikely that market conditions as profitable as the Allowed Period will occur again in the near future." *Id.* at 10. Regarding the failure to account for the future sale of Eight Kay coal in his initial report, Mr. Schwartz admitted that he could perform a calculation "for the future sales price at the current forward market prices for the Eight Kay Mine" over a specified time period, as he quite recently did in a case involving a West Virginia deep-coal mine producing the same type of coal as that in the Eight Kay mine. *See* Schwartz Dep. Tr. at 83:18-87:2; *In re: Century Mining, LLC d/b/a Allegheny Metallurgical*, 24-bk-598 (Bankr. N.D. W. Va. 2024). Despite this, he chose not to perform a "calculation of the current market price for [Eight Kay] coal to be sold in the future because it was not relevant to the calculation of

[Ramaco's] net economic loss" due to his belief that "there is no certainty of future production or sales from the Eight Kay Mine or profitability that would affect the net economic loss." Schwartz Dep. Tr. at 87:9–24. Federal argues that Mr. Schwartz's failure to account in any way for future sales of the Eight Kay coal results in an improper calculation of a gross projection of potential revenue rather than a true net loss. [*See* ECF No. 547-1, at 7]. Accordingly, Federal insists that Mr. Schwartz's calculation of Ramaco's net economic losses results in a "wildly overestimated damages number" that is unreliable, prejudicial, and likely to confuse and mislead the jury. *Id.*

Ramaco maintains that "Mr. Schwartz's methodology is reliable, and routinely used by experts in [his] field." [ECF No. 581-1, at 1]. It contends Federal's arguments regarding future sales of Eight Kay coal must fail for five reasons: (1) any calculation of future Eight Kay coal sales revenue occurring after the end of the Allowed Period would have violated the court's orders; (2) it is too speculative to say whether Ramaco will open the Eight Kay Mine in the future or be able to sell the Eight Kay coal at a profit; (3) Mr. Schwartz's opinion in In re: Century Mining, LLC d/b/a Allegheny Metallurgical is irrelevant and distinguishable; (4) the lost profits cases cited in Federal's motion are distinguishable and/or do not stand for the proposition(s) for which Federal cites them; and (5) even if some deduction must be made to account for Ramaco's "possible future sales of Eight Kay coal and potential future lost profits," Mr. Schwartz's testimony need not be excluded because "such a deduction . . . can be done using simple math" pursuant to Mr. Blanchard's testimony regarding the value of the Eight Kay coal reserves. *Id.* at 6–14.

In West Virginia, "[w]hile *Hayseeds* permits the insured to recover net economic loss caused by an unreasonable delay in settlement of the claim, it does not alter [the] traditional damage rule [that] '[c]ompensatory damages recoverable by an injured party incurred through the

breach of a contractual obligation must be proved with reasonable certainty.'" *Smithson v. U.S. Fid. & Guar. Co.*, 411 S.E.2d 850, 861 (W. Va. 1991). "[T]he burden of proving damages by a preponderance of the evidence rests upon the claimant." *Sammons Bros. Const. Co. v. Elk Creek Coal Co.*, 65 S.E.2d 94, 104 (W. Va. 1951). "[I]f the business is a new one or if it is a speculative one that is subject to great fluctuations in volume, costs or prices, proof will be more difficult." *Cell, Inc. v. Ranson Investors*, 427 S.E.2d 447, 449 (W. Va.1992); *Am. Safety Indem. Co. v. Stollings Trucking Co.*, No. CIV A 204-0752, 2007 WL 2220589, at *11 (S.D. W. Va. July 30, 2007) (Copenhaver, J.). "[T]he West Virginia Supreme Court . . . has recognized that beginning new coal mining operations implicates the kind of speculative claim that requires heightened scrutiny." *Am. Safety Indem. Co.*, 2007 WL 2220589, at *11 (citing *State ex rel. Shatzer v. Freeport Coal Company*, 107 S.E .2d 503, 516 (W. Va. 1959), *overruled on other grounds by Cell*, 427 S.E.2d at 450). Irrespective of how difficult it may be to estimate their expected profit, "[d]ifficulty of proof does not take from the claimant seeking recover, the duty of bearing the burden of proof." *Sammons Bros. Const. Co.*, 65 S.E.2d at 105.

It is far from clear that Mr. Schwartz's calculation of economic loss is a reliable or helpful means of measuring actual net economic loss to Ramaco when he does not account for the fact that Ramaco still owns and maintains the ability to sell the Eight Kay coal in the future. Federal correctly notes that Ramaco has a significant evidentiary burden to prove net economic loss under West Virginia law. Yet Ramaco cannot meet this burden when it maintains that it may never be able to open the Eight Kay Mine or sell the coal at a profit, while simultaneously representing to the SEC that it views the mine as a profitable venture and intends to open it as soon as 2027.

14

As the court previously determined, "[e]ven if Ramaco opens the Eight Kay Mine in 2027 (as it states it will in its SEC disclosures), Ramaco would still have missed out on the opportunity to sell the Eight Kay coal during the period of historically high pricing." [ECF No. 631 at 7]. Accordingly, Ramaco is entitled to calculate and present those damages to the jury. However, Ramaco must account for the difference between the profit it could have made during the Allowed Period and any profit it may still stand to make. *See, e.g.*, *West Virginia Mutual Insurance Co. v. Matulis*, 910 S.E.2d 777, 807 (W. Va. Ct. App. 2024) (explaining that a *Hayseeds* award for net economic loss related to the below-market sale of a home must account for the difference between the sale price and the market value of the home at the time the purported loss occurred).

In light of Mr. Schwartz's failure to account for future sales of the Eight Kay coal in any way, despite testimony indicating such an accounting is indeed possible to perform and that such future sales are anticipated, the court is not convinced that Mr. Schwartz's calculation of net economic loss under Ramaco's Eight Kay Mine theory has been accomplished by application of reliable principles and methods and neither will it be reliable or helpful under Daubert. Accordingly, it must be excluded.

### III. CONCLUSION

For the foregoing reasons, it is ordered that Federal's motion, [ECF No. 547-1], to exclude the expert testimony of Seth Schwartz be, and hereby is, **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      June 11, 2026

15

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE