**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

RAMACO RESOURCES, LLC,

Plaintiff,

v. CIVIL ACTION NO. 2:19-cv-00703

FEDERAL INSURANCE COMPANY, and
ACE AMERICAN INSURANCE COMPANY,

Defendants.

**ORDER**

Pending before the court is Plaintiff Ramaco Resources, LLC's Supplemental Brief on Offset Calculations, filed on August 31, 2026. [ECF No. 661]. Defendants filed their Response in Opposition on September 3, 2026, [ECF No. 662], to which Ramaco replied on September 8, 2026, [ECF No. 668].

## I. BACKGROUND

Regarding Ramaco's "Eight Kay Mine" theory of alleged net economic loss damages arising under West Virginia's *Hayseeds* doctrine, the court previously determined that, "while Ramaco is entitled to estimate the net economic loss incurred from its claimed inability to open and operate the Eight Kay Mine in 2019, it must also account for either the value of expected future profits from opening and operating the Eight Kay Mine or the value of that coal in the ground, whichever the court allows." [ECF No. 638, at 3–4]. In its Supplemental Brief, Ramaco proposes using one of two calculations to account for the retained value of the as-yet unmined Eight Kay coal reserves: (1) deducting from its hypothetical historic lost profits the purported in-ground value

of the Eight Kay coal; or (2) deducting a net "future sales" figure which has been calculated using today's costs and prices. The Defendants oppose both proposed calculations as failing to adequately reflect the retained net economic value of the coal reserves, which remain in Ramaco's possession and available to be mined and sold in improved market conditions. They assert, instead, that Ramaco must measure the difference between the amount that Ramaco ostensibly would have made from sales of the Eight Kay coal during the allowed NEL period, and the amount that Ramaco still stands to make in the future from the same coal. For the following reasons, the court rejects both proposed calculations.

## II. APPLICABLE LAW

In West Virginia, "[w]hile *Hayseeds* permits the insured to recover net economic loss caused by an unreasonable delay in settlement of the claim, it does not alter [the] traditional damage rule [that] '[c]ompensatory damages recoverable by an injured party incurred through the breach of a contractual obligation must be proved with reasonable certainty.'" *Smithson v. U.S. Fid. & Guar. Co.*, 411 S.E.2d 850, 861 (W. Va. 1991). "[T]he burden of proving damages by a preponderance of the evidence rests upon the claimant." *Sammons Bros. Const. Co. v. Elk Creek Coal Co.*, 65 S.E.2d 94, 104 (W. Va. 1951). "[I]f the business is a new one or if it is a speculative one that is subject to great fluctuations in volume, costs or prices, proof will be more difficult." *Cell, Inc. v. Ranson Investors*, 427 S.E.2d 447, 449 (W. Va. 1992); *Am. Safety Indem. Co. v. Stollings Trucking Co.*, No. CIV A 204-0752, 2007 WL 2220589, at *11 (S.D. W. Va. July 30, 2007) (Copenhaver, J.). "Nevertheless, damages may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like." *Cell*, 427 S.E.2d at 449–50. "[T]he West Virginia Supreme Court . . . has recognized that beginning new coal mining operations implicates the kind

of speculative claim that requires heightened scrutiny." *Am. Safety Indem. Co.*, 2007 WL 2220589, at *11 (citing *State ex rel. Shatzer v. Freeport Coal Company*, 107 S.E .2d 503, 516 (W. Va. 1959), *overruled on other grounds by Cell*, 427 S.E.2d at 450). Irrespective of how difficult it may be to estimate their expected profit, "[d]ifficulty of proof does not take from the claimant seeking recover, the duty of bearing the burden of proof." *Sammons Bros. Const. Co.*, 65 S.E.2d at 105.

## III. DISCUSSION

### A. Ramaco's Proposed "Coal in the Ground" Calculation

In its Supplemental Brief, Ramaco expresses its preference to account only for the value of the Eight Kay coal in the ground.[1] It argues that using "the amount of potential offset from the value of the Eight Kay coal in the ground provides the appropriate level of certainty under West Virginia law" and is "better suited to the facts of this case as the Eight Kay mine is not presently open and operating and Ramaco has no current plans to open the mine." [ECF No. 661, at 2]. In support, Ramaco asserts that "West Virginia courts consistently value coal reserves 'in place' in trespass lost coal cases" to calculate "damages for wrongfully extracted coal." [*Id.*, at 4]. Ramaco claims that "[n]othing about the *Hayseeds* doctrine precludes the use of this accepted method of valuation." [*Id.*, at 5]. Accordingly, Ramaco proposes a net economic loss calculation that accounts for what it claims represents the in-ground value of the projected 444,470 tons of Eight Kay coal that it alleges it would have produced during the allowed net economic loss ("NEL") period. Ramaco derives the in-ground valuation from its witness Christopher Blanchard's testimony that the value of the Eight Kay coal in the ground is $1.00 per clean recoverable ton. [Blanchard Dep., ECF No. 661-1, at 63:21–64:2 (excerpt)]. Mr. Blanchard testified that he arrived at that number

[1] Although Ramaco characterizes this additional calculation as an "offset," it acknowledges that it does not use the term in its traditional legal sense, and thus such use is irrelevant for purposes of deciding the accounting issue. [*See* ECF No. 668, at 2 n.1].

based on a number of factors that he is familiar with due to his experience in merger and acquisition activity in the coal industry. [*See id.*, at 64:6–65:6 (excerpt)]. Specifically, Mr. Blanchard testified that, "[i]n the case of Eight Kay, those reserves are permitted, they are met coal, and they were owned, so they have sort of the highest value. But you haven't spent any of the money to mine it yet." [*Id.*, at 64::10–14]. He further testified that,

> "[t]he average sort of acquisition cost of reserves of company if you look at purchase price divided by the number of recoverable reserves that companies purchased. And more sort of germane to Ramaco that's looking at two of our acquisitions that we had done in the same time period purchasing the reserves from Ramaco Coal and purchasing the reserves and a prep plant from Coronado which became our -- was referred to as Amonate and now is our Berwind division."

[*Id.*, at 64:17–65:2]. Mr. Blanchard also testified to his belief that both acquisitions took place during allowed NEL period, although his larger analysis as to in-ground value did not appear in the exhibits discussed during his deposition. [*See id.*, at 65::11–24 ("Q: […] [I]s that analysis set forth in Exhibit 2 which you have in front of you? […] A: I do not believe that it is.")]. Using Mr. Blanchard's $1.00-per-ton valuation, Ramaco calculates a "potential offset" of $444,470. [ECF No. 661, at 2].

The Defendants oppose this calculation. They argue that measuring Ramaco's hypothetical lost historic profits against the value of unmined coal reserves in the ground compares apples to oranges by failing to use the same measure on both sides of the equation. [*See* ECF No. 662, at 1; *id.*, at 7]. They assert that using the proposed in-ground valuation "amounts to a request for a windfall through an incomplete or underinclusive calculation." [*Id.*, at 8]. Defendants further dispute Ramaco's analogy to "trespass coal" cases inasmuch as Ramaco's alleged injury is neither the physical loss of the Eight Kay coal nor even the ability to mine it, but "the lost opportunity to mine, process and sell the coal" at the elevated prices present during the NEL period. [*Id.*, at 9]. Even if the analogy applies, Defendants argue that Ramaco's proposed in-ground calculation uses

a damages framework different from that used in the cited trespass coal cases. That is, while trespass coal cases generally measure "the value of the coal at the pit mouth, less mining and carrying costs," Mr. Blanchard's valuation is based on his personal experience in mineral resource acquisitions. [*Id.*, at 10].

In reply, Ramaco maintains that its "in-ground" calculation is proper and realistic. It argues that the calculation merely accounts for the value of the same coal at different points in time—the "most likely value" of the coal if it were mined and sold during the NEL period, which happened to be "the hottest metallurgical coal market in history," and the "most likely future value" of the coal in the ground, "where it is likely to remain for the foreseeable future." [ECF No. 668, at 2]. Ramaco asserts that the trespass coal cases simply "establish that West Virginia courts recognize the value of coal 'in place' as a legitimate measure of valuation." [*Id.*, at 4]. Ramaco further contends the in-ground value of the Eight Kay coal represents a "known, ascertainable market value" and provides "the appropriate measure for an asset whose future revenue stream cannot be predicted with reasonable certainty." [*Id.*, at 6–8].

The court rejects Ramaco's "in-ground" calculation as proposed. While the valuation method itself may be generally accepted, it is unclear from Mr. Blanchard's testimony alone whether his "in-ground" valuation of $1.00 per clean recoverable ton accurately represents the in-ground value of the Eight Kay reserves during the NEL period—when Ramaco claims it would have been mining and selling that same coal—or at some other time. Indeed, while Mr. Blanchard listed several factors to consider in valuing coal reserves in-ground, including his knowledge of the acquisition cost of two other mines that he believed Ramaco acquired during the NEL period, it does not appear that there is any further information in the record, to demonstrate how Mr. Blanchard arrived at the $1.00 figure.

Pursuit of net economic loss damages under *Hayseeds* "does not alter [the] traditional damage rule [that] '[c]ompensatory damages recoverable by an injured party incurred through the breach of a contractual obligation must be proved with reasonable certainty.'" *Smithson v. U.S. Fid. & Guar. Co.*, 411 S.E.2d 850, 861 (W. Va. 1991). West Virginia also applies the "fundamental principle of the law of contracts that a plaintiff is only entitled to such damages as would put him in the same position as if the contract had been performed." *Milner Hotels, Inc. v. Norfolk W. Ry. Co.,* 822 F.Supp. 341, 344 (S.D.W.Va.1993). Ramaco alleges that Defendants' failure to timely settle the insurance dispute prevented it from opening the Eight Kay mine and profiting from sales of that coal during the NEL period. Instead of mining and selling the coal, it remained in the ground during the entire period. But simply because the coal remained in the ground does not mean that it had no value to Ramaco. To the extent that a historic in-ground market value is known and can be attributed to the Eight Kay coal during the NEL period, such value—taken together with Ramaco's alleged historic lost profits—appears most readily ascertainable and indicative of the net economic loss Ramaco alleged it suffered as a result of Defendants' delay in settlement and readily ascertainable. However, without more, the proposed in-ground calculation based solely on Mr. Blanchard's deposition testimony appears insufficient to establish either historic in-ground value or Ramaco's overall claimed net economic loss with reasonable certainty. Accordingly, the court rejects Ramaco's "in-ground" calculation as proposed.

**B. Ramaco's Proposed "Future Sales" Calculation**

Alternatively, Ramaco proposes calculating potential future sales of the Eight Kay coal using present-day figures. Ramaco contends this method of valuation provides the greatest degree of certainty for a commodity with volatile pricing behavior like metallurgical coal. [*See* ECF No. 661, at 10]. In support, Ramaco submits the affidavit of its Chief Financial Officer Jeremy

Sussman. [ECF No. 661-2]. Mr. Sussman attests that, using present-day actual average sales prices for coal mined at Ramaco's Elk Creek Complex, less the present-day average cash costs, maintenance capital expenditures, and other operational costs associated with mining metallurgical coal at Elk Creek, "Ramaco 'could' net $2,130,304.60 from the sale of the 444,740 tons of HVA coal that was predicted to be sold from the Eight Kay mine during the Net Economic Loss Period." [*See* Sussman Aff., ECF No. 661-2, at 2–3].

The Defendants likewise oppose this calculation as insufficient and argue that Mr. Sussman's analysis must be excluded because it was disclosed too late, it relies on new data not previously produced in discovery, and it is substantively unreliable. To their first point, Defendants contend the court's order regarding the proper net loss calculation "did not reopen discovery or authorize a new litigation-specific opinion on new material." [ECF No. 662, at 11]. In addition, Defendants contend they have not received records of the figures Mr. Sussman used in his calculation, and that Ramaco's failure to supplement its Rule 26 disclosures with this new information is neither justified nor harmless under Federal Rule of Civil Procedure 37(c)(1). [*See id.*, at 12–13]. Finally, Defendants maintain that Mr. Sussman's use of present-day sales figures does not reliably measure potential future profits from sales of the Eight Kay coal because the calculation "is not a forecast of the market in which [Ramaco] plans to operate" the Eight Kay mine. [*Id.*, at 15]. In addition to deposition testimony provided by Ramaco's executives, Defendants point to the third-party Technical Summary Report prepared by Weir International Inc. ("the Weir Report") and appended to Ramaco's annual SEC disclosures, as well as Ramaco's most recent Internal Rate of Return spreadsheet created for the Eight Kay mine. Defendants note that the Weir Report "estimates an average sales price of $131 per ton and cash cost of $77 per ton—a $54-per-ton margin" that significantly exceeds Mr. Sussman's present-day calculation. [*Id.*, at

16; *see* Weir Report (excerpt), ECF No. 662-7, at 58]. Defendants further emphasize that Ramaco's Internal Rate of Return Spreadsheet, [ECF No. 662-9], projected "tens of millions in profits from the same 26.5 months it claims here." [ECF No. 662, at 16]. Accordingly, Defendants urge the court to reject Ramaco's "present-day future sales" calculation and hold that "any Eight Kay net-economic-loss calculation must account for retained net economic value of the future mining and sale of the Eight Kay coal as Ramaco intends." [*Id.*, at 17].

Ramaco maintains that the Defendants' arguments regarding the timeliness of Mr. Sussman's affidavit and the prior availability of relevant underlying data are "a red herring" inasmuch as the court invited submission of proposed calculations. [ECF No. 668, at 8.] It notes that it has also offered to make Mr. Sussman available for a further deposition on the new calculation before trial. As to the reliability of Mr. Sussman's calculation, Ramaco reiterates that using present-day figures is "far more reliable than speculative future profits which may never occur." [*Id.*, at 11]. Ramaco maintains that "no one . . . can predict" the improved conditions under which it will open the Eight Kay mine, or when such conditions will arrive. [*Id.*, at 12]. It further asserts that Defendants misunderstand the Weir Report, which "was prepared during the NEL Period, when the metallurgical market was strong." [*Id.*] Ramaco points to the Report's acknowledgement that its financial model "is most sensitive to changes in coal sales prices and operating cost," [ECF No. 668-3, at RamacoINV_00334], and that federal regulations do not require the Report to be updated unless "there is a material change in the mineral reserves or mineral resources," [ECF No. 668, at 13 (citing 17 C.F.R. § 229.1302(b)(2)(i)]. Further, Ramaco notes that the Weir Report's economic evaluation "is not meant to represent a project valuation," such as the individual Eight Kay mine project. [*Id.*, at 13]. Finally, Ramaco states that the Report

bases its average sales price on a combination of high volatile A and high volatile B metallurgical coal products, while Eight Kay coal is only high volatile A quality. [*Id.*, at 14].

The court rejects the proposed "future sales" calculation as an inadequate measure of Ramaco's retained future opportunity to mine the Eight Kay coal. Regardless of the timing of Mr. Sussman's affidavit or the availability of its underlying data,[2] Ramaco fails to explain why today's market conditions are representative of the conditions relevant to future Eight Kay operations beyond its contention that present-day figures are known. Indeed, Ramaco has chosen not to open the mine under today's conditions, while its executive officers have indicated that it may do so in an improved market. The fact that present-day figures are known and the coal market is subject to fluctuation does not alone demonstrate that, here, today's costs and prices represent reasonably certain proof of Ramaco's expected future profits from opening and operating the Eight Kay mine. Where "the business is a new one or if it is a speculative one that is subject to great fluctuations in volume, costs or prices, proof will be more difficult." *Cell, Inc. v. Ranson Investors*, 427 S.E.2d 447, 449 (W. Va. 1992); *Am. Safety Indem. Co. v. Stollings Trucking Co.*, No. CIV A 204-0752, 2007 WL 2220589, at *11 (S.D. W. Va. July 30, 2007) (Copenhaver, J.). But simply because it may be more difficult to estimate "does not take from the claimant seeking recover, the duty of bearing the burden of proof." *Sammons Bros. Const. Co. v. Elk Creek Coal Co.*, 65 S.E.2d 94, 105 (W. Va. 1951). Inasmuch as Ramaco fails to demonstrate how the use of present-day figures results in a reasonably certain calculation of "the value of Ramaco's expected future profits from opening and operating the Eight Kay Mine," the court rejects this alternative calculation.

[2] The Court notes its concern that, as of the filing of Ramaco's reply brief, it appears that Ramaco had yet to exchange relevant data underlying Mr. Sussman's calculation with Defendants. Although Ramaco submitted its alternative calculation in response to the court's order, such circumstances do not relieve it of its obligation under the Federal Rules of Civil Procedure to timely supplement its Rule 26 disclosures with new information and otherwise share such information with Defendants.

## IV. CONCLUSION

Accordingly, the court rejects both of Ramaco's proposed calculations as submitted. Nevertheless, the court will allow Ramaco to calculate its claimed net economic loss using the in-ground value of the Eight Kay coal reserves on the condition that any such valuation can be shown to reasonably represent the in-ground value of that coal during the allowed NEL period. Of course, any evidence Ramaco puts forth to support the calculation of its net economic loss may be tested at trial, and the jury will determine issues of causation and whether the amount of such loss has been calculated with reasonable certainty. Should Ramaco intend to use new evidence to support its calculation, it is **ORDERED** to provide the same to Defendants prior to trial. Any objection to the court's decision should be filed on the record no later than the start of jury selection.

Further, for reasons appearing to the court, the Final Settlement Conference scheduled for September 21, 2026, at 10:00 a.m. is **CANCELLED**. The court will address any remaining trial questions of the parties at 8:30 a.m. on September 22, 2026, the day of trial, immediately before voir dire begins.

The parties are **DIRECTED** to meet-and-confer in good faith on September 21, 2026, in one last attempt to resolve this dispute before a jury is selected. The parties shall file a joint status report **no later than 3:00 p.m. on September 21, 2026,** advising the court of its settlement efforts.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 17, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE